**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **CLIFFORD BAILEY, et al,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Case No. 3:06-cv-00979-MHT-SRW** |
| | * | |
| **MERCK & CO., INC., a foreign** | * | |
| **Corporation; et al,** | * | |
| | * | |
| **Defendants.** | * | |

**DEFENDANT MERCK & CO., INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND AND
SUBMISSION IN SUPPORT OF MOTION TO STAY**

COMES NOW, Defendant Merck & Co., Inc. ("Merck"), and in response to this Court's Order of November 21, 2006 (Doc. 26), hereby submits the following Opposition to Plaintiffs' Motion to Remand and their Response to Merck's pending Motion to Stay:

In this case, nine individual Plaintiffs have sought to evade federal jurisdiction by joining their individual and independent product liability claims against Merck & Co., Inc. ("Merck") (which meet all of the requirements for federal diversity jurisdiction) with claims against fourteen[1] Merck employees against whom they have no valid cause of action under Alabama law and who they contend "were the ones who detailed (sold) Vioxx to East Alabama doctors." (Doc. 25, p. 5). Plaintiffs also ask this Court to needlessly expend its judicial resources in addressing issues that should and will be decided by the Vioxx® MDL court.

Plaintiffs' remand motion is directly contrary to the goals of the MDL proceeding. Instead of

---

[1] The caption of the Plaintiff's complaint separately names Melissa Santiago and Julie Hodges-Melton by both their married (Santiago and Melton) and their pre-married names (Bauer and Hodges). Moreover, motions to dismiss were inadvertently filed in support of "Julie Melton" (Doc. 16) and "Julie Hodges" (Doc. 17) rather than Julie Hodges-Melton. Thus, in reality, there are only 14 named Employee Defendants.

rushing to decide individual cases across the country, the Vioxx MDL court has requested that it be permitted to rule on motions to remand, such as this one, where the issues overlap with numerous other cases in the MDL.  As set forth below and in Merck's pending Motion to Stay (Doc. 21) the Court should defer consideration of Plaintiffs' Motion to Remand (Doc. 25), including consideration of the Defendants' Motions to Dismiss (Docs. 5-19), pending MDL transfer.[2]  Should the Court choose to consider Plaintiffs' Motion to Remand rather than staying the case, however, the Court should deny the motion because the non-diverse defendants are fraudulently joined.  Further, Defendants' Motions to Dismiss should be granted because the Plaintiffs fail to state a claim against them under Alabama law, and they are due to be dismissed.

## BACKGROUND

This lawsuit concerns the Plaintiffs' alleged use of the prescription medication Vioxx, a pharmaceutical manufactured, marketed, and distributed by Merck.  In an attempt to defeat diversity jurisdiction, the nine Plaintiffs have improperly joined their product claims together and have improperly named as defendants fourteen individual Merck employees, David Sparkman, Katherine Holmes, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago (Bauer), Henry Mitcham, Jerry Pharr, Jason Delk, Charles Henderson, James Houston, Julie Hodges-Melton, Natasha McGlotham-Walker, and Randy Walls (the "Employee Defendants") who they claim "were the ones who detailed (sold) Vioxx to East Alabama doctors." (Doc. 25, p. 5).  Plaintiffs allege that the Employee

---

[2] The Plaintiffs' Motion To Remand (Doc. 25) appears to have been copied from a brief filed by Plaintiffs' counsel in an action styled *Brenda Sue Landrum v. Merck & Co., Inc., et al*., Case No. 6:05-cv-01055-LSC, Northern District of Alabama (May 24, 2005 Brief), because the brief in this case is virtually identical to that in the *Landrum* case and because it states that "Plaintiff was prescribed a drug for *her* arthritis affliction which caused a stroke" and that information was concealed from "*her* physician," when the Complaint here was actually filed by nine individual plaintiffs (male and female) concerning their individual use of Vioxx. (*See* Doc. 25, p. 18).

2

Defendants[3] are residents of the State of Alabama, and thus, non-diverse.

On October 30, 2006, Merck timely removed this case to federal court (Doc. 1) based upon federal diversity jurisdiction and moved for a stay (Doc. 21) of all proceedings pending MDL transfer. On November 3, 2006, Merck notified the Judicial Panel on Multidistrict Litigation ("the MDL Panel") of this case as a potential "tag-along" action to the MDL proceeding. *See* **Exhibit A** hereto (179th notification letter to JPML). In light of previous MDL Panel activity, Merck expects this case to be listed on a conditional transfer order issued within the next few days.

Removal was appropriate because there is complete diversity of citizenship between the Plaintiffs and Merck; the non-diverse defendants were fraudulently joined; and the amount in controversy satisfies the jurisdictional minimum. *See* 28 U.S.C. § 1332. Thus, removal was proper and Merck has satisfied all the procedural requirements for removal. *See* Notice of Removal (Doc. 1).

Moreover, Plaintiffs have not raised any procedural deficiency in the removal as grounds for remand, nor have they challenged the amount in controversy. Thus, the only issues before the Court are (1) whether this Court or the MDL Court should rule on Plaintiffs' motion, and (2) whether Plaintiffs' manipulative pleadings can defeat federal jurisdiction.

## ARGUMENT

As a threshold matter, the Court should defer ruling on Plaintiffs' remand motion pending MDL transfer. This is the course recommended by the MDL panel, the Vioxx MDL judge, and is the course taken by federal courts around the country that have stayed more than 325 Vioxx cases where plaintiffs sought remand (most involving the joinder of sales representatives). If the Court does consider the merits of Plaintiffs' motion, however, it should be denied.

---

[3] Defendants Katherine Holmes, Jerry Pharr, Jason Delk, James Houston, Julie Hodges-Melton, Natasha McGlothan-Walker are understood to be Alabama residents. David Sparkman, Lori Lovett, Scott Bartlett, Coral Harper, Melissa Santiago (Bauer), Henry Mitcham and Charles Henderson are in fact Georgia residents. *See* Declarations, collectively submitted as Exhibit F to Notice of Removal (Doc. 1).

## I.    The Court Should Refrain From Ruling On Plaintiffs' Motion To Remand And Should Stay All Proceedings In This Case.

Both the MDL Panel and the MDL judge (Judge Fallon) presiding over the Vioxx MDL proceeding in the Eastern District of Louisiana have made clear their preference that overlapping remand issues should be addressed in the Vioxx MDL proceeding rather than by transferor judges. *See* Ltr. from JPML to Hon. Ricardo H. Hinojosa, attached as **Exhibit B** (""wait[ing] until the Panel has decided the transfer issue. . . may be especially appropriate if the [remand] motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization"). Judge Fallon elaborated on the underlying rationale during a June 23, 2005 status conference in the Vioxx proceeding:

> There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency. The Rule of Law is really based on consistency. If different decisions are made by numerous judges, then you have no consistency and no predictability. . . . It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.
>
> I'm conscious of dealing with the remand [motions] as quickly as possible, but I do want to get them all together . . . and deal with that issue in a consistent and fair fashion.

[Tr. of Status Conference Before the Hon. Eldon E. Fallon, at 21, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657 (June 23, 2005) (**Exhibit C**)].

Judge Fallon's concerns are consistent with the majority view – *i.e.*, that the best method to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation pending transfer to the MDL court, including the consideration of remand motions. This is particularly true where, as here, the issues raised by Plaintiffs' remand motion are similar to those raised in other cases likely to be transferred to the same MDL proceeding, including

other actions filed by Plaintiffs' counsel.[4]  For this reason, **more than 1,700 Vioxx-related cases have been stayed, including more than 325 in which plaintiffs sought remand.**   *See, e.g., Wilkes v. Merck & Co., Inc., et al*., CV-2:0501241-RRA (granting motion to stay over plaintiffs' objection and finding that MDL court should hear pending motion to remand to keep rulings on similar motions consistent);   *Faircloth v. Merck & Co., Inc., et al*., CV-2:06-184-RDP (N.D. Ala. Mar. 3, 2006) (upholding decision to stay case over plaintiff's objection);   *Jones v. Merck & Co., Inc., et al*., CV-2:05-427-RDP (N.D. Ala. Apr. 25, 2005);   *Kehoe v. Merck & Co., Inc., et al*., Case No. 3:06-cv-00425-MEF (M.D. Ala. June 20, 2006);   *Woods v. Merck & Co., Inc., et al.*, CV-05-0425-CG-M (S.D. Ala. Aug. 17, 2005); *Jones v. Merck & Co., Inc. et al*., CV-2:05 -427-RDP (N.D. Ala. Apr. 25, 2005); *Gouge v. Merck & Co., Inc., et al.,* Case No. 3:05CV345/RV (N.D. Fla. Oct. 28, 2005) ("Staying the motion to remand serves the interest of judicial economy and lowers the risk of inconsistent rulings on the sales representatives' potential liability issue by allowing it to be decided by the single court handling all of the federal issues.") (attached as part of collective **Ex. D**).  In fact, Your Honor has so acted in multiple cases leveling similar claims against Merck over the design, manufacture, distribution, and marketing of Vioxx.  *See, e.g., Sistrunk v. Merck & Co., Inc.,* CV-3-05-cv-255 (M.D. Ala. 2005); *King v. Merck & Co., Inc. et al.*, CV-2:05-165-T (M.D. Ala. Apr. 26, 2005).

     Deferral is particularly appropriate here because the Vioxx MDL court already has before it numerous cases from Alabama and other jurisdictions in which plaintiffs have named non-diverse

---

[4] Nearly identical complaints have been filed by plaintiffs' counsel against Merck and Merck employees in several cases, most of which have either been transferred to the MDL Court or are in the process of being transferred:  *Winford Wheeles v. Merck & Co*., Inc., *et al*., (Case No. 2:05-cv-02556, transferred from N.D. Ala. in February 2006);   *Cynthia Bright v. Merck & Co., Inc., et al*., (Case No. 2:05-cv-2555-JHH, N.D. Ala., transferred in February 2006); *Wayne Watts and Kathy Lyles v. Merck & Co., Inc., et al.*, (Case No. CV-06-02284-RBP, transfer from the N.D. Ala. currently pending before the MDL Panel); *Junior Alldreage, et al., v. Merck & Co., Inc., et al*. (Case No. 3:06-cv-02260-RRA, transfer from the N.D. Ala. currently pending before the MDL Panel);   *Michael May v. Merck & Co., Inc., et al*. (Case No. 3:05-cv-00998-MEF-SRW, transferred from the M.D. Ala. in April 2006);   *James Roberts v. Merck & Co., Inc., et al*. (Case No. CV-05-PT-2619-E, transferred from the N.D. Ala. in March 2006); *Ruth Baldwin v. Merck & Co., Inc., et al*., (Case No. 05-cv-849-DRB, transferred from the M.D. Ala. in November 2005).

professional representatives and seek remand on that basis. *See, e.g.*, *Arrington v. Merck & Co., Inc., et al.,* (Case No. 2:06-cv-488-SRW, transferred from M.D. Ala.); *Beaty v. Merck & Co., Inc., et al.*, (Case No. 2:05cv880-W, transferred from M.D. Ala.);  *Zanaty v. Merck & Co., Inc., et al.*, (C.A. No. 05-2335, transferred from N.D. Ala.); *Jones v. Merck & Co., Inc., et al.*, (C.A. No. 05- 427, transferred from N.D. Ala.); *May v. Merck & Co., Inc., et al.*, (C.A. No. 05- 149, transferred from M.D. Ala.); *King v. Merck & Co., Inc., et al.*, (C.A. No. 05- 165, transferred from M.D. Ala.); *Register v. Merck & Co., Inc., et al.*, (C.A. No. 04-2259, transferred from N.D. Tex.); *Casimere v. Merck & Co., Inc., et al.,* (C.A. No. 05-1042, transferred from E.D. Mo.); *O'Gorman v. Merck & Co., Inc., et al.*, (C.A. No. 05-153, transferred from E.D. Mo.); *Bodimer v. Merck & Co., Inc., et al.,* (C.A. No. 05-135, transferred from E.D. Mo.); *Allen v. Merck & Co., Inc., et al.*, (C.A. No. 05-134, transferred from E.D. Mo.); *Flippin v. Merck & Co., Inc., et al.*, (C.A. No. 05-1068, transferred from W.D. Tenn.); *Macklin v. Merck & Co., Inc., et al.,* (C.A. No. 05-1054, transferred from W.D. Tenn.); *Wright v. Merck & Co., Inc.*, (C.A. No. 05-1160, transferred from W.D. Tenn.); *Dawson v. Merck & Co., Inc.*, (C.A. No. 05-1154, transferred from W.D. Tenn.); *Foster v. Merck & Co., Inc.,* (C.A. No. 05-1159, transferred from W.D. Tenn.).

For example, the Southern District of Alabama entered a stay in *Marguerite Woods v. Merck & Co., Inc., et al.*, Civil Action No. 05-0425-CG-M (S.D. Ala. Aug. 17, 2005), despite plaintiff's motion to remand and for expedited hearing on her remand motion.  In finding that a stay was appropriate, the court quoted at length from its prior order in *Faith Beverly, et al. v. Wyeth, et al.*, 03-cv-0866-CB-C (S.D. Ala.), in which it stayed an action despite a pending remand motion:

> A stay of proceedings in potential MDL cases is appropriate when it promotes judicial economy and efficiency.  When jurisdictional issues are raised that may arise 'in hundreds or even thousands of cases throughout the nation. . . consistency as well as economy [are] . . . served' by having those issues decided by a single court. Consequently, a stay is proper where the motion to remand raises issues that have been or are likely to be decided by the transferee court.

The jurisdictional issue in this case is whether the individual defendants, who are current or former sales representatives for Wyeth, were fraudulently joined to defeat federal subject matter jurisdiction.  Motions to remand involving similar fraudulent joinder have been addressed numerous times by the transferor court.  In fact, one of the transferee court's orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical sales representative in a case removed from Alabama state court.

In the interest of judicial economy and to avoid inconsistent results, the motion to stay is GRANTED.  This stay will remain in effect until the Court is notified of the MDL Panel's decision as to whether to transfer this action.

(Order, dated August 17, 2005, Doc. 16 in *Woods v. Merck & Co., Inc., et al*., Case No. 2:05-cv-00425-CG-M (S.D. Ala.) (internal citations omitted) (quoting Order from *Beverly v. Wyeth, et al.*, 03-cv-0866-CB-C(S.D. Ala.)(**Exhibit E**)).

Such stays are consistent with this Court's practice, that of the other federal district courts in Alabama, federal courts within the Eleventh Circuit and, indeed, throughout the country.  For example, Judge Proctor of the Northern District of Alabama, just a few months ago addressed this issue in the case of *Faircloth v. Merck*, Case No. 2:06-CV-184-RDP (N.D. Ala. Mar. 2, 2006) (**Exhibit F**).  In the *Faircloth* case, the plaintiff requested the court to reverse its prior decision to stay the case pending MDL transfer, in order to permit plaintiff to conduct discovery to identify the sales representative who marketed and promoted Vioxx to her prescribing physician.  The plaintiff stated her intent to amend her complaint to add that person to the case, predicting that the representative would be an in-state defendant who would destroy diversity.

In his *Faircloth* memorandum opinion, Judge Proctor distinguished several diet drug cases where he had ruled on pending motions to remand while they were awaiting transfer to an MDL.  He pointed out that the action taken by him in the diet drug litigation cases was not appropriate now in light of the Eleventh Circuit's opinion in *Legg v. Wyeth*, 428 F. 3d 1317 (11th Cir. 2005).  Judge Proctor said that *Legg* suggests that under Alabama law, in-state representatives are fraudulently joined

if they are merely "conduits" who did not act in bad faith. He went on to point out that in *Legg* the Eleventh Circuit had applied Alabama law in the context of claims based on prescription medications and found "no reasonable possibility" that the named sales representatives could be liable to plaintiffs. Judge Proctor went on to conclude his comments in footnote two of the *Faircloth* opinion by stating "Post-*Legg*, it is clear that before the issue of fraudulent joinder can be decided, at least some discovery must be conducted to eliminate the depth of a representative's participation in the Plaintiff's allegations. As the court has opined above, these are matters best left to the MDL court." (*Faircloth*, at pg. 2, footnote 2.).

In *Wilkes v. Merck & Co., Inc.*, *et al*., Case No. 05-RRA-1214-S (N.D. Ala. June 30, 2005), the court granted Merck's motion to stay and stayed all proceedings pending MDL transfer, including the motion to remand. *See also Gordon v. Pfizer*, Case No. CV-06-RRA-703-E, 2006 WL 2337002, at *6 (N.D. Ala. May 22, 2006) (adopting Magistrate's recommendation, **Ex. K** hereto, that pharmaceutical representative was fraudulently joined). Though the plaintiffs in *Wilkes* had also named as defendants their prescribing physicians, the court concluded that a stay was appropriate because the plaintiffs' allegations were contradictory and offered without any degree of specificity, and because the other federal judges of the Northern District were also staying the cases against Merck pending MDL transfer.

The scenario which led the *Wilkes* court to stay the case is also present in this case. First, the Plaintiffs' own complaint allegations are contradictory. For example, the Plaintiffs allege on the one hand that the Defendants "misrepresented material facts" while they contradictorily allege that the defendants "fraudulently suppressed material facts." [Compl., ¶ 50]. Indeed, the Plaintiffs in their remand brief acknowledge the inconsistency of their allegations-- "Any representations made about the

safety or efficacy of the drug were communicated by the sales representatives to be passed on to the patient, or in the case of concealment, to be withheld from the patient." (Doc. 25, p. 18).

Moreover, as in *Wilkes*, the Complaint allegations (especially the fraud claim) against the Employee Defendants lack any specificity whatsoever. Indeed, as will be explained in more detail, other than their boilerplate allegations of general misrepresentations and fraud, nowhere do any of the individual plaintiffs specify what fraudulent misrepresentations any individual employee defendant made to him or her or to his/her prescribing physician.

Just as in *Woods*, *Beverly, Faircloth, Wilkes* and the other cases stayed in the District Courts of Alabama, deferral is particularly appropriate here. Having the MDL court decide the cross-cutting jurisdictional issues raised by this case will ensure that the various Vioxx actions around the country are treated in a uniform manner and that this Court does not enter a ruling that might ultimately be inconsistent with that of the MDL court on similar motions. *See In re Ivy*, 901 F.2d 7, 9 (2nd Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"). *See also Bd. Of Trs. Of the Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.,* Civil Action No. 02-0886 Section: "R", 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("because the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pretrial rulings are furthered by a stay of the proceedings."); *Boudreaux v. Metropolitan Life Ins. Co*., 1995 U.S. Dist. LEXIS 2656, at * 5 (E.D. La. Feb. 24, 1995) (same).

In short, because Judge Fallon is already facing remand motions in similar cases, Merck respectfully urges the Court to defer consideration of Plaintiffs' motion to remand pending final MDL transfer.

## II.    The Court Has Diversity Jurisdiction Over Plaintiffs' Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.

Should the Court choose to reach the merits of Plaintiffs' Motion to Remand, the motion should be denied because the Court has diversity jurisdiction over Plaintiffs' claims.  *See, e.g., Gordon v. Pfizer*, Case No. CV-06-RRA-703-E, 2006 WL 2337002 (N.D. Ala. May 22, 2006) (finding fraudulent joinder and denying motion to remand) (**Ex. K** hereto).  Because Plaintiffs do not dispute in their remand motion that the amount-in-controversy requirement is satisfied, the only jurisdictional question remaining before the Court is whether the non-diverse Employee Defendants are fraudulently joined.[5] As set forth below, Plaintiffs have no intention of seeking relief from these Defendants nor could they if they so desired.  Plaintiffs' Motion to Remand offers nothing to change that fact.  Accordingly, the Employee Defendants must be ignored for purposes of determining jurisdiction.

The fraudulent joinder of employees has become a common tactic in pharmaceutical litigation by plaintiffs who seek to avoid federal court and – in cases like this – inclusion in an MDL proceeding. This is especially true in Alabama where pharmaceutical cases (regardless of the product) are typically brought against all known sales representatives who happen to have resided in Alabama at one time or another regardless of whether they have any connection to the actual case.  *See Legg v. Wyeth*, 428 F.3d 1317, 1325, 1320 (11th Cir. 2005) (noting the common strategy of plaintiffs in pharmaceutical

---

[5] On information and belief, defendants Coral Harper, Melissa Santiago (Bauer), Charles Henderson, Katherine Holmes, Jerry Pharr, Scott Bartlett, Henry Mitcham, Lori Lovett, Natasha McGlotham-Walker, Julie Hodges-Melton, and Randy Walls have not been properly served with the Plaintiffs' Complaint.  Therefore, their citizenship should be ignored for purposes of removal.  *See Mask v. Chrysler Corp.*, 825 F.Supp.2d 285, 289 (N.D. Ala. 1993)(holding that a resident defendant who has not been "properly joined and served" cannot defeat removal jurisdiction).  *See also Wensil v. E.I. Dupont De Nemours and Co.*, 792 F.Supp. 447, 449 (D.S.C. 1992); *Windac Corp. v. Clarke*, 530 F.Supp. 812, 813 (D. Neb. 1982).

cases to name local sales representatives to thwart removal).  As the United States Supreme Court has long recognized, however, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant . . . ." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).  Thus, a plaintiff cannot name parties of the same citizenship merely to avoid removal of an action to federal court.  *See Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003).  The Eleventh Circuit recently reaffirmed this long-standing law in another case where the plaintiff had named sales representatives in an effort to defeat diversity jurisdiction:  "the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed to federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (*quoting Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)).

In *Legg*, the Eleventh Circuit confirmed the appropriate standard for determining whether professional representative defendants are fraudulently joined:  A defendant is fraudulently joined when there is "no reasonable possibility" that a state might impose liability on the resident defendant. 428 F.3d at 1325.  *See also Gordon v. Pfizer*, Case No. CV-06-RRA-703-E, 2006 WL 2337002, at *6 (N.D. Ala. May 22, 2006) (following standard in *Legg*, and denying plaintiff's motion to remand finding that there was "no reasonable possibility' that an Alabama court could conclude that [the professional representative of Pfizer] is liable for fraud or misrepresentation").  Such a reasonable possibility must be based on facts in evidence and cannot be "merely theoretical."  428 F.3d at 1325 and n.5. *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *12 (M.D. Ala. Dec. 19, 2005).  Moreover, the *Legg* court recognized, in making this determination, that the Court must consider "the plaintiff's pleadings at the time of removal" – not subsequent claims by the plaintiff in support of a remand motion.  428 F.3d at 1322 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)).

Here, Plaintiffs' Complaint asserts nine causes of action against the Employee Defendants – AEMLD, negligence and wantonness, negligence per se, unjust enrichment, breach of express warranty, breach of implied warranty, corporate responsibility/joint venture/successor liability, civil conspiracy and fraud and deceit.  In their remand motion, Plaintiffs effectively concede that there are no reasonable basis from which to maintain their claims of negligence, wantonness, negligence per se, unjust enrichment, breach of warranty (express and implied), corporate responsibility/joint venture/successor liability, and civil conspiracy because they fail to argue that any of these claims are cognizable.  As to their remaining claims, Plaintiffs have no reasonable possibility of prevailing on any of these causes of action either.  Accordingly, they are fraudulently joined and there is complete diversity over this action.

> **A. There Is No Reasonable Likelihood That the Plaintiffs Will Prevail On Their Fraud Claims Against the Employee Defendants Because They Fail to Establish Knowledge Or Bad Faith On Their Part.**

The Eleventh Circuit's recent holding in *Legg v. Wyeth*, and the recent decisions by this Court and other Alabama federal courts following the *Legg* rationale, confirm that the Plaintiffs have no reasonable possibility of prevailing on their fraud claims against the Employee Defendants because the Plaintiffs fail to establish knowledge or bad faith on the part of the Employee Defendants.

> **1.    The *Legg* Case Is On All Fours With The Facts Here.**

In *Legg*, plaintiffs Carl and Dorothy Legg asserted numerous claims against Wyeth, a pharmaceutical manufacturer, and several of its professional representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the Wyeth medicine, Redux.  Wyeth removed the case on diversity grounds, arguing that the Leggs had fraudulently joined a non-diverse professional representative.  Wyeth supported its removal with affidavits from its non-diverse professional representatives, which stated in pertinent part:

> My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. . . . I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings. . . . I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 428 F.3d at 1321.

In response to Wyeth's submission, the Leggs offered as "evidence" voluminous training materials used by Wyeth and its professional representatives in marketing Redux as well as affidavits from several physicians stating the professional representatives had made misrepresentations to them, to contradict the affidavits offered by the defendants.  *Id.* at 1322 and n.4.  Like the Plaintiffs here, the Leggs argued that the training materials established that the professional representatives had knowledge of adverse events associated with the medicine they were marketing and included Wyeth's mandate that such information should not be shared with anyone outside the company, including plaintiff's physician.  (*See* Legg Mtn. for Remand, p. 13, attached as **Exhibit G**).[6]

In addressing the district court's remand of the case in light of all the evidence, the Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the professional representative], as an individual employee, personally liable for any wrongful

---

[6] The plaintiffs in *Legg* offered the following "evidence" that the professional representatives had knowledge:  Wyeth provided their sales team with promotional and educational materials regarding Redux to be used in detailing physicians. According to the plaintiffs, the professional representatives went through a Redux sales training program where they were given information regarding the safety and effectiveness of Redux as well as information related to adverse events associated with it.  The plaintiffs further claimed that the professional representatives learned disingenuous sales strategies to be used in selling Redux, including withholding information from physicians. When Redux was launched, Wyeth knew of risks related to pulmonary hypertension, primary pulmonary hypertension, and the use of diet drugs.  This information was passed along to their professional representatives, according to the plaintiffs, but they were directed not to reveal this information to anyone outside the company, including prescribing physicians, or they would be at risk for discipline or termination for violating their Employee Confidentiality Agreement.  (*See* Legg Mtn. for Remand, pp. 12-13).  All of this "evidence" was before the *Legg* court, and the court determined that the plaintiffs had not provided any evidence of knowledge allowing them to maintain a cause of action for fraud against the professional representatives.  *See Legg*, 428 F.3d at 1324.

action by Wyeth in the absence of evidence that [the individual professional representative defendants] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at 1324-25. The court explained further that when a defendant presents evidence such as declarations that are not disputed by plaintiff, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.* at 1323. *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *14 (M.D. Ala. Dec. 19, 2005). Thus, the Eleventh Circuit found remand had been improvidently granted, noting that "the Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Id*. at 1325 (quoting *Wecker v. Nat'l Enameling and Stamping Co.,* 204 U.S. 176, 186 (1907)).

The Eleventh Circuit's decision in *Legg* confirms long-standing Alabama law to the effect that "there is no reasonable basis to predict that an Alabama Court would find [the professional representative], as an individual employee, personally liable for any wrongful action by [his company] in the absence of evidence that [he or she] knew or should have known of [the medication's] allegedly dangerous effects." *Id.* at 1324-25; *accord Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002) (discussing elements of fraud claims under Alabama law). *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005) (discussing *Legg*).

For that reason, courts applying Alabama law have held that simply alleging fraud against professional representatives in cases similar to this does not defeat diversity jurisdiction. *See, e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001); *Gordon*, *supra*. In such instances, the claims have been deemed fraudulent because those allegations did not satisfy an "essential element[] of fraud, most obviously that the sales professionals knew that Rezulin was unsafe at the

14

time they spoke but withheld the truth to mislead Plaintiff." 133 F.Supp.2d at 283 & 284 n.29 (*citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812-13 (2nd Cir. 1996) (to satisfy knowledge requirement of fraud claim, plaintiff must allege circumstances to show that defendants knew their representations were false when made)).[7]  Thus, as the Rezulin MDL Court held, remand should be denied where, as here, Plaintiffs merely "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to sales people through the use of the catch-all attribution to 'defendants.'"  *Id.* at 283.  *See also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal").

Similarly, in *Gordon v. Pfizer*, the professional representative presented a declaration stating that "he had no specialized knowledge of Bextra" which was undisputed by plaintiff's conclusory allegations and deductions.  *Gordon*, 2006 WL 2337002, at*6 (**Ex. K** hereto).  Citing *Legg*, the Court concluded that "[w]ithout any competent evidence that [professional representative] made knowing misrepresentations or acted in bad faith – and particularly in light of [professional representative's] [declaration] . . . there is 'no reasonable possibility' that an Alabama court would conclude that he is liable for fraud and misrepresentation."  *Id.*

Here, (as in *Legg, Bloodsworth* and *Gordon*), Employee Defendants have submitted declarations stating unequivocally that:

> At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

---

[7] Although these quotations are contained in the section of the opinion dealing with two fraudulent joinder cases from Mississippi, the court also applies this reasoning to the Alabama cases later in the opinion saying "the Alabama complaint suffers from the same defect as the Mississippi cases joining sales representatives . . . ." *Id.* at 286.

I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including but not limited to**,** Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

I made no knowing misrepresentation concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

I have never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

I have never met nor spoken with Clifford Bailey, Clifford Black, Wesley Calhoun, Curtis Deason, Ruth Graves, Mickey Grizzard, Jimmy Perry, Herbert Stanley Sikes, or Phillip Thompson.

I have never made any presentations to the general public regarding Vioxx.

(*See* Declarations of Employee Defendants, collectively attached as Exhibit F to Merck's Notice of

Removal).

Like the plaintiffs in *Legg*, the Plaintiffs here have not offered any evidence to dispute the testimony of the Employee Defendants that, if they conveyed erroneous information to physicians, they had no knowledge of doing so, and that they never acted in bad faith.  To the contrary, like the plaintiffs in *Legg*, the Plaintiffs here have only attached various documents and training materials supporting general allegations against Merck, none of which establish either the knowledge or bad faith elements of a fraud claim against these Employee Defendants.[9]    In fact, and contrary to Plaintiffs' suggestion, to the extent the Court considers these exhibits as evidence at all, they must be viewed as establishing Merck's very point – the Employee Defendants received all the information they conveyed to physicians from Merck and had no independent knowledge concerning the safety or effectiveness of Vioxx.   Indeed, these are the very same types of documents offered by the plaintiffs in *Legg* and rejected by the Eleventh Circuit as insufficient to refute the testimony of the Employee Defendants.

Plaintiffs' reliance on these exhibits is misplaced for other reasons as well.  First, Plaintiffs principally argue that the Merck training program entitled "Dodgeball" establishes their fraud claim against the Employee Defendants.  (*See* Doc. 25, pp. 27-34).  It is uncontested, however, that the Employee Defendants in this case were never trained under the Dodgeball program and never received the Dodgeball materials.  (*See* Declarations, attached as Exhibit F to Notice of Removal).  Second, other training materials attached by Plaintiffs make no mention of Vioxx, much less make any reference to its safety and efficacy.  Thus, none of these materials are relevant to the issue before the Court.

---

[9] Indeed, the plaintiffs in *Legg* offered *more* compelling evidence than the Plaintiffs here by submitting affidavits from physicians which stated the professional representatives made false representations to them concerning the safety and effectiveness of the Wyeth medicine which they relied upon in prescribing it.  *See Legg*, 428 F.3d at 1322.

In fact, contrary to the Plaintiffs' arguments, the facts here are on all fours with *Legg*. Like the professional representatives in *Legg*:

- The Employee Defendants have made no representations to the Plaintiffs;

- The Employee Defendants here did not make any knowing misrepresentations to physicians about Vioxx, (*see* Declarations of Employee Defendants);

- Any information used by the Employee Defendants in their dealings with physicians about Vioxx came from their employer, (*id.*);

- The Employee Defendants were not even trained on Dodgeball, (*id.*);

- The Employee Defendants did not draft the prescribing information or warnings and had no responsibility to conduct independent research, (*id.*);

- The Employee Defendants had no knowledge related to Vioxx beyond what was given to them by Merck;[11]  and

- They acted in good faith at all times with physicians who prescribed Vioxx. (*id.*).

Plaintiffs have failed completely to supply any evidence or even make any specific allegations related to any specific knowledge on the part of any one of the named Employee Defendants, relying instead on general allegations against Merck. In so doing, Plaintiffs have failed to provide any evidence to dispute any of the above facts, and thus, these facts must be taken as true.

Without competent evidence that the Employee Defendants made knowing misrepresentations to the Plaintiffs' prescribing physicians or acted in bad faith, there is "no reasonable possibility" that an Alabama court would conclude that the professional representatives breached a duty to Plaintiffs. *See Legg,* 428 F.3d at 1324 (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)) (stating "those who are only conduits through which faulty information is supplied by one person to a

---

[11] Any "evidence" the Plaintiffs refer to which is information in the public domain cannot be used to demonstrate knowledge or notice on the part of the Employee Defendants because it would also constitute knowledge or notice to the public as well.

third person cannot be held liable for fraud unless they acted in bad faith"); *see also Montgomery Rubber and Gasket Co., Inc. v. Belmont Machinery Co., Inc.*, 308 F. Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged misrepresentation]"); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005).   Therefore, Plaintiffs' Motion to Remand is due to be denied under the authority of *Legg*.

      **2.**      **Plaintiffs attempts to evade the binding effect of *Legg* fail for other reasons.**

First, Plaintiffs can cite to only two Vioxx cases and one other pharmaceutical case (*Tracy v. Eli Lilly and Co.*, Case No. 2:06-cv-00536-VEH) involving the fraudulent joinder of professional representatives that have been remanded in the Northern District of Alabama since *Legg*. While Judge Hopkins did remand the *Tracy* case, since *Legg* was decided, a majority of judges in Alabama have been committed to staying cases where sales representatives have been fraudulently joined. *See Partin v. Merck & Co., Inc.*, No. 2:06-cv-00226- WMA (N.D. Ala. Feb. 7, 2006) (granting defendants' motion to stay) (attached hereto as **Ex. H**); *Miller v. Merck & Co., Inc.*, No. 6:06-cv-00143-JEO (N.D. Ala. Jan. 31, 2006) (granting defendants' motion to stay) (attached hereto as **Ex. I**); *see also Faircloth v. Merck & Co., Inc.*, No. 2:06-CV-184-RDP, at 3 (N.D. Ala. Mar. 3, 2006) (refusing to lift its previously entered stay and speaking "against the tactic of joining individual sales representatives in pharmaceutical products liability cases in an effort to defeat a federal court's jurisdiction") (citing *Legg*, 428 F.3d at 1324-25) (attached hereto as **Ex. F**). In fact, as the *Gordon* and *Faircloth* opinions demonstrate, the Employee Defendants in this case are fraudulently joined.

Further, Plaintiffs' reliance on Judge Hopkins's opinion in *Patricia Tracy v. Eli Lilly and Company*, U.S. District Court for the Northern District of Alabama, Civil Action No. 06-CV 00536-

VEH, is unpersuasive because the facts of the instant case are significantly more in line with *Legg* than with *Tracy*. In *Tracy*, Judge Hopkins held that, unlike the "uncontroverted testimony establishing [the sales representatives] lack of knowledge" in *Legg*, the documents produced by Tracy "adequately challenged" the sales representative's testimony for purposes of determining whether the plaintiff could maintain a cause of action against her. *Id*. at 16-17 (explaining that the sales representative had testified that she had no knowledge of any risks associated with the use of Zyprexa, however, the plaintiff produced documents given to its sales force which contradicted that testimony). Additionally, as discussed more fully in a later section of this brief, Judge Hopkins in *Southern v. Pfizer, Inc., et al*., U.S. District Court for the Northern District of Alabama, Civil Action No. 06-CV-00836-VEH (**Ex. L** hereto) clarified her opinion in *Tracy*. As shown below, this case is more closely analogous to *Southern*, *Legg*, and *Gordon* than it is to *Tracy*.

Further, an additional yet subtle distinction between *Tracy* and this case is that, in *Tracy,* there was evidence of a direct connection between the Eli Lilly sales representative and the plaintiff's prescribing physician, while here there is none. In fact, here, the nine individual Plaintiffs altogether refuse to disclose the identity of their prescribing physicians.

Moreover, the Plaintiffs here have not provided any evidence to refute the sworn statements of the Employee Defendants. The Employee Defendants have unequivocally stated that they made no knowing misrepresentations regarding the safety or efficacy of Vioxx. The general Merck marketing documents and other Vioxx related documents attached to Plaintiffs' Motion to Remand do nothing to refute or contradict this testimony. As such, Plaintiffs have failed to provide any direct evidence of any knowing misrepresentation made by even a single one of the Employee Defendants. For this reason, this Court should find that this case is most closely analogous to *Legg*, and, therefore, that there is "no reasonable basis to predict that an Alabama court would find [the professional representatives

personally liable for any wrongful action ...." *Legg*, 428 F.3d at 1324-25; *see also Gordon*, 2006 WL 2337002, at *4.

Plaintiffs also rely on Judge Acker's opinion in *Hales v. Merck & Co., Inc*., Civil Action No. 03-AR-1028-M, Memorandum Opinion, Slip op., June 26, 2003, U.S. District Court, (N.D. Ala.). Plaintiffs' reliance on *Hales* is misplaced. Perhaps most strikingly, the actual holding in *Hales* is contrary to Eleventh Circuit law. The *Hales* court granted remand because it believed it could not consider affidavits to determine whether the defendants were fraudulently joined. *Hales*, slip op. at 6-7 (citing only its own prior unpublished opinion). It is well established, however, that defendants "have the opportunity to submit affidavits, depositions, or other evidence to support removal." *Fowler v. Safeco Ins. Co. of Am*., 915 F.2d 616, 617 (11th Cir. 1990), superseded by statute on other grounds as stated in *Schrader v. Legg Mason Wood Walker, Inc.*, 880 F. Supp. 366, 369 (E.D. Pa. 1995); *see also Lott v. Metropolitan Life Ins. Co*., 849 F. Supp. 1451, 1452 (M.D. Ala. 1993) (Thompson, J.) ("A defendant may submit affidavits, depositions, or other evidence to support removal."). In fact, the Eleventh Circuit addressed this precise issue definitively in *Legg* stating it is "entirely proper" for the court "to consider affidavits submitted by the defendants ... in deciding ... whether a possibility exists that Plaintiff[] ha[s] stated a . . . cause of action against [defendants]." 428 F.3d at 1323.  As a preliminary matter, Plaintiffs fail to acknowledge that this decision was reached by Judge Acker prior to an MDL being established for Vioxx cases, and prior to it being evident that a significant number of Vioxx cases would be filed by plaintiffs seeking to thwart diversity jurisdiction through the fraudulent joinder of professional representatives. At the time of Judge Acker's decision, there was little or no risk of inconsistent decisions regarding remand and no MDL judge who was already considering identical fraudulent joinder issues in multiple cases under Alabama law. At present, there are several such cases before Judge Fallon and there are likely more to come.  Therefore, contrary to the core holding of

*Hales*, not only is the Court entitled to review the declarations of the Employee Defendants, but it must also consider the evidence contained therein as undisputed unless Plaintiffs offer evidence to the contrary. *See id.* ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint.").

Also contrary to *Hales* is the fact that the Alabama Supreme Court has not addressed these exact circumstances.  This does not automatically mean that there is a reasonable possibility that a cause of action can exist against these Employee Defendants absent evidence of knowledge. *See id.* at 1325 n.5 ("The potential for legal liability `must be reasonable, not merely theoretical' ... [i]n considering possible state law claims, possible must mean `more than such a possibility that a designated residence can be hit by a meteor tonight."); *Hales*, slip op. at 6.

Likewise, Plaintiffs offer several other Vioxx cases in which district court judges ordered the cases remanded. (*See* Doc. 14, pp.2-3, citing *Crook v. Merck & Co., Inc.*, Civil Action No. 05- VEH-1045-S; *Slatton v. Merck & Co., Inc.*, Civil Action No. 05-VEH-1056-S).  Plaintiffs fail to recognize, however, that those cases also were decided prior to the Eleventh Circuit's clarification of the law of removal in *Legg* and for that reason, they too are unconvincing.  After *Legg,* the holdings of these cases must be considered limited because the Eleventh Circuit has made clear that a court cannot find a plaintiff has a "reasonable possibility" of recovery in the absence of evidence rebutting the Employee Defendants' declarations. *See Legg*, 428 F.3d at 1323- 24.12.

**B.    Plaintiffs' Claims For Fraud Fail Because They Do Not Demonstrate Reliance By the Plaintiffs' Prescribing Physicians And Are Barred By The Learned Intermediary Doctrine.**

Plaintiffs' fraud claims against the Employee Defendants fail for other reasons.  First, an essential element of these claims is reliance on the alleged misrepresentation.  *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression).  Yet Plaintiffs only summarily allege that the Plaintiffs' prescribing physicians relied on the Employee Defendants' alleged misrepresentations in prescribing Vioxx to each of the Plaintiffs.  It is uncontested, however, that the Employee Defendants who worked for Merck during the pertinent time in question, never met nor spoke with the Plaintiffs about Vioxx.

Further, Plaintiffs cannot contend that any of their prescribing physicians relied on anything the Employee Defendants allegedly said since Plaintiffs fail/refuse to identify any of their prescribing physicians or offer any evidence the Employee Defendants had any contact with these physicians.  Indeed, the Complaint in this action is filed by nine individuals concerning their individual use of Vioxx and therefore presumably, there are probably several prescribing physicians.   The Plaintiffs, however, choose not to make distinct allegations of specific wrongdoing as to each of the Employee Defendants.  Instead, they bring broad boilerplate allegations of fraud and suppression.  In the Plaintiffs' game of "cat and mouse", Plaintiffs repeatedly mention their "prescribing physicians" (*see, e.g.,* Doc. 25, pp. 11, 14, 15, 17, 18, 23, 26) and repeatedly allege that misrepresentations were made to them, but they refuse to disclose the identity of these physicians or provide the exact misrepresentations made to them.   These antics should not be tolerated by this Court.

Likewise, Plaintiffs fail to allege that any of their prescribing physicians relayed any misinformation to them or that they were even aware of the alleged statements made to the prescribing physicians.   Plaintiffs cite several cases as support for their fraud claims, but none of the cases cited allowed a fraud claim in the absence of reliance by the Plaintiffs.  *See, e.g., Delta Health Grp., Inc. v.*

*Stafford*, 887 So. 2d 887, 899 (Ala. 2004) (finding plaintiff could not maintain her fraud claim because there was no evidence "[the plaintiff] relied to her detriment on any of the alleged misrepresentations" and stating neither *Thomas v. Halstead*, 605 So. 2d 1181 (Ala. 1992), nor any other authority "excus[es] a plaintiff from the requirement of establishing *his* reliance on the defendants' misrepresentation") (emphasis added). Without some evidence or specific allegation that the Plaintiffs were *aware* of an alleged misrepresentation by these Employee Defendants, these claims must fail for lack of requisite reliance.

Furthermore, even if one or more of the individual Plaintiffs could establish a misrepresentation was made to his/her prescribing physician, their misrepresentation and suppression claims would still fail as a matter of law. The prescribing physicians in this case are presumably licensed physicians with extensive training, and are capable of making their own independent determinations regarding medication and treatment of his/her patients.[13]    The recognition that doctors are trained and informed professionals who are in the best position to make decisions about their patients' care is the basis of the learned intermediary doctrine. *See Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984) (observing that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient and concluding that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer"); *see also Morguson v. 3M Co.*, 857 So. 2d 796, 801-02, n.1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warnings are too complex to be fully appreciated by

---

[13] It is also reasonable to presume such a physician keeps abreast of the latest FDA reports, pharmaceutical labeling, and medical journal articles as part of his continuing education and practice. Any articles or reports of this type Plaintiffs allege the Employee Defendants concealed would have been public and available to any practicing physician. As such, these items could not have been suppressed.

the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000)).  The

learned intermediary doctrine bars Plaintiffs' claim against the Employee Defendants for any alleged

failure to disclose and establishes there is no reasonable likelihood that Plaintiffs can prevail on their

claim against these individual defendants.  *In re Norplant Contraceptive Prods. Liab. Litig.*, 165 F.3d

374, 378 (5th Cir. 1999) (applying learned intermediary doctrine in deceptive trade practices action).

     **C.**     **Plaintiffs' Fraud Claims Against The Employee Defendants Do Not Satisfy The Particularity Requirement Of Rule 9(b).**

Finally, there is no reasonable likelihood that Plaintiffs will prevail on their claims of fraud and

deceit against the Employee Defendants because they have failed to plead these claims with the

particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of

Civil Procedure, both of which call for dismissal if averments of fraud are not stated "with

particularity."  *See Gordon*, 2006 WL 2337002, at *7 (finding of fraudulent joinder supported by

plaintiff's violation of Rule 9(h) by failing to "specify time, place, content or speaker of any particular

representations by [sales representative]"); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.

Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state

defendants violated Rule 9(b) and supported finding of fraudulent joinder);  *United States ex rel.

Clausen v. Laboratory Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002)("this Court has endorsed the

dismissal of pleadings for failing to meet Rule 9(b)'s standards), *cert. denied*, 537 U.S. 1105 (2003);

*Mixon v. Cason*, 622 So. 2d 918, 920 (Ala. 1983).[15]

---

[15] Because Plaintiffs have not identified the physicians involved in the alleged fraud, Plaintiffs have not provided the Defendants with adequate notice of their fraud claims.  Accordingly, Plaintiffs' fraud claims are barred by Rule 9(b) because Plaintiffs fail to plead these fraud-based claims with the requisite particularity. *See United States ex rel. Clausen v. Laboratory Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"), *cert. denied*, 537 U.S. 1105 (2003); *Mixon v. Cason*, 622 So. 2d 918, 920 (Ala. 1993) ("The plaintiff did not plead with the specificity required by Rule 9(b)" and "the trial court properly dismissed"), *reh'g denied*, 639 So. 2d 961 (Ala. 1993).

Here, Plaintiffs fail to show the "time, place and purported contents of the false representations" allegedly made by each of the Employee Defendants to each of the individual Plaintiffs' prescribing physicians as required by the rule, and also fail to identify the physicians to whom any allegedly fraudulent statements were made. *See Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995); *see* Ala. R. Civ. P. 9(b) (Committee Comments on 1973 Adoption, subdivision (b)) (plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and the identification of what has been obtained"); *see also Legg*, 428 F.3d at 1322 n.4 (stating plaintiff failed to offer any evidence professional representatives promoted the drug at issue to the plaintiff's prescribing physician and did not even identify the prescribing physician in the complaint). Likewise, Plaintiffs fail to allege with particularity reliance by any prescribing physician, another requirement for fraud claims under Alabama law. *See Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004).

Plaintiffs go to great lengths to describe the marketing campaign for Vioxx, but fail to state how, when, where, and most importantly, *if* Plaintiffs heard of this campaign. Nor do Plaintiffs state when, where, or even *if* any of the Plaintiffs' physicians allegedly received this information or, most importantly, *if* his or her prescribing decisions were affected in any way by this information. Plaintiffs have offered nothing to demonstrate that the Employee Defendants even called on a single one of any of the individual Plaintiff's treating or prescribing physicians. The fact that Plaintiffs' counsel has possession of Merck's marketing materials produced in other Vioxx cases does not link those marketing materials to the prescription of Vioxx written for any of the Plaintiffs. Further, a detailed description of these materials without details regarding if and how they were presented to the

prescribing physicians or, more importantly, to Plaintiffs, does not satisfy the requirements of Rule 9(b).[17]

Further, Plaintiffs have utterly failed to distinguish among any of the named Plaintiffs and then among any of the named Employee Defendants in making the allegations against them. General allegations of the "Plaintiffs" against "Defendants", "sales representatives" or all named Employee Defendants do not meet the requirements of Rule 9(b). *See McAllister Towing & Transport. Co.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001) (dismissing action where allegations of fraud in complaint failed to distinguish among defendants explaining that "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant"). Indeed, with nine individual Plaintiffs who each advance claims based upon their own individual use of Vioxx, in order to satisfy 9(b), each Plaintiff must a state the how, what and when, and to whom facts surrounding their claims of fraud. In other words, the Plaintiffs' joinder of their individual claims without making any attempt to plead each of their claims with particularity underscores the fact that the Employee Defendants are fraudulently joined. In short, Plaintiffs' Complaint falls far short of the heightened pleading standard for fraud, and as numerous courts have recognized, their Motion to Remand should be denied.

> **D.    Employees Are Not "Sellers" or "Manufacturers" And Thus Cannot Be Held Liable Under the Plaintiffs' Products Liability Claims.**

To the extent that Plaintiffs assert products liability claims against the Employee Defendants, there is no reasonable basis to predict that they can prevail on these claims because these claims apply only to "sellers" and "manufacturers," and the Employee Defendants are not "sellers" and

---

[17] "The pleader . . . must use more than generalized or conclusory statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *Lyde v. United Ins. Co. of America*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)).

"manufacturers" of the prescription medicine Vioxx. Although the issue has not been squarely addressed by the Alabama Supreme Court, many decisions from that Court, as well as other Alabama law, support the proposition that sales representatives cannot be considered sellers under the AEMLD or any other Alabama products liability law. *See Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (to state a breach of warranty cause of action, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product"); *Turner v. Westhampton Court, LLC*, 903 So. 2d 82, 90 (Ala. 2004)(finding an AEMLD claim and its common law counterpart of negligent failure to warn share common elements because both are "creatures of common law" and "[c]entral to both theories of a failure-to-warn claim is the absence of a warning accompanying the sale of a product").

Here, Employee Defendants have submitted affirmative proof through their declarations that they are not "sellers" or "manufacturers" for purposes of Alabama law. (*See* Declarations). Therefore, they cannot be held liable under product liability causes of action. *See, e.g., Gordon,* 2006 WL 2337002, at *7 ("To the extent Plaintiff asserts . . . claims against [sales representatives] for violation of AEMLD . . . there is no reasonable basis to predict that he can prevail as these claims only apply to "sellers" and "manufacturers" and [a sales representative] is not a "seller" or "manufacturer" of

Bextra."); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337 (M.D. Ala. Dec. 19, 2005);[18] *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286-87 (S.D.N.Y. 2001) ("The sales representative . . . neither manufactured, sold, nor supplied [the drug] . . . [but was] an agent of the manufacturer and seller. In light of the Alabama Supreme Court's clear explanation of AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."); *In re Baycol Prods. Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (discussing liability of a professional representative under the AEMLD); *Southern v. Pfizer, Inc.*, U.S. Dist. Court for Northern District of Alabama, Case No. 06-cv-00836-VEH (same)(citing *In re Rezulin*, 133 F.Supp.2d at 287-88 and *In re Baycol Prods. Litig.*, M.D.L. No. 1431, *4-*7).

The United States District Court for the District of Minnesota's decision in *In re Baycol Products Litigation*, MDL-1431 (D.C. Minn. Mar. 26, 2004), is particularly instructive. There, in one of the cases considered by the Baycol MDL Court, the plaintiff brought suit in Alabama state court concerning the plaintiff's use of the pharmaceutical Baycol. In addition to the manufacturer (Bayer), the plaintiff also sued several district managers and professional representatives. The cases were removed to federal court on the basis that the non-diverse district managers and professional representatives were fraudulently joined. The plaintiff moved to remand the case, raising the exact

---

[18] As Judge DeMent stated in the *Bloodsworth* opinion: "Mrs. Bloodsworth's warranty claims against Lanier fail for the same reason that the AEMLD claim fails, as a breach of warranty claim is viable only against the 'seller' of the goods. See *Ala. Code* §§ 7-2-313(1), 7-2-314(1) & 7-2-315(1) (2002) (express and implied warranty claims refer to the creation of warranties by the 'seller'). Lanier is not considered to be the 'seller' of the alleged defective products for purposes of the breach of warranty claims; instead, the manufacturer (i.e., Smith & Nephew) is deemed the seller and Lanier is deemed its 'agent.' *In re Baycol Prods. Liab. Litig.*, M.D.L. No. 1431 (on fraudulent joinder analysis, finding that under Alabama law sales representatives could not be liable for claims of breach of express or implied warranty because they were neither manufacturers nor sellers of Baycol, but rather were merely 'agents' of the seller of Baycol); *see also Rutledge,* 733 So. 2d at 417 (holding that builder who hired subcontractor to install door was not the 'seller' of door for purposes of establishing a claim for breach of implied warranty of fitness). Similarly, a claim for negligent manufacture or sale is cognizable against the manufacturer or seller, and Lanier again is deemed neither under Alabama law. *See In re* Baycol Products Liability Litigation, M.D.L. No. 1431, *6-*7. Accordingly, the court finds that Mrs. Bloodsworth's breach of warranty and negligence claims against Lanier fail under the fraudulent joinder analysis."

arguments advanced by Plaintiffs' counsel here. The district court denied this motion, holding with

regard to the AEMLD claim:

> Defendants argue that the district managers and sales professionals are not 'sellers' of Baycol, as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to 'plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products.' *Atkins v. American Motors Corp., et al.*, 3335 So. 2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. *Bowman v. Coleman Company, Inc.*, Civil Action No. 96-0448-P-C (S.D. Ala. 1996), Attached as Ex. G to Removal Petition. The court recognized that the defendant sales manager 'had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers.' Id. at *7. The court also noted that it is the corporation that reaps the profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. 'In short, policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales representatives.'

(**Ex. J**, at pp. 4-5).

Plaintiffs offer little instructive authority to find a products liability claim can survive against

the Employee Defendants other than Judge Hopkins' decision in *Tracy*. Plaintiffs fail to recognize,

however, that the *Tracy* holding was, by its own admission, limited – and only applicable to the

specific facts present in *Tracy*. *See Southern*, at 13 (**Ex. L** hereto). In fact, Judge Hopkins specifically

noted that "a sales representative is not a 'seller' as defined under the AEMLD in certain instances."

*Tracy*, at 13; *Southern*, at 11. In *Southern*, a case factually similar to the instant case, Judge Hopkins

clarified her holding in *Tracy*; she wrote that the sales representatives were not "sellers" as the plaintiff

had failed to provide evidence of "certain necessary causal links" such as knowledge on the part of the

professional representatives or evidence they provided misinformation to the plaintiff's prescribing

physician. *Id.* at 13.

30

As in *Southern*, the Plaintiffs here have not provided the "necessary causal links." Despite Plaintiffs' contention that some of the Employee Defendants may have called on one of the Plaintiffs' prescribing physicians because he/she detailed Vioxx to East Alabama physicians, this does not provide any evidence of knowledge or wrongdoing on the part of the Employee Defendants. Indeed, the sales representatives in *Southern* had called on the plaintiff's prescribing physician. *Southern*, at 5. Nor do the various Merck marketing documents submitted by Plaintiffs provide any cognizable link between the Employee Defendants and Plaintiffs' injuries. Without any actual evidence tending to show these required causal links, there is no reasonable possibility that the Plaintiffs can state a cause of action against the Employee Defendants under the AEMLD.

The only other case the Plaintiffs cite for their argument that they can maintain a cause of action under the AEMLD is *Hales v. Merck & Co., Inc*., Case No. 03-AR-1028-M. However, *Hales* does not accurately reflect governing law on this subject. The *Hales* court reasoned that unless the Alabama Supreme Court had addressed the precise circumstances (i.e., a professional representative in a prescription medication case), there would still remain some possibility that plaintiffs could state a claim. *Hales*, slip. op. at 4. This misreads the law by ignoring the "reasonable likelihood" standard under which motions to remand are assessed.

In short, Alabama case law does not support a products liability claim against the Employee Defendants. As such, Plaintiffs have no possibility of recovering from the Employee Defendants on either of these claims.

## CONCLUSION

For the reasons set forth herein, as well as those stated in the Notice of Removal and Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding, Merck respectfully requests that the Court deny Plaintiffs' Motion to Remand and issue a stay of proceedings that would allow the MDL Court to address the motion.  Alternatively, Plaintiffs' Motion to Remand should be denied.

DATED this the 1st day of December, 2006.

> /s/ Ben C. Wilson
> Bar Number: (ASB-1649-I54B)
> One of the Attorneys for Merck & Co., Inc.
>
> Robert C. "Mike" Brock
> F. Chadwick Morriss
> Ben C. Wilson
> RUSHTON, STAKELY, JOHNSTON
> & GARRETT, P.A.
> Post Office box 270
> Montgomery, Alabama 36101-0270
> Telephone:  334/206-3100
> Fax:  334/262-6277
> E-mail:bcw@rsjg.com

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification thereof to the following counsel of record:

James S. Hubbard, Esq.
Thomas J. Knight, Esq.
HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36202
(256) 237-9586

> /s/ Ben C. Wilson
> OF COUNSEL

# Hughes Hubbard & Reed LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726

November 3, 2006

VIA FEDERAL EXPRESS

Jeffrey N. Lüthi, Esq.
Catherine Maida
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E. Room G-255, North Lobby
Washington, D.C. 20002-8004

        Re:     In re: Vioxx® Marketing, Sales Practices and Products
                 Liability Litigation, MDL Docket No. 1657

Dear Sir and Madam:

      Pursuant to J.P.M.L. Rule 7.5(e), Merck hereby notifies the Panel of potential "tag-along actions." This letter is Merck's 179th notification of potential "tag-along actions" and includes cases that have recently been filed in or removed to federal court. Courtesy copies of the complaints and docket sheets for these cases are enclosed.

1. *Bailey et al., v. Merck & Co., Inc. et al.*, C.A. No. 3:06-cv-00979 (M.D. Ala.)
2. *Watts et al., v. Merck & Co., Inc. et al.*, C.A. No. 1:06-cv-02284 (N.D. Ala.)
3. *Bailey et al., v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-06816 (C.D. Cal.)
4. *Dooley et al., v. Merck & Co., Inc.*, C.A. No. 1:06-cv-02165 (D. Colo.)
5. *Franklin v. Merck & Co., Inc.*, C.A. No. 1:06-cv-02164 (D. Colo.)
6. *Spann v. Merck & Co., Inc. et al.*, C.A. No. 8:06-cv-01992 (M.D. Fla.)
7. *Clark-Atchinson v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14287 (S.D. Fla.)
8. *Fairweather et al., v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14289 (S.D. Fla.)
9. *Hudson v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14290 (S.D. Fla.)
10. *Smith et al., v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14291 (S.D. Fla.)
11. *Spano et al., v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14294 (S.D. Fla.)
12. *Trax et al., v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14293 (S.D. Fla.)
13. *Young v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-14292 (S.D. Fla.)
14. *Lemonds et al., v. Merck & Co., Inc. et al.*, C.A. No. 3:06-cv-00840 (S.D. Ill.)

47, Avenue Georges Mandel    1775 I Street, N.W.    350 South Grand Avenue    201 South Biscayne Boulevard    Akasaka Tokyu Building 6F    101 Hudson Street
75116 Paris, France    Washington, D.C.    Los Angeles, California    Miami, Florida    2-14-3 Nagata-cho, Chiyoda-ku    Jersey City, New Jersey
(33) (1) 44.05.80.00    20006-2401    90071-3442    33131-4332    Tokyo 100-0014 Japan    07302-3918
    202-721-4600    213-613-2800    305-358-1666    (81) (3) 3539-2771    201-536-9220

Exhibit A

M00A357502

**Hughes Hubbard & Reed LLP**

15. *Jones v. Merck & Co., Inc.*, C.A. No. 2:06-cv-00363 (N.D. Ind.)
16. *Criglar et al., v. Merck & Co., Inc. et al.*, C.A. No. 4:06-cv-01589 (E.D. Mo.)
17. *Murdie v. Merck & Co., Inc. et al.*, C.A. No. 1:06-cv-01309 (N.D. N.Y.)
18. *Baron v. Merck & Co., Inc. et al.*, C.A. No. 6:06-cv-06533 (W.D. N.Y.)
19. *Benson v. Merck & Co., Inc. et al.*, C.A. No. 6:06-cv-06534 (W.D. N.Y.)
20. *Johnson v. Merck & Co., Inc. et al.*, C.A. No. 6:06-cv-06530 (W.D. N.Y.)
21. *Keenan v. Merck & Co., Inc. et al.*, C.A. No. 6:06-cv-06545 (W.D. N.Y.)
22. *Moore v. Merck & Co., Inc. et al.*, C.A. No. 6:06-cv-06546 (W.D. N.Y.)
23. *Watson v. Merck & Co., Inc. et al.*, C.A. No. 6:06-cv-06551 (W.D. N.Y.)
24. *Brunk v. Merck & Co., Inc.*, C.A. No. 5:06-cv-02638 (N.D. Ohio)
25. *Gilmore v. Merck & Co., Inc.*, C.A. No. 1:06-cv-02636 (N.D. Ohio)
26. *Kerr v. Merck & Co., Inc. et al.*, C.A. No. 5:06-cv-02635 (N.D. Ohio)
27. *Stanco v. Merck & Co., Inc.*, C.A. No. 1:06-cv-02637 (N.D. Ohio)
28. *Stinson v. Merck & Co., Inc.*, C.A. No. 6:06-cv-00468 (E.D. Okla.)
29. *Golla v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-04827 (E.D. Pa.)
30. *De Leon v. Merck & Co., Inc. et al.*, C.A. No. 7:06-cv-00320 (S.D. Tex.)
31. *Everett v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-00480 (S.D. Tex.)
32. *Gonzalez v. Merck & Co., Inc. et al.*, C.A. No. 7:06-cv-00319 (S.D. Tex.)
33. *Gonzalez v. Merck & Co., Inc. et al.*, C.A. No. 7:06-cv-00318 (S.D. Tex.)
34. *Lechuga v. Merck & Co., Inc. et al.*, C.A. No. 2:06-cv-00478 (S.D. Tex.)
35. *Lizardi v. Merck & Co., Inc. et al.*, C.A. No. 1:06-cv-00176 (S.D. Tex.)
36. *Saenz v. Merck & Co., Inc. et al.*, C.A. No. 7:06-cv-00321 (S.D. Tex.)

There is one new case that involves claims relating to prescription drugs other than Vioxx.

1. *Bodenstein v. Merck & Co., Inc. et al.*, C.A. No. 3:06-cv-06728 (N.D. Cal.)

There are fourteen new cases filed in the transferee court.

1. *Adler et al., v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07082 (E.D. La.)
2. *Bearden et al., v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07000 (E.D. La.)
3. *Biscaha v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07009 (E.D. La.)
4. *Damon et al., v. Merck & Co., Inc.*, C.A. No. 2:06-cv-05993 (E.D. La.)
5. *Doss v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07002 (E.D. La.)
6. *Fields v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07010 (E.D. La.)
7. *Hudson v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07011 (E.D. La.)
8. *Jenkins et al., v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07116 (E.D. La.)
9. *Jimenez v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07001 (E.D. La.)
10. *Lampkins v. Merck & Co., Inc.*, C.A. No. 2:06-cv-06552 (E.D. La.)
11. *Sumitra et al., v. Merck & Co., Inc.*, C.A. No. 2:06-cv-06964 (E.D. La.)
12. *Suggs v. Merck & Co., Inc.*, C.A. No. 2:06-cv-07012 (E.D. La.)
13. *Wusstig et al., v. Merck & Co., Inc.*, C.A. No. 2:06-cv-06958 (E.D. La.)
14. *Zonkel v. Merck & Co., Inc.*, C.A. No. 2:06-cv-06965 (E.D. La.)

Exhibit A

M00A357503

Hughes Hubbard & Reed LLP

Additionally, pursuant to J.P.M.L. Rule 7.2(f), we hereby notify the Panel of the following development pertaining to an action that is currently the subject of Panel consideration.

1. *Cabrera v. Merck & Co., Inc. et al.,* C.A. No. 2:06-cv-00466 (S.D. Tex.) was remanded to the County Court at Law Number 2, Nueces County, Texas on October 24, 2006.

Respectfully submitted,

Cecily C. Williams

CCW/eas

Enclosures

3

Exhibit A

M00A357504

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

CHAIRMAN:
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

MEMBERS:
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Robert A. Cahn
Executive Attorney

DIRECT REPLY TO:

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

March 21, 2005

Honorable Ricardo H. Hinojosa
U.S. District Judge
1701 W Bus Highway 83
Bentsen Tower, Suite 1028
McAllen, TX 78501

Re: MDL-1657—In re Vioxx Products Liability Litigation

*Felicia Garza, et al. v. Merck & Co., Inc., et al.*, S.D. Texas, C.A. No. 7:05-17

Dear Judge Hinojosa:

Presently before the Panel pursuant to 28 U.S.C. § 1407 is a notice of opposition to the Panel's conditional transfer order in the above matter pending before you. The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session. In the meantime, your jurisdiction continues until any transfer ruling becomes effective.

If you have a motion pending -- such as a motion to remand to state court (if the action was removed to your court) – you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue. The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman

**DEFENDANT'S EXHIBIT B**

1.

1    UNITED STATES DISTRICT COURT
2    EASTERN DISTRICT OF LOUISIANA
     NEW ORLEANS, LOUISIANA
3
4
5
6    IN RE:  VIOXX PRODUCTS           *    Docket MDL 1657-L
        LIABILITY LITIGATION          *
7                                     *    June 23, 2005
                                      *
8    * * * * * * * * * * * * * * *    *    9:30 a.m.
9
10
11              STATUS CONFERENCE BEFORE THE
                HONORABLE ELDON E. FALLON
12             UNITED STATES DISTRICT JUDGE
13   APPEARANCES:
14
15   For the Plaintiffs:        Seeger Weiss
                                BY:  CHRISTOPHER A. SEEGER, ESQ.
16                              One William Street
                                New York, New York 10004
17
18   For the Defendants:        Stone Pigman Walther Wittmann
                                BY:  PHILLIP A. WITTMANN, ESQ.
19                              546 Carondelet Street
                                New Orleans, Louisiana 70130
20
21   Official Court Reporter:   Toni Doyle Tusa, CCR
                                500 Poydras Street, Room B-406
22                              New Orleans, Louisiana 70130
                                (504) 589-7778
23
24
25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.

DEFENDANT'S
EXHIBIT

C

21

1   with this issue in that fashion. We have a confidentiality
2   agreement which will allow the defendants comfort to produce
3   certain information without fear that their future economic
4   security is in jeopardy. The remand issues.
5           MR. SEEGER: Judge, that's in the report. You are
6   going to be dealing with remand motions as a group by
7   procedures that you will be setting up.
8           THE COURT: Right. This is always an issue which the
9   MDL Court has to look at. The question is posed. There are
10  various issues of remand in various cases throughout the
11  country. Again, a significant advantage of the MDL concept is
12  some consistency. The Rule of Law is really based on
13  consistency. If different decisions are made by numerous
14  judges, then you have no consistency and no predictability and
15  no one knows exactly what to do or how to do it. It's easier
16  if one court decides some of these matters than if 50 or 100
17  courts decide the matter.
18          I'm conscious of dealing with the remand as
19  quickly as possible, but I do want to get them all together,
20  look at them, see if I can group them in some way, and then
21  direct my attention on each particular group and deal with that
22  issue in a consistent and fair fashion for that group. I will
23  be dealing with them as quickly as I can, but also with an idea
24  of having more consistency. I'll be speaking about this
25  perhaps later on because I do have some concepts and ideas

⊃⊃ᶜⁱ⁴ ρ

FILED

2005 Jun-30 AM 10:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUANELL Y. McBRAYER WILKES, et al., )
                                )
         Plaintiffs,           )
                                )
v.                               )    CIVIL ACTION NO. 05-RRA-1214-S
                                )
MERCK & CO., INC., et al.,      )
                                )
         Defendants.        )

## ORDER
(Re Defendants' Motion to Stay, ct. doc. 5; Plaintiff's Motion to Remand, ct. doc. 7.)

The complaint and the parties' submissions concerning the above-stated motions have

been studied. The plaintiffs allege that the treating resident physicians knew sufficient

information about Vioxx and Celebrex to appreciate that neither should have been prescribed

to the plaintiffs. They also contradictorily allege that Merck concealed material information

from the physician defendants, who would have acted differently if properly warned

regarding the risk and dangers associated with Vioxx and Celebrex. Moreover, the plaintiffs'

only allegation against the physicians is the conclusory allegation that they "negligently,

wantonly, and/or wrongfully prescribed and/or provided samples of the brand-name

prescription drugs Vioxx and Celebrex to the plaintiffs with actual and/or constructive

knowledge of the risk and dangers associated with the use of Vioxx and Celebrex."

*Complaint* ¶ 63. Under Alabama law,

> In any action for injury, damages, or wrongful death, whether in contract or
> in tort, against a health care provider for breach of the standard of care the
> plaintiff shall include in the complaint a detailed specification and a factual
> description of each act and omission alleged by plaintiff to render the health



DEFENDANT'S
EXHIBIT
D

M00081357751

> care provider liable to plaintiff and shall include when feasible and
> ascertainable the date, time, and place of the act or acts. . . . any complaint
> which fails to include such detailed specification and factual description of each
> act and omission shall be subject to dismissal for failure to state a claim upon
> which relief may be granted.

Ala. Code § 6-5-551. It is noted that numerous cases against Merck have been filed in this court and have been transferred to the MDL court.

Because of the contradictory allegations against the physician defendants, and the failure of the complaint to comply with Alabama law concerning specificity in making allegations against physicians, it appears to be a good possibility that it will be determined that the individual defendants were fraudulently joined. If it were <u>clear</u> that these physicians were not fraudulently joined, and if judges from this district were ruling on the motions to remand, this motion to stay might be denied and the motion to remand ruled on. The opposite being the event, and in order to have consistent rulings, the motion to stay is GRANTED, and all proceedings in this case, including the motion to remand, are STAYED pending action by the MDL court.

DONE this 30th day of June, 2005.

ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE

M0006135752

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARGUERITE WOODS,              )
                              )
    Plaintiffs,             )
                              )
v.                            )   CIVIL ACTION NO. 05-0425-CG-M
                              )
MERCK & CO., INC., et al.,    )
                              )
    Defendants.             )

## ORDER

This matter is before the court on motion of defendant, Merck & Co., Inc. ("Merck"), to stay to allow transfer to the MDL (Doc. 3), plaintiff's response (Doc. 15), and plaintiff's motion to remand and for expedited hearing (Doc. 14). For reasons discussed below, the court finds that a stay is appropriate.

Merck removed this case to this court claiming diversity jurisdiction in that the resident defendants were fraudulently joined. Plaintiff contends that Merck has not demonstrated that plaintiff has failed to establish a colorable claim against the resident defendants. As a result, plaintiff asserts that the action should be remanded. Plaintiff cites similar cases in this district as well as other districts in Alabama which have concluded that remand was appropriate. However, the court notes that this court has also found it appropriate to stay such actions in the past. For instance, this court stayed the proceedings in Faith Beverly et al. v. Wyeth, et al., 03-cv-0866-CB-C (S.D. Ala.) stating the following:

    A district has the authority to stay proceedings in cases pending before it.
    Landis v. North American Co., 299 U.S. 248 (1936); CTI-Container Leasing Corp. v.
    Uiterwyk, 685 F.2d 1284 (11th Cir. 1982) "[T]he power to stay proceedings is

incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 166. This authority extends to cases in which a transfer decision by the MDL Panel is pending. [Footnote: The existence of a conditional transfer order does not divest the transferor court of jurisdiction, 18 U.S.C. § 1407; JPML Rule 1.5.] See, e.g., Hertz Corp. v. The Gator Corp., 250 F.Supp.2d 421, 424 (D.N.J. 2003). The existence of jurisdictional objections do not affect either the transferor court's ability to issue a stay or the MDL Panel's authority to transfer an action. Moore v. Wyeth-Ayerst Laboratories, 236 F.Supp.2d 509, 512 (D. Md. 2002).

A stay of proceedings in potential MDL cases is appropriate when it promotes judicial economy and efficiency. Rivers v. Walt Disney Co., 908 F.Supp. 1358, 1360 (C.D. Cal. 1997). When jurisdictional issues are raised that may arise "in hundreds or even thousands of cases throughout the nation... consistency as well as economy [are] ... served" by having those issues decided by a single court. In re Ivy, 901 F.2d 7, 9 (2nd Cir. 1990); accord In re Air Crash Disaster at Florida Everglades, 368 F.Supp. 812 (J.P.M.L. 1973). Consequently, a stay is proper where the motion to remand raises issues that have been or are likely to be decided by the transferee court. See, e.g., Gonzalez v. American Home Products Corp., 223 F.Supp.2d 803 (S.D. Tex 2002) (granting motion to stay despite pending motion to remand because dispositive issue was probably common to other related MDL cases); Moore, 236 F.Supp.2d at 510-11 (granting motion to stay where transferee court had already decided similar motions to remand); Medical Society of State of New York v. Connecticut General Corp., 187 F.Supp.2d 89 (S.D.N.Y. 2001) (same); but see Shields v. Bridgestone/ Firestone, Inc., 232 F.Supp.2d 715 (E.D. Tex. 2002) (denying motion to stay and deciding motion to remand in case pending MDL transfer); Good v. Prudential Ins. Co. of America, 5 F.Supp.2d 804 (N.D. Cal. 1998) (same).

The jurisdictional issue in this case is whether the individual defendants, who are current or former sales representatives for Wyeth, were fraudulently joined to defeat federal subject matter jurisdiction. Motions to remand involving fraudulent joinder have been addressed numerous times by the transferee court. See, e.g., In re Diet Drugs Liability Litigation, ___ F.Supp.2d ___, 2003 WL 22931359 (E.D. Pa. July 30, 2003); id., 2003 WL 21973329 (E.D. Pa. June 12, 2003) (applying Alabama law to case removed from Alabama state court); id. 220 F.Supp.2d 414 (E.D. Pa. 2002); id, 2000 WL 1886594 (E.D. Pa, Dec. 7, 2000); id, 2000 WL 217509 (E.D. Pa. Feb. 15, 2000); id. 1999 WL 554584 (E.D. Pa. July 16, 1999) (applying Alabama law to case removed from Alabama state court); id. 1999 WL 554608 (E.D. Pa. June 29, 1999); id, 1198 WL 254967 (E.D. Pa. Apr. 16, 1998). In fact, one of the transferee court's orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical sales representative in a case removed from Alabama state court. In re Diet Drugs Liability Litigation, 2003 W. 21973329 (E.D. Pa June 12, 2003)

In the interest of judicial economy and to avoid inconsistent results, the motion
to stay is hereby GRANTED. This stay will remain in effect until the Court is notified of
the MDL Panel's decision as to whether to transfer this action.

Id. at Doc. 12, Order dated February 13, 2004. The undersigned judge agrees with the reasoning of

the above quoted order and finds the analysis applicable to the instant case. Thus, the court finds it

appropriate to stay this case.

## CONCLUSION

For the above stated reasons, defendant's motion to stay (Doc 3) is **GRANTED** and this

case is hereby **STAYED**. This stay will remain in effect until the court is notified of the MDL Panel's

decision as to whether to transfer this action.

**DONE and ORDERED** this 17th day of August, 2005.

　　　　　　　　　　　　　　/s/  Callie V. S. Granade
　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ANDREW J. KEHOE, et al.,              )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )    CASE NO. 3:06-cv-425-MEF
                                      )
MERCK & COMPANY, INC., et al.,        )
                                      )
        Defendants.                   )

## O R D E R

This cause is before the court on the Motion by Defendant Merck & Co., Inc. to Stay

All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation

(Doc. # 6) filed by the defendant on May 10, 2006. The court has carefully considered all

submissions in support of and in opposition to this motion and found that the motion is due

to be GRANTED. Accordingly, it is hereby

ORDERED that the motion is GRANTED.

It is further ORDERED that the above-styled action is STAYED pending a decision

from the Panel on Multidistrict Litigation as to the propriety of a transfer.

DONE this the 20th day of June, 2006.

                              /s/ Mark E. Fuller
                    CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES WAINE BAIRD and<br>BEVERLY L. BAIRD, | ) <br> ) <br> ) | |
|     Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | CASE NO. 2:05-cv-493-F |
| MERCK & COMPANY, INC., | ) <br> ) | |
|     Defendant. | ) | |

## ORDER

This cause is before the Court on Defendant Merck & Company's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (Doc. #6), filed June 15, 2005. The Plaintiffs were given the opportunity to show cause why this case should not be stayed and did not respond. Therefore, in light of the arguments in support of the Motion and because there is no opposition, it is hereby

ORDERED that the Motion to Stay All Proceedings is GRANTED and this case is STAYED pending a final decision from the Panel on Multi-District Litigation on transfer of this case to the multi-district litigation proceeding.

DONE this 30th day of June, 2005

                     /s/ Mark E. Fuller
                     CHIEF UNITED STATES DISTRICT JUDGE

RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2005 SEP 15 P 4:14

T. RAWDON BEATY,                     )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )
                                     )        Case No.: 2:05cv880-W
MERCK & CO., INC., a foreign         )
Corporation, et al.,                 )
                                     )        Removed from the Circuit
        Defendants.                  )        Court of Barbour County,
                                     )        Alabama
                                     )

## MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### INTRODUCTION

Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending its likely transfer to *In re VIOXX Prods. Liab. Litig.* MDL No. 1657, the Multidistrict Litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX® (hereinafter the "VIOXX® product liability cases") (*See* February 16, 2005 Transfer Order attached hereto as Exhibit A).

Merck promptly intends to provide notice to the Judicial Panel on Multidistrict Litigation (the "MDL Panel") pursuant to Rule 7.5 of the Rules of

**MOTION GRANTED**

THIS ____2nd____ DAY OF ___September___, 20 _05_

_____
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE F. DONALSON,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )    CASE NO. 2:05-cv-216-F
                                    )
MERCK & CO., INC.,                  )
                                    )
        Defendant.                  )

# **O R D E R**

Upon consideration of the Joint Motion to Stay All Proceedings Pending Transfer

(Doc. #7) filed on March 30, 2005, it is hereby

ORDERED that the motion is GRANTED.

DONE this 31st day of March, 2005.


                        _____/s/ Mark E. Fuller_____
                        CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LINDA FLOURNOY, an individual,       )
                                     )
                Plaintiff,           )
                                     )
v.                                   )        CIVIL ACTION NO. 3:05CV560-M
                                     )
                                     )
MERCK & CO., INC., a Foreign         )
Corporation,                         )
                                     )
                Defendant.           )

## ORDER ON MOTION

On 15 June 2005, the defendant filed a Motion To Stay All Proceedings Pending

Transfer Decision (Doc. # 13-4). For good cause, it is

ORDERED that the motion is GRANTED.

DONE this 23rd day of June, 2005.


                          /s/ Vanzetta Penn McPherson
                          VANZETTA PENN MCPHERSON
                          UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2005 FEB -4 P 3: 59

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

SAMMY GILBREATH,

   Plaintiff,

V.

MERCK & CO., INC., *et al*,

   Defendants.

§
§
§
§
§
§
§
§

Case No. 2'05CV103-W

## MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending resolution of Merck's motion before the Judicial Panel on Multidistrict Litigation (the "Panel") for transfer of this case, and numerous other cases with certain overlapping factual issues and similar legal theories, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407 (the "MDL motion").

In addition to Merck's MDL motion, more than two dozen different plaintiffs' counsel have filed papers seeking MDL coordination of their cases. All of those motions/requests were heard by the MDL Panel on January 27, 2005, at its meeting in Fort Myers, Florida. In addition to the 158 VIOXX® cases identified by the MDL Panel in its Hearing Session Order entered on December 14, 2004, Merck has notified the MDL Panel of approximately 195 additional VIOXX® cases pending in district courts throughout the United States.

Although the MDL Panel has not yet issued its ruling with respect to the *In re: VIOXX® Products Liability Litigation* (11 other cases were also set for oral argument on January 27, 2005), the MDL Panel typically issues its ruling within a reasonable time after oral argument,

## MOTION GRANTED

THIS ____4th____ DAY OF ___February___, 20 _05_

_____
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


EMBRY WAYNE HESTER, etc.,      )
                               )
     Plaintiff,                )
                               )     CIVIL ACTION NO.
     v.                        )     2:06cv242-MHT
                               )
MERCK & CO., INC., a           )
New Jersey Corporation,        )
et al.,                        )
                               )
     Defendants.               )

                         ORDER

     It is ORDERED as follows:

     (1)  The motion to stay (doc. no. 10) is granted.

     (2)  All proceedings in this case are stayed pending
          MDL transfer.

DONE, this the 24th day of April, 2006.


                    ___/s/ Myron H. Thompson____
                    UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


YOLANDA KING,                     )
                                  )
     Plaintiff,                   )
                                  )  CIVIL ACTION NO.
     v.                           )    2:05cv165-T
                                  )       (WO)
MERCK & COMPANY, INC., a          )
foreign corporation,              )
et al.,                           )
                                  )
     Defendants.                  )

### ORDER

It is ORDERED that Merck & Co, Inc's motion to stay

(Doc. No. 8) is granted and that this cause is stayed

pending a decision by the MDL panel as to whether this case

should be transferred to an MDL court.

DONE, this the 26th day of April, 2005.


                    /s/ Myron H. Thompson
                  UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL ROUNTREE,                    )
                                     )
              Plaintiffs,            )
                                     )
v.                                   )      CIVIL ACTION NO. 2:05CV185-F
                                     )
MERCK & CO., INC., et al.,           )
                                     )
              Defendants.            )

## ORDER

For good cause, it is

ORDERED that the Motion To Stay All Proceedings Pending Transfer Decision, filed

on   March 2005 (Doc. # ), is GRANTED. It is therefore further

ORDERED that proceedings in this case shall be stayed pending transfer to the

proceeding established in the United States District Court for the Eastern District of

Louisiana for multi-district litigation of this dispute.

DONE this 29th day of March, 2005

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

FAYE SOUTHERLAND, etc.,           )
                                  )
            Plaintiff,            )
                                  )
vs                                )    CIVIL ACTION NO. 1:05cv-039-A
                                  )
MERCK AND COMPANY, INC.,          )
                                  )
            Defendant.            )

## ORDER

Upon consideration of the Joint Stipulation of the Parties (Doc. #11), filed on February

16, 2005, it is hereby

ORDERED that the Defendant's Motion to Stay (Doc. #5) is GRANTED, and this case is

STAYED pending resolution of the Defendant's Motion for Transfer pending before the MDL

Panel.

DONE this 17th day of February, 2005

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2005 FEB 11  P 4: 02

ERNESTINE T. STEVENS,                )
                                     )
        Plaintiff,                   )       CASE NO    2   DEBRA P. HACKETT, CLK
                                     )                      U.S. DISTRICT COURT
                                     )                      MIDDLE DISTRICT ALA
v                                    )
                                     )
MERCK & CO , INC , et al,            )
                                     )
        Defendant                    )
                                     )

## MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Defendant Merck & Co , Inc ("Merck") moves this Court to stay all proceedings in this action pending resolution of Merck's motion before the Judicial Panel on Multidistrict Litigation (the "Panel") for transfer of this case, and numerous other cases with certain overlapping factual issues and similar legal theories, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407 (the "MDL motion")

In addition to Merck's MDL motion, more than two dozen different plaintiffs' counsel have filed papers seeking MDL coordination of their cases  All of those motions/requests were heard by the MDL Panel on January 27, 2005, at its meeting in Fort Myers, Florida  In addition to the 158 VIOXX® cases identified by the MDL Panel in its Hearing Session Order entered on December 14, 2004, Merck has notified the MDL Panel of approximately 195 additional VIOXX® cases pending in district courts throughout the United States

Although the MDL Panel has not yet issued its ruling with respect to the *In re: VIOXX® Products Liability Litigation* (11 other cases were also set for oral argument on January 27, 2005), the MDL Panel typically issues its ruling within a reasonable time after oral argument,

# MOTION GRANTED

THIS _16th_ DAY OF _February_ , 20 _05_

_____
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


PAUL TURNER, SR., on his    )
own behalf and behalf of    )
all others similarly    )
situated,    )
    )
    Plaintiff,    )
    )    CIVIL ACTION NO.
    v.    )    1:04cv999-T
    )
MERCK & CO., INC.,    )
a corporation,    )
    )
    Defendant.    )

ORDER

It is ORDERED that the consent motion to stay all

proceedings (Doc. No. 7) is granted and this cause is stayed

pending MDL transfer.

DONE, this the 22nd day of November, 2004.


        /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HAROLD WALLACE, SR., )
)
Plaintiff, )
)
v. )        CIVIL ACTION NO. 3:04cv1199-W
)
MERCK & CO., INC., )
)
Defendant. )

## ORDER

Upon consideration of defendant's motion to stay filed January 11, 2005 and for good cause, it is

ORDERED that the motion be and hereby is GRANTED. Counsel for defendant is DIRECTED to notify the court in writing when the motion before the Panel has been resolved.

DONE, this 13th day of January, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE B. WILSON,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        CASE NO. 2:05-cv-32-F
                                        )
MERCK & COMPANY, INC. and ED            )
RICHARDS,                               )
                                        )
        Defendants.                     )

## ORDER

This cause is before the Court on defendant Merck & Company's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (Doc. 5), filed January 12, 2005. The plaintiff was given the opportunity to show cause why this case should not be stayed and did not respond. Therefore, in light of the arguments in support of the motion and because there is no opposition, it is hereby

ORDERED that the Motion to Stay All Proceedings is GRANTED and this case is STAYED pending a final decision from the Panel on Multi-District Litigation on transfer of this case to the multi-district litigation proceeding.

DONE this 9th day of February, 2005.

                              _____/s/ Mark E. Fuller_____
                              CHIEF UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

GREG GOUGE,

      Plaintiff,

v.                            Case No. 3:05CV345/RV

MERCK & CO., INC., TAFFANY
SHIPP, HANK FILLINGIM, TOM
KIERNAN, SARAH PACCHETTI,
and SHANA HOLMAN,

      Defendants.

_____

## ORDER

      This case was originally filed in the Circuit Court of Escambia County, Florida, against Merck & Co., Inc ("Merck"), Taffany Shipp, Hank Fillingim, Tom Kiernan, Sarah Pacchetti, and Shana Holman, alleging claims based on injuries related to the drug Vioxx. The case was removed to this court by the Defendants on September 12, 2005. On September 16, 2005, Merck filed a motion to stay the proceedings pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("MDL"). (Doc. 5) On October 7, 2005, the Plaintiffs filed a motion to remand, arguing that the court lacked jurisdiction over the case (Doc. 8) An order granting Merck's motion to stay was entered on October 12, 2005. (Doc. 11) On October 21, 2005, the MDL conditionally transferred the case, as anticipated in the stay order, to the Eastern District of Louisiana. Plaintiff's motion to reconsider this court's order on the motion to stay is now pending. (Doc. 13)

## I.    DISCUSSION

Plaintiff argues that his motion to remand should take precedence over the stay of proceedings because it involves issues specific to Florida state law. While a stay pending a transfer decision by the MDL is generally appropriate, a district court may rule on a motion that raises issues unique to the particular case. Manual for Complex Litigation (Third) § 31.131 (1995). Plaintiff's motion to remand turns on the potential liability of the individual defendants in this case, who were pharmaceutical sales representatives for Merck. The individual defendants are Florida residents, and their presence as parties in this case will serve to defeat diversity jurisdiction, unless Merck can show that they were fraudulently joined. To prove fraudulent joinder, Merck would have to show by clear and convincing evidence that there is no possibility that the Plaintiffs can recover damages from the non-diverse individual defendants. Triggs v. John Crump Toyota, 154 F.3d 1284 (11th Cir. 1998)

Other district courts have not reached any uniform conclusion as to whether a motion to remand based on this issue should take precedence over a stay pending transfer. Compare Lloyd v. Cabell Huntington Hospital, 58 F. Supp. 2d 694 (S.D. W. Va. 1999) (court should rule on motion to remand before granting stay) with Weinke v. Microsoft, 84 F. Supp. 2d 989 (E.D. La. 2000) (stay takes precedence over motion to remand). However, a high percentage of the Vioxx cases that have been transferred to the Eastern District of Louisiana have been transferred with pending motions to remand. See Walker v. Merck, 2005 WL 1565839 (S.D. Ill. 2005)(70 such cases as of June 2005). The issue of potential sales representative liability raised by the Plaintiff's motion is, therefore, one that the transferee court will almost certainly have to decide for a large number of similar cases.

Given that the central issue involved in Plaintiff's motion to remand is not unique to this case or to Florida law, I find that a continued stay is appropriate.

*Page 3 of 3*

Staying the motion to remand serves the interest of judicial economy, and lowers the risk of inconsistent rulings on the sales representatives' potential liability issue by allowing it to be decided by the single court handling all of the federal cases. Further, given that a conditional transfer order has already been entered in this case, Plaintiff will not be subjected to any significant delay based on the imposition of this stay.

III.    **CONCLUSION**

For the above reasons, the Plaintiff's motion to reconsider (Doc. 13) is DENIED. DONE AND ORDERED this 28th day of October, 2005.

_/s/ Roger Vinson_
**ROGER VINSON**
**Senior United States District Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARGUERITE WOODS,                                )
                                                 )
        Plaintiffs,                              )
                                                 )
v.                                               )    CIVIL ACTION NO. 05-0425-CG-M
                                                 )
MERCK & CO., INC., et al.,                       )
                                                 )
        Defendants.                              )

## ORDER

This matter is before the court on motion of defendant, Merck & Co., Inc. ("Merck"), to stay to allow transfer to the MDL (Doc. 3), plaintiff's response (Doc. 15), and plaintiff's motion to remand and for expedited hearing (Doc. 14). For reasons discussed below, the court finds that a stay is appropriate.

Merck removed this case to this court claiming diversity jurisdiction in that the resident defendants were fraudulently joined. Plaintiff contends that Merck has not demonstrated that plaintiff has failed to establish a colorable claim against the resident defendants. As a result, plaintiff asserts that the action should be remanded. Plaintiff cites similar cases in this district as well as other districts in Alabama which have concluded that remand was appropriate. However, the court notes that this court has also found it appropriate to stay such actions in the past. For instance, this court stayed the proceedings in Faith Beverly et al. v. Wyeth, et al., 03-cv-0866-CB-C (S.D. Ala.) stating the following:

A district has the authority to stay proceedings in cases pending before it Landis v. North American Co., 299 U.S. 248 (1936); CTI-Container Leasing Corp. v. Uiterwyk, 685 F.2d 1284 (11th Cir. 1982). "[T]he power to stay proceedings is


DEFENDANT'S EXHIBIT

E

incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 166. This authority extends to cases in which a transfer decision by the MDL Panel is pending. [Footnote: The existence of a conditional transfer order does not divest the transferor court of jurisdiction, 18 U.S.C. § 1407; JPML Rule 1.5.] See, e.g., Hertz Corp. v. The Gator Corp., 250 F.Supp.2d 421, 424 (D.N.J. 2003). The existence of jurisdictional objections do not affect either the transferor court's ability to issue a stay or the MDL Panel's authority to transfer an action. Moore v. Wyeth-Ayerst Laboratories, 236 F.Supp.2d 509, 512 (D. Md. 2002).

A stay of proceedings in potential MDL cases is appropriate when it promotes judicial economy and efficiency. Rivers v. Walt Disney Co., 908 F.Supp. 1358, 1360 (C.D. Cal. 1997). When jurisdictional issues are raised that may arise "in hundreds or even thousands of cases throughout the nation . . . consistency as well as economy [are] . . . served" by having those issues decided by a single court. In re Ivy, 901 F.2d 7, 9 (2nd Cir. 1990); accord In re Air Crash Disaster at Florida Everglades, 368 F.Supp. 812 (J.P.M.L. 1973). Consequently, a stay is proper where the motion to remand raises issues that have been or are likely to be decided by the transferee court. See, e.g., Gonzalez v. American Home Products Corp., 223 F.Supp.2d 803 (S.D. Tex 2002) (granting motion to stay despite pending motion to remand because dispositive issue was probably common to other related MDL cases); Moore, 236 F.Supp.2d at 510-11 (granting motion to stay where transferee court had already decided similar motions to remand); Medical Society of State of New York v. Connecticut General Corp., 187 F.Supp.2d 89 (S.D.N.Y. 2001) (same); but see Shields v. Bridgestone/ Firestone, Inc., 232 F.Supp.2d 715 (E.D. Tex. 2002) (denying motion to stay and deciding motion to remand in case pending MDL transfer); Good v. Prudential Ins. Co. of America, 5 F.Supp.2d 804 (N.D. Cal. 1998) (same).

The jurisdictional issue in this case is whether the individual defendants, who are current or former sales representatives for Wyeth, were fraudulently joined to defeat federal subject matter jurisdiction. Motions to remand involving fraudulent joinder have been addressed numerous times by the transferee court. See, e.g., In re Diet Drugs Liability Litigation, ___ F.Supp.2d ___, 2003 WL 22931359 (E.D. Pa. July 30, 2003); id., 2003 WL 21973329 (E.D. Pa. June 12, 2003) (applying Alabama law to case removed from Alabama state court); id. 220 F.Supp.2d 414 (E.D. Pa. 2002); id. 2000 WL 1886594 (E.D. Pa. Dec. 7, 2000); id. 2000 WL 217509 (E.D. Pa. Feb. 15, 2000); id. 1999 WL 554584 (E.D. Pa. July 16, 1999) (applying Alabama law to case removed from Alabama state court); id. 1999 WL 554608 (E.D. Pa. June 29, 1999); id. 1198 WL 254967 (E.D. Pa. Apr. 16, 1998). In fact, one of the transferee court's orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical sales representative in a case removed from Alabama state court. In re Diet Drugs Liability Litigation, 2003 W. 21973329 (E.D. Pa. June 12, 2003).

In the interest of judicial economy and to avoid inconsistent results, the motion to stay is hereby GRANTED. This stay will remain in effect until the Court is notified of the MDL Panel's decision as to whether to transfer this action.

Id. at Doc. 12, Order dated February 13, 2004. The undersigned judge agrees with the reasoning of the above quoted order and finds the analysis applicable to the instant case. Thus, the court finds it appropriate to stay this case.

## CONCLUSION

For the above stated reasons, defendant's motion to stay (Doc. 3) is **GRANTED** and this case is hereby **STAYED**. This stay will remain in effect until the court is notified of the MDL Panel's decision as to whether to transfer this action.

**DONE and ORDERED** this 17th day of August, 2005.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

FILED
2006 Mar-03 AM 09:51
U.S. DISTRICT COURT
N.D OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| MARTHA H. FAIRCLOTH, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:06-CV-184-RDP |
| | } | |
| MERCK & COMPANY, INC., | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

The court has before it Plaintiff's Motion for Reconsideration Regarding Order on Motion to Stay (Doc. # 6) and Motion for Discovery (Doc. # 7), filed February 17, 2006. The court held a telephone conference in this case on March 2, 2006. For the reasons outlined below, the court finds that Plaintiff's motions are due to be denied.

Plaintiff's motions request that this court reverse its prior decision to stay this case pending MDL transfer (Doc. # 4), and permit Plaintiff to conduct discovery to identify the name of the representative who marketed and promoted Vioxx® to her prescribing physician so that she can amend her complaint to add that person to this case. (Doc. # 7, at 1-2) Plaintiff predicts that the representative will be an in-state defendant who "would destroy diversity and render this matter subject to remand to the Circuit Court of Jefferson County, Alabama." (Doc. # 7, at 2)[1]

---

[1] Defendant points out that prior to filing her lawsuit, Plaintiff undoubtedly had access to her prescribing physician and could have conducted a "pre-suit investigation" into which Merck sales representatives, if any, called on her doctor. (Doc. # 9, at 3) Instead, Plaintiff waited until two years after the alleged injury – up until the end of the statute of limitations period – to seek this discovery for the explicit reason of trying to destroy diversity jurisdiction.



DEFENDANT'S
EXHIBIT
F

Defendant maintains that the Vioxx® MDL court already has established procedures to make the information sought in Plaintiff's proposed discovery available to Plaintiff after transfer to the MDL court, and that Plaintiff has provided no good cause as to why her case should be treated differently from those already pending before the MDL. (Doc. # 9). The court agrees.

It is well-established that one of the main purposes of the MDL proceeding is to eliminate duplicative discovery and to enable the MDL court to coordinate discovery efforts for both common and non-common issues. *See, e.g., In re Vioxx Products Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Transfer Order"). Absent a stay, courts risk not only duplicating the MDL court's effort to coordinate discovery in Vioxx® cases but also issuing discovery rulings inconsistent with those entered by the MDL judge. For these very reasons, this court stayed this case pending transfer to the MDL. (Doc. # 4).[2] Nothing will prevent Plaintiff from seeking the requested discovery in the MDL. In fact, the MDL has already issued discovery

---

[2] Defendant points out that federal courts across the country have stayed more than 2,000 Vioxx® cases, including 250 with pending remand motions. (Doc. # 9, at 4). In response, Plaintiff notes that in several diet drug cases pending before the undersigned last year which were awaiting transfer to MDL, this court opted to rule on pending motions to remand, finding that the joinder of in-state sales representatives was not fraudulent and remanding those cases to state court. (Doc. # 7, at 9-10). Nonetheless, the action taken by this court last year in the diet drug litigation cases is simply not appropriate in this case given the Eleventh Circuit's recent opinion in *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), which was issued after the court remanded the diet drug litigation cases and which now suggests that under Alabama law, in-state representatives *are* fraudulently joined if they are merely "'conduits'" who did not act in bad faith. *Legg*, 428 F.3d at 1324-25 (*quoting Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000)). In *Legg*, the Eleventh Circuit applied Alabama law in the context of claims based on prescription medications and found "no reasonable possibility" that the named sales representatives could be liable to plaintiffs. *Legg*, 428 F.3d at 1324-25. While an individual Merck sales representative's actions "might be a basis for a claim against [Merck] . . . it would not support the conclusion that [the representative] 'personally participated in the tort' or breached a duty to the Plaintiff[]." *Legg*, 428 F.3d at 1324. Post-*Legg*, it is clear that before the issue of fraudulent joinder can be decided, at least some discovery must be conducted to illuminate the depth of a representative's participation in the plaintiff's allegations. As the court has opined above, these are matters best left to the MDL court.

orders related to sales representatives and other discovery that plaintiffs have routinely sought from Merck[3]

The court notes that Defendant has stated its concern that Plaintiff's stated purpose for conducting discovery is to defeat diversity jurisdiction. (Doc. # 7, at 2). Many district courts, including this one, have held that joinder of a non-diverse defendant under 28 U.S.C. § 1447(e) should be denied when the plaintiff's motivation for adding the new defendant is to seek remand. *See, e.g., Smith v. White Consolidated Indus., Inc.,* 229 F. Supp. 2d 1275, 1280-81 (N.D. Ala. 2002) (considering "the extent to which the purpose of plaintiff's amendment is to defeat the jurisdiction of the court" in denying amendment); *Sexton v. G&K Servs., Inc.,* 51 F. Supp. 2d 1311, 1314 (M.D. Ala. 1999) (same). Moreover, the Eleventh Circuit's opinion in *Legg* also spoke against the tactic of joining individual sales representatives in pharmaceutical products liability cases in an effort to defeat a federal court's jurisdiction. *Legg,* 428 F.3d at 1324-25.

For all of these reasons, this court finds that the MDL court is better equipped to consider Plaintiff's requests and therefore is not inclined to lift the previously entered stay in order to permit discovery or amendments. Accordingly, Plaintiff's motions are due to be denied.

**DONE** and **ORDERED** this ____2nd____ day of March, 2006.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's concern that she will have difficulty receiving this information in the MDL is unfounded. Judge Fallon has instituted a procedure by which plaintiffs in the MDL will receive the identity of any sales representatives who called on plaintiff's prescribing physicians. (Doc. # 9, Ex. D (Pre-Trial Order No. 21 at ¶¶ 3-4)). It appears that the Plaintiff's Steering Committee is obligated to make the materials available to all plaintiff's counsel. (Doc. # 9, Ex. E (PTO No. 6 at p. 3)). But, in any event, Merck conceded in the telephone conference that it will be obligated to provide the information to Plaintiff's counsel pursuant to PTO No. 18(b).

3

FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA 04 MAR 26  AM 11: 19
NORTHEASTERN DIVISION    U.S. DISTRICT COURT
N.D. OF ALABAMA

CARL LEGG, et al ,

      Plaintiffs,

vs                                  CASE NO :  CV-2004 ~~0264 JLB~~  S-455-NE

WYETH, f/k/a American Home Products
Corp ; WYETH PHARMACEUTICALS,
f/k/a Wyeth-Ayerst Labs, Inc ; INDEVUS
PHARMACEUTICALS, INC , f/k/a
Interneuron Pharmaceuticals, Inc ; STACY
STUBBLEFIELD; MICHAEL SULLIVAN;
BETSY WEAVER, and FICTITIOUS
DEFENDANTS A, B, C, and D, being those
persons, firms or corporations whose fraud,
scheme to defraud, and/or other wrongful conduct
caused or contributed to the Plaintiffs' injuries
and damages, and whose true names and identities are
presently unknown to the Plaintiff but will
be substituted by amendment when ascertained,

      Defendants

--------------------------------------- /

## MOTION TO REMAND

      Pursuant to 28 U S C, section 1447(c), Plaintiffs hereby move to remand this

action to the Circuit Court of Madison County, Alabama  In support of this motion,

Plaintiffs show the following:

DEFENDANT'S
EXHIBIT

G

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CARL LEGG, et al,

      Plaintiffs,

vs                                    CASE NO :  CV-2004 0264-JLB

WYETH, et al

      Defendants

_____/

### MEMORANDUM BRIEF

### IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### I  FACTUAL BACKGROUND

On February 2, 2004, Plaintiff Carl Legg, an Alabama resident, filed a Complaint in

the Circuit Court for Madison County, Alabama  The Complaint contained six substantive

counts alleging claims for products liability under the Alabama Extended Manufacturer's

Liability Doctrine ("AEMLD"), negligence, breach of warranty, fraud, negligent

misrepresentation, and civil conspiracy [1]  Plaintiffs' complaint named as defendants Wyeth,

---

[1] Plaintiffs' Complaint also includes a Count for loss of consortium which will not be addressed since
it is not relevant to remand

Wyeth Pharmaceutical ("Wyeth Pharm"), Indevus Pharmaceuticals, Inc ("Indevus"),Stacy
Subblefield ("Stubblefield"), Michael Sullivan ("Sullivan"), Betsy Weaver ("Weaver"), and
Fictitious Parties A, B, C, and D (collectively herewith referred to as "Defendant Agents") [2]
Plaintiffs' complaint alleges that Defendants Wyeth, Wyeth Pharm, and Indevus
manufactured, distributed, and sold the deadly diet drug Redux  The manufacturer
Defendants and Defendant Sullivan are not residents of Alabama.  Defendant Agents are
residents of Alabama  Plaintiffs' complaint allege that Defendants Wyeth and Wyeth Pharm
employed Defendant Sullivan and Defendant Agents as sales representatives to detail the
pharmaceutical known as Redux  Detailers are sales representatives who visit physicians and
persuade them to regularly prescribe a company's drug  Sales representatives use various
methods of persuasion to promote a product including gifts and product samples  There
are a wide range of gifts used by sales representatives to persuade physicians to prescribe a
particular drug  These include, but are not limited to, sports and theatrical performance
tickets, dining in expensive restaurants, free gas, free vacations to resorts, food for clinic
employees, free computer equipment, Palm Pilots, free golf, cruises, professional honors,
textbooks, sports equipment, and cash

Plaintiffs' complaint allege that Defendant Agents marketed Redux to his prescribing
physician  Plaintiffs allege that Defendant Agents knew or should have known that Redux

---

[2] Defendants refers collectively to Defendant Wyeth, Defendant Wyeth Pharm, Defendant Indevus,
Defendant Stubblefield, Defendant Sullivan, and Defendant Weaver  Defendant Agents refers to Defendants
Stubblefieldand Weaver

was not safe or effective as Defendant Agents explained to Plaintiff's prescribing physician

Plaintiffs further allege that Plaintiffs' prescribing physician relied on Defendant Agents

misrepresentations about the safety and effectiveness of Redux and prescribed Plaintiff

Redux which he consumed   As a direct and proximate cause of consuming Redux, Plaintiff

has permanent heart damage.

Defendants removed this case to this Court pursuant to 28 U S C  section 1441

Defendants allege that Defendants Agents are fraudulently joined   In support of their

removal, Defendants filed affidavits of Defendant Agents.  The affidavits of the Defendant

Agents attempt to contradict the allegations contained in Plaintiffs' Complaint  Plaintiffs

move this Court to remand this case because Defendants have failed to meet their heavy

burden of proving by clear and convincing evidence that Defendant Agents are fraudulently

joined   Consequently, no federal jurisdiction exists.


## II  STANDARD OF REVIEW

### A.  Federalism Concerns Require Strict Construction of Removal Statute

Defendants have filed a notice of removal alleging that federal jurisdiction exists

based on diversity of citizenship   Defendants contend that the amount in controversy

exceeds $75,000 00 and the parties are non diverse because Defendant Agents have been

fraudulently joined   A case may be removed from state court and transferred to federal

court in any case which could have been brought originally in federal court   See 28 U S C

-3-

section 1441(a); Tapscott v. MS Dealer Serv. Corp., 77 F 3d 1353, 1356 (11th Cir 1996)

Title 28 U S C section 1332(a)(1) provides that federal courts may exercise diversity

jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the

action is between citizens of different states However, "if at any time before final judgment

it appears that the district court lacks subject matter jurisdiction, the case shall be

remanded." 28 U,S C section 1447(c) Since removal jurisdiction raises significant

federalism concerns, the removal statutes must be strictly construed See Shamrock Oil &

Gas Corp. v. Sheets, 313 U S. 100, 61 S Ct 868, 85 L Ed 1214 (1941); University of

South Alabama v. American Tobacco Co., 168 F 3d 405, 411 (11th Cir. 1999) All doubts

must be resolved in favor of remand to state court See University of South Alabama, 168

F 3d 405, 411; Burns v. Windsor Ins. Co., 31 F 3d 1092, 1095 (11th Cir 1994)(citing

Boyer v. Snap-on Tools Corp., 913 F 2d 108 (3rd Cir 1990)); Coker v. Amoco Oil Co.,

709 F 2d 1433 (11th Cir 1983); Ruffin v. Congress Life Insurance Co., 2000 WL 718813

(S D Ala ) "The removing party bears the burden of demonstrating federal jurisdiction"

Triggs v. John Crump Toyota, Inc., 154 F 3d 1284, 1287 (11th Cir 1998); Tapscott, 77

F 3d 1353 In the case at bar, Plaintiffs concede that the amount in controversy in this

action exceeds $75,000 Consequently, the only issue is whether Defendant Agents are

fraudulently joined

  B. Fraudulent Joinder Requires That Defendants Show There Is No Possibility
  Plaintiffs' Complaint States a Cause of Action Against Defendant Agents

  "Fraudulent joinder is a judicially created doctrine that provides an exception to the

-4-

requirement of complete diversity." Triggs, 154 F.3d at 1287. Joinder has been deemed fraudulent in three situations: (1) when there is not any possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court; and (3) "where a diverse defendant is joined with a non-diverse defendant as to who there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non diverse defendant." Id. Defendants make no argument that the second or third fraudulent joinder situations apply. See Notice of Removal. Therefore, Plaintiffs respond only to the allegation that Defendant Agents are fraudulently joined because there is no possibility Plaintiffs can prove any of the claims against Defendant Agents.

In their Notice of Removal, Defendants improperly state the standard for fraudulent joinder in this Circuit.[3] The Eleventh Circuit standard for fraudulent joinder requires that, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court. The Plaintiffs need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at

---

[3] Defendants allege in their Notice of Removal that Defendant Agents are fraudulently joined because *Plaintiffs cannot prevail on any claim against Defendant Agents.*

5

1287; Cabalcera v. Standard Fruit Co., 883 F 2d 1553, 1561 (11th Cir 1989) Pacheco de Perez v. AT&T Co., 139 F 3d 1368 (11th Cir 1998)("Where a Plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court"); Ruffin, 2000 WL 718813(quoting Redford v. Connecticut Mut. Life Ins. Co., 916 F Supp 1211, 1214 (M D Ala 1996) "The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the Plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of law plainly a sham and frivolous") "The burden of establishing fraudulent joinder is a heavy one." Pacheco de Perez, 139 F 3d at 1380  Although Defendants attempt to persuade this Court that the Eleventh Circuit applies a different fraudulent joinder standard, the Eleventh Circuit has affirmed as recently as 2001 that the fraudulent joinder standard requires the "complaint show there is no possibility that the plaintiff can establish any cause of action against the defendant." Tillman v. R.J. Reynolds Tobacco, Inc., 253 F 3d 1302, 1305 (11th Cir 2001)(quoting Triggs, 154 F 3d 1284, 1287) "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate " Triggs, 154 F 3d 1284, 1287 (emphasis in original)  Plaintiffs respectfully submit that the proper standard for fraudulent joinder is that there is no possibility that a state court would find that Plaintiffs complaint

-6-

states any cause of action against any of the Defendant Agents   Nevertheless, Defendants have failed to meet their heavy burden under either standard

### C. Fraudulent Joinder Proceeding Requires Court Resolve Uncertainties In Favor of Plaintiff and Avoid Substantive Determination of Case.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the Plaintiffs' pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties   In making its determination, the district court must evaluate factual allegations in the light most favorable to the Plaintiff and resolve any uncertainties about the applicable law in the Plaintiff's favor " Pacheco de Perez, 139 F 3d at 1380; Crowe v. Coleman, 113 F 3d 1536, 1538 (11th Cir. 1997); Cabalceta, 883 F 2d 1553, 1561  The appropriate proceeding for deciding whether a party has been fraudulently joined is similar to that used for ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(b)   Crowe, 113 F.3d at 1538  However, the jurisdictional inquiry "must not subsume substantive determination .   Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits "  Id.

"In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law' " Id. quoting Pacheco de Perez, 139 F 3d at 1380-1381 (quoting Crowe, 113 F 3d 1536, 1538 (11th Cir  1997)

In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them. In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent. Crowe, 113 F.3d at 1541-1542.

### III. ARGUMENT

#### A. There is a Possibility That a State Court Would Find that Plaintiffs Complaint States a Cause of Action for Fraud Against Defendant Agents.

Defendants allege that Defendant Agents are fraudulently joined because Plaintiffs cannot prevail on a claim for misrepresentation or suppression. Defendants allege that Plaintiff has not plead fraud with particularity.[4] Defendants also allege that Defendant Agents cannot be held personally liable for any misrepresentation or suppression because

---

[4] Defendants' allegation is an improper basis for alleging fraudulent joinder. As this Court is aware, Alabama Rule of Civil Procedure 12(b) provides the remedy for failure to state a claim upon which relief may be granted. If a state court finds that Plaintiff's fraud count was not sufficient, the state court would likely grant plaintiff leave to amend his Complaint. The issue of fraudulent joinder is whether it is possible that the state court might hold Defendant Agents liable for fraud based on the allegations in Plaintiffs' Complaint. Despite Defendants' misplaced argument, Plaintiff responds to Defendants' allegation of lack of particularity.

they merely promoted and answered questions concerning Redux based on information provided by Defendant Wyeth. Both of Defendants' arguments fail.

First, Alabama Rule of Civil Procedure 9(b) provides that "in all averments of fraud the circumstances constituting fraud shall be stated with particularity." The Committee Comments to Rule 9(b) state:

> This special requirement as to fraud <u>does not require every element</u> in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complaint of. The pleading must show time, place, and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged. . Thus, it should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint, if the pleadings give fair notice to the opposing party whereas heretofore the same pleading would have been held insufficient. (Emphasis Added)

As demonstrated by the Committee Comments, Rule 9 merely requires that a pleading for fraud show the time, place, and contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained. Bethel v. Thom, 757 So. 2d 1154, 1158 (Ala. 1999)(quoting Phillips Colleges of Alabama, Inc. v. Lester, 622 So. 2d 308 (Ala 1993)). Because the purpose of Rule 9(b) is to give the defendant fair notice, courts should endeavor to find the details necessary for fair notice within the allegations of the complaint. See Committee Comments to Ala. R. Civ. P.; Kohler v. Jacobs, 138 F.2d 440 (5th Cir. 1943); Pinkston v. Boykin, 130 Ala. 483, 30 So. 398 (Ala. 1900).

-9-

Plaintiffss Complaint sufficiently to provides Defendant Agents fair notice of the

allegations against them  Allegations include the time, place, and contents of the false

representations made by Defendant Agents.  Paragraphs 40-44 of Plaintiff's complaint are

general allegations made applicable to all counts by incorporation  These paragraphs

specifically allege:

> 40     Defendant Agents were the primary promoters, marketers, and detailers of Redux
> 41     Defendant Agents distributed amounts of Redux to Plaintiff's prescribing physician in the form of samples
> 42     Defendant Agents had actual or constructive knowledge of the dangerous condition of Redux and intentionally and deliberately suppressed, concealed, and misrepresented this information
> 43     Defendant Agents were aware of adverse drug reports ("ADR") received from users of Redux but continued to distribute, sell, promote, detail, and profit from the sale of Redux
> 44     Defendant Agents committed the tortions and overt acts alleged herein in an individual and/or corporate capacity

Paragraphs 73-77 of Plaintiff's complaint are contained within Count IV of Plaintiffs

complaint alleging fraud, misrepresentation, and suppression  These paragraphs specifically

allege that:

> 73     Defendants intentionally, fraudulently, recklessly and/or negligently made material misrepresentations to Plaintiff, Plaintiff's prescribing physician, and others upon whom it was known that Plaintiff would rely that Redux was safe and effective and that the benefits of taking Redux outweighed any risks
> 74     The continuous and ongoing course of action constituting fraud and misrepresentation started as early as 1993, if not earlier, and continued through repeated acts and non-disclosure every year since then, in the State of Alabama and throughout the United States and elsewhere.
> 75     Defendant Agents committed this fraud in their individual capacity and/or corporate capacity by failing to provide Plaintiffs prescribing physician all information concerning the safety and effectiveness of Redux when promoting

-10-

Redux to Plaintiff's prescribing physician during sales calls at Plaintiff's prescribing physician's office which took place on June 21, 1996; July 10, 1996; July 29, 1996; July 29, 1996; August 28, 1996; September 27, 1996; November 14, 1996; December 12, 1996; January 8, 1997; January 30, 1997; February 10, 1997; April 2, 1997; April 16, 1997; April 29, 1997; May 14, 1997; June 24, 1997; July 22, 1997; and August 7, 1997

76.    Defendants' fraudulent misrepresentations and/or suppressions took the form of, among other things, express and implied statements, publically disseminated misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about Redux, failure to disclose important safety and injury information, regarding Redux while having a duty to disclose to Plaintiff's prescribing physician, Plaintiff, and others such information, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead about the safety of Redux

77    Defendants knew or should have known that these representations about Redux being safe and effective were false and made these representations with the intent or purpose that Plaintiff and/or Plaintiff's prescribing physicians would rely on these representations and result in the Plaintiff using Redux

These allegations describe the time, place, and the contents of the false representations made by Defendant Agents  Paragraph 75 explicitly describes the dates that Defendant Agents made the false representations and the location: Plaintiff's prescribing physician's office  Paragraph 76 describes the contents of the false representations  These paragraphs demonstrate that Plaintiffs' allegations are neither general nor conclusive  The allegations contained in Plaintiffs' complaint give Defendant Agents fair notice of the fraud and misrepresentations alleged which is the policy reason for requiring more particular allegations when alleging fraud  See Committee Notes of Rule 9(b)  Consequently, Defendants have failed to prove fraudulent joinder on this basis

Defendants also argue that Plaintiffs cannot establish any misrepresentation or suppression claim against Defendant Agents personally because Defendant Agents merely

-11

promoted and answered questions concerning Redux based on information provided by Defendant Wyeth  In addition to the allegations in Plaintiffs' Complaint which contradict Defendants' self serving assertions, Plaintiffs submit additional evidence which contradicts Defendants' allegations  See Exhibit A, Affidavits of Omar Khalaf, M D ; Mark C. Wiles, M.D ; John Sabatine, M.D.; and Jon Yoder, M.D  These physicians swore in their affidavits that drug sales representatives promoted Redux during sales calls  Id.  These physicians also swore drug sales representatives made representations to them about the safety and effectiveness of Redux  Id.  Dr  Yoder, Dr  Sabatine, and Dr  Wiles also swore that drug sales representatives provided samples of Redux during these sales visits  Id.  Finally, these physicians swore that if they had been provided the true and correct information regarding the safety and effectiveness of Redux and Pondimin, they would not have prescribed these pharmaceuticals.  Id.

In addition to their affidavits, there is further evidence to contradict Defendants' assertions  Defendant Wyeth provided the Redux sales force, including Defendant Agents, with promotional and educational materials about Redux prior to and after the product launch to use in detailing doctors  See Exhibit B, Redux Sales Training Program Modules 1 4  The sales representatives had to go through a Redux Sales Training program.  Id.  These training modules provided Defendant Agents with information regarding the safety and effectiveness of Redux, and actually provided them with the strategies to use in selling Redux to physicians  Id. at 244  Defendant Agents were also given information regarding

12

adverse events associated with Redux. Id. at p 3 4. While Defendant Agents were provided this information, often Defendant Wyeth would direct Sales Representatives, including Defendant Agents, not to share this adverse information about Redux with anyone outside the company, including Plaintiffs' prescribing physician. See Id. At the time of the Redux launch, new safety information had become available to Defendant Wyeth regarding the risks of pulmonary hypertension ("PH"), primary pulmonary hypertension ("PPH") and the use of diet drugs. Id. Defendant Wyeth shared this information with their sales force including Defendant Agents. Id. Defendant Wyeth, however, directed its sales force to not reveal this new information to those outside the company, threatening that if a Sales Representative did reveal these true risks associated with Redux to anyone, including prescribing physicians, that the sales representative would be considered to have violated his Employee Confidentiality Agreement, and the sales representative could be disciplined or terminated. Id. This demonstrates that Defendant Agents had superior knowledge about the safety and effectiveness of Redux. In light of this evidence, it is likely that with a reasonable opportunity for discovery, Plaintiff will uncover additional evidence.

Alabama law holds an individual employee liable for the fraudulent acts or omissions he personally commits while acting in his capacity as an employee. Bethel at 1158 (citing Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc. and Crigler v. Salac, 438 So. 2d 1375, 1379 80 (Ala. 1983). In fact, this Court was recently faced with the identical issues as in the case at bar. See Campbell, et al. v. Wyeth, et al., Case No.: 03 HGD 3364-M

13-

L

(Mar 11, 2004) In Campbell, Defendant Wyeth argued that Defendants Stubblefield and Weaver were fraudulently joined Id. The Campbell court held that Defendant Wyeth's arguments "go to the merits of plaintiff's claims    the court cannot say that plaintiffs have no possibility of establishing a cause of action against Stubblefield or Weaver" Id. at 6 Consequently, the Campbell court ordered remand. This Court also recently explained in detail why a sales representative can be held liable under Alabama law for the allegations contained in Plaintiff's Complaint  See Davis v. Wyeth, et al, Case No : 03-J-3167-J (N D Ala Feb 25, 2004) (Attached as Exhibit "C")

Defendants' cite Cross v. Wyeth, et al., Case No : 03-0882-BH M (S D Ala Feb 5, 2004) for the proposition that because the sales representatives in Cross were fraudulently joined, the sales representatives in every case must be fraudulently joined  Defendants argument is a classic example of a logical fallacy  The similarities between the case at bar and the Cross matter are few. Beyond the fact that Cross is a diet drug case and subject to removal, the cases are quite distinct  As this Court is aware, a fraudulent joinder claim is fact driven and any comparison to another case mandates an analysis of the facts behind the eventual court order [5] For example, the Cross Plaintiffs offered no evidence to contradict the resident Defendants' affidavit  In fact, the motion to remand in Cross is entirely replete of any factual analysis relating to the fraudulent joinder argument  Here, however, Plaintiffs have provided this Court with persuasive evidence exhibiting a clear theory of liability

[5]    Plaintiffs provided a copy of the Notice of Removal and Motion to Remand upon which Judge Hand's order is based for convenience  These pleadings are attached here as Exhibit D

-14-

against the resident defendants recognized by Alabama law. This evidence is a non-party's sworn statement which supports the Plaintiffs allegations and provides a factual framework, similar to and consistently relied upon in many recent orders to remand handed down by the Northern and Middle Districts of Alabama. Campbell v. Wyeth, et al., Case No: 03-HGD-3364-M (N.D. Ala. Mar. 11,2004); Carlisle v. Wyeth, et al., Case No: 04-HGD-0394-S (N.D. Ala. Mar. 11, 2004); Hall v. Wyeth et al., Case No: 04-J-0434-NE (N.D. Ala. Mar. 9, 2004); McGowan v. Wyeth, Case No: 04-TMP-298-S (N.D. Ala. Feb. 24, 2004); Johnson v. Wyeth, Case No: 04-TMP 224-S (N.D. Ala. Feb. 23, 2004); Marshal v. Wyeth, Case No: 04-TMP-179-S (N.D. Ala. Feb. 18, 2004); Helen Boswell, et al. v. Wyeth, et al., Case No:03-T-1256-N (M.D. Ala. Feb. 2, 2004); Sara Blair, et al. v. Wyeth et al., Case No: 03-T-1251-S (M.D. Ala. Jan. 23, 2004); Smith v. Wyeth, Case No: 04-P-226-M (N.D. Ala. Feb. 27, 2004); Rita Brunson v. Wyeth, et al., Case No: T-1167-S (M.D. Ala. Jan. 23, 2004); Valerie Ballard, et al. v. Wyeth, et al., Case No: T-1255-N] (M.D. Ala. Jan. 23, 2004); Stephanie Terrell, et al. v. Wyeth, et al., Case No: 03-BE-2876-S (N.D. Ala. Dec. 12, 2003); Sharon Crittendon, et al. v. Wyeth, et al., Case No: 03-T-920-N (M.D. Ala. Nov. 21, 2003); Sandra Cash v. Wyeth, et al., Case No: 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004); Sandra Storey v. Wyeth, et al., Case No: 04-BE-27-E (N.D. Ala. Jan. 30, 2004); Pamela Floyd, et al. v. Wyeth, et al., Case No: 03-C-2564-M (N.D. Ala. Oct. 20, 2003; Bryant v. Wyeth, et al., Case No: 02-632-BH-M (S.D. Ala. Sept. 24, 2002) attached hereto as Composite Exhibit "E"

-15-

As this Court has held when faced with identical issues, it is possible that a state court would find that Plaintiffs' complaint states a cause of action for fraud against Defendant Agents  Plaintiffs' allegations within the Complaint contain the time, place, and contents or substance of the facts misrepresented  Defendants' arguments about Plaintiff's ability to factually establish a claim are misplaced  The evidence submitted by Plaintiff contradicts the self serving affidavits of the Defendant Agents  Since all issues of fact and law should be decided in the light most favorable to Plaintiff, this factual dispute should be resolved in favor of Plaintiff  Defendants have failed to carry the heavy burden of proving by clear and convincing evidence that there is no possibility that a state court would find that Plaintiffs' Complaint states a claim against Defendant Agents  Consequently, there is no federal jurisdiction and Plaintiffs' Motion to Remand should be granted

### B. There is a possibility that A State Court Would Find That Plaintiff's Complaint States a Cause of Action Under The AEMLD and For Breach of Warranty Against Defendant Agents

Defendants allege that Defendant Agents cannot be held liable under the AEMLD because they did not manufacture, sell, or supply Redux  Plaintiffs' allegations in the Complaint, Affidavits attached to this memorandum, and Alabama law establish that it is possible that a state court would find that Plaintiffs' Complaint states a claim under the AEMLD against Defendant Agents  The Alabama Supreme Court first announced the judicially created AEMLD in Atkins v. American Motors Corp., 335 So 2d 134 (Ala 1976)

-16-

ᒪ

> To establish a claim under the AEMLD a plaintiff must prove: (1) he suffered injury of damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold  (2) Showing these elements, the plaintiff has proved a prima facie case although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller  Atkins, 335 So  2d  at 141.

Recently the Alabama Supreme Court affirmed that "to establish liability under the

AEMLD, a plaintiff must show (1) that an injury was caused by one who sold a product in

a defective condition that made the product unreasonably dangerous to the ultimate user or

consumer; (2) that the seller was engaged in the business of selling such a product; and (3)

that the product was expected to and did, reach the user without substantial change in the

condition in which it was sold "  Tillman, 2003 WL 21489707  Defendants do not argue

whether Redux was unreasonably dangerous or whether the condition of Redux was

substantially unchanged when it reached Plaintiff  The gravamen of Defendants' argument

is that Defendant Agents, as pharmaceutical sales representatives, are not sellers or suppliers

of Redux  Therefore, Defendant Agents cannot be liable under the AEMLD  Plaintiffs'

Complaint, supporting affidavits, and Alabama law demonstrate that it is possible that a

state court would find that Defendant Agents were sellers or suppliers of Redux and liable

under the AEMLD  Furthermore, Defendant Agents personally participated in the tort

against Plaintiffs as discussed *supra*

-17-

ι

Alabama Code section 6-5-501(1) defines seller as "any person, firm, corporation, association, partnership, or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product    " One distributes a product "when, in a commercial transaction other than a sale, one provides the product to another either for use or consumption or as a preliminary step leading to ultimate use or consumption    commercial nonsale product distributors include    those who provide products to others as a means of promoting either the use or consumption of such products or some other commercial activity " Section 20, Restatement (Third) of Torts: Products Liability (1998)

In the case at bar, Plaintiffs have alleged that Defendant Agents actively participated in the sale and distribution of Redux to Plaintiffs' prescribing physician   See Complaint Paragraphs 40 44, 73 77 *supra*   Furthermore, Plaintiff has established an evidentiary basis for this allegation   See Exhibit A, Affidavits of Dr  Wiles, Dr  Sabatine, and Dr  Yoder, these physicians swore that drug sales representatives provided them samples of Redux   Id.  In addition, Defendant Weavers admits that she "promoted Redux to licensed healthcare providers "  See Defendant Weavers' Affidavit Attached to Defendants' Notice of Removal(Exhibit "F")  Defendants attempt to distinguish between promoting Redux and selling or distributing Redux  This distinction is irrelevant because "the fact that a technical sale did not take place does not affect liability under the AEMLD "  Rice v. United Parcel Service General Services, 43 F  Supp 2d 1134, 1145 (D Or  1999)(applying Alabama law

-18-

and quoting First Nat'l Bank of Mobile v. Cessna Aircraft Co., 365 So 2d 966, 967 78

(Ala 1978) In First Nat'l Bank, the Alabama Supreme Court, answering a certified

question from this Court, held that an aircraft placed on the market for demonstration

purposes only was still subject to liability even though there had been no sale. First Nat'l

Bank, at 966 The Court held that liability under the AEMLD does not arise from a sale,

but from placing the product on the market Id. Dr Wiles', Dr Sabatine's, and Dr

Yoder's affidavits establish that drug sales representatives placed Redux on the market in the

form of product samples

Defendants did not employ ghosts to sell Redux Defendant Wyeth sold Redux

through the Defendant Agents The best estimates state that sales reps spend between

$8,000 and $13,000 per physician each See Wazana, "Is a Gift Just a Gift? "

Pharmaceutical sales representatives derive their income from the amount of pharmaceutical

sales that they generate The fact that Defendant Agents personally profited from the sale of

Redux is an additional reason that Defendant Agents should be subject to an AEMLD

claim See Bittler v. White and Company, Inc., 560 N E 2d 979 (5th DCA Ill 1990)

(quoting Kasel v. Remington Arms, Inc., (1972), 24 Cal App 3d 711, 725, 101 Cal Rptr

314, 323, quoted in Hebel v. Sherman Equipment, 92 Ill 2d at 379, 65 Ill Dec At 894,

442 N E 2d at 205; See also Alvarez v. Koby Machinery Co., (1987), 163 Ill App 3d

711, 114 Ill Dec 775, 516 N E 2d 930 ) When an employee has a participatory

19-

connection, the policy justifications for strict liability are furthered by holding that employee individually liable for their conduct  Id.

Defendants cite In re Rezulin Prods. Liab. Litig., 133 F  Supp 2d 272 (S D N Y 2001) for the proposition that pharmaceutical representatives are not sellers or suppliers of the prescription drug they promote  Defendants' reliance to demonstrate fraudulent joinder in the case at bar is misplaced  In Rezulin, the Plaintiffs alleged an AEMLD claim against pharmaceutical sales representatives  Id. at 286  However, no allegation in the Rezulin complaint indicated that the sales representatives named in the complaint sold pharmaceuticals to the plaintiff or the plaintiff's physician  Id. at 287  The court found that the absence of any alleged connection between the sales representative and plaintiff was fatal to all claims against the sales representative "  Id.  The Court also criticized the lack of any allegation or evidence to establish that the sales representative manufactured, sold, or supplied any pharmaceutical  Id.

In the case at bar, Plaintiffs' Complaint alleges that Defendant Agents supplied samples of Redux to Plaintiffs prescribing physician  These allegations are substantiated by the affidavits of Dr  Wiles, Dr  Sabatine, and Dr  Yoder  See Exhibit A  Plaintiffs have not only alleged a connection between Defendant Agents and Plaintiffs' damages, but, Plaintiffs have provided evidence which substantiates this allegation  Consequently, the findings of the court in Rezulin are not applicable in this case

-20-

Ļ

Furthermore, at least one other District Court in Alabama has held that an AEMLD claim against individual sales representatives is possible  See Exhibit G, Hales v. Merck & Co., Case No. 03-AR-1028-M (N D Ala  June 26, 2003)(granting motion to remand and denying motion to dismiss in case brought against pharmaceutical manufacturer and pharmaceutical sales representatives, finding sales representatives were not fraudulently joined even where sales representative affidavits indicated that those representatives did not detail the prescribing doctor as disputes must be resolved in favor of plaintiff, and court cannot adjudicate the merits of claim before finding that the court has subject matter jurisdiction)  Other jurisdictions have also held that a sales representative may be held individually liable under strict liability theory  See United States District Court for the Middle District of Florida Remand Orders in Stella Little v. Wyeth-Ayerst Laboratories Inc, et. al., Case No  99-2244-CIV T-26C; Carol Morris v. Wyeth -Ayerst Laboratories Inc., et. al., Case No  99 2454-CIV-I-26A; Dorothy Snell v. Wyeth-Ayerst Laboratories Inc., et. al., Case No  99 2453-CIV I 26A  See also Collins et al, v. Bayer Corp, et al, Case No 02 2985, MDL 1341 (D Minn  February 28, 2003) (Attached as Exhibit "H")

Defendants have failed to meet the heavy burden of proving by clear and convincing evidence that there is no possibility that a state court would find that Plaintiff's Complaint states a claim against Defendant Agents under the AEMLD  The affidavits of Dr Wiles, Dr Sabatine, and Dr Yoder directly contradict the self-serving affidavits of Defendant Agents  These affidavits demonstrate that drug sales representatives  provided samples of

21

Redux  Since all issues of fact and law should be decided in the light most favorable to

Plaintiff,  this factual dispute must be resolved in Plaintiff's favor  Furthermore, Defendant

Weaver admits in her own affidavit that she promoted Redux  In light of Plaintiffs

Complaint,  the affidavits, and Defendant Weaver's own admissions, it is possible that a

state court would find that Plaintiffs' Complaint states a cause of action under the AEMLD

against Defendant Weaver or Defendant Stubblefield  Consequently, Plaintiffs' Motion to

Remand should be granted

Defendants also allege that Plaintiff may not maintain an action for Breach of

Warranty against Defendant Agents  The only support offered for this allegation is that

Defendant Agents are not sellers  This is the same argument made by Defendants about

Plaintiff's AEMLD claim  As Plaintiff has demonstrated, this argument is not sufficient to

demonstrate fraudulent joinder  There is a possibility that a state court might find that

Defendant Agents were a seller  Consequently, Plaintiff's Motion to Remand should be

granted

### C.  There Is a Possibility That a State Court Might Find That Plaintiff's Complaint States a Cause of Action Against Defendant Agents Based on Negligence.

Defendants allege that Defendant Agents cannot be held liable for negligence.

Defendants allege that Alabama law does not hold an employee liable for the negligence of

his employer unless the employee personally participated in the alleged wrongful conduct of

his employer  "In Alabama, the general rule is that officers or employees of a corporation

are liable for torts in which they have personally participated, irrespective or whether they

-22-

are acting in a corporate capacity " Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC,

Inc., 496 So 2d 774, 775 (Ala 1986)(citing Candy H. v. Redemption Ranch, Inc., 563

F Supp 505, 513 (M D Ala 1983); see also Chandler v. Hunter, 340 So 2d 818, 822

(Ala Civ App 1976)

Plaintiffs rely on his arguments *supra* regarding individual liability of Defendant

Agents  Plaintiffs have alleged that Defendant Agents personally participated in the

wrongful conduct of Wyeth and Wyeth Pharm  See Plaintiff's Complaint paragraphs 40-

44, 73-77 *supra*  Defendant Agents were the individuals who actively participated in the

sale and distribution of Redux  Defendant Agents knew or should have known that Redux

was not safe and effective as sustained by the evidence attached as Exhibit "B," Redux Sales

Manual

Defendants in their Notice of Removal fail to address the allegations of Negligence

against Defendant Agents contained in the Plaintiffs' Complaint  Instead, Defendants

merely rely on a citation to the case of Tillman v. R.J. Reynolds, 253 F 3d 1302 (11th Cir

2001) for the proposition that a plaintiff fails to state a claim for negligence simply by

alleging that an employee defendant acted with superior knowledge  In Tillman, the

Plaintiff alleged that the individual employees had superior knowledge of the dangers of the

product because of their employment  Id. at 1305  However, the plaintiffs' complaint in

Tillman failed to allege the plaintiffs ever dealt with the employees, or that they made any

representations on which plaintiffs relied. Id.  In Tillman, the individual employee

-23-

(.

defendants were not even working for the defendant manufacturer at the time plaintiffs initially purchased the defective product  Id.  The Tillman court dismissed the action because the plaintiffs failed to demonstrate that the individually named defendants were tied to the allegations in the complaint  Id.

Plaintiffs' Complaint does not suffer from the deficiencies in Tillman  Defendant Weaver has admitted in her own affidavit that she promoted Redux.  In addition, Plaintiffs have alleged in the Complaint and also provided evidence that drug sale representatives supplied information and samples of Redux to physicians  This evidence substantiates the fact that Defendant Agents personally participated in the tort against Plaintiffs  There is a possibility that a state court would find that Plaintiffs' Complaint states a cause of action for negligence against Defendant Agents.  Consequently, Plaintiffs' motion to remand should be granted

## CONCLUSION

Defendants allege in their Notice of Removal that federal jurisdiction exists because Defendant Agents have been fraudulently joined   Defendants have the heavy burden of showing by clear and convincing evidence that the allegations of the complaint do not state any possible cause of action against any Defendant Agents  Defendants have failed to meet their heavy burden  Defendants rely on misplaced authority which are not analogous easily distinguishable from the facts before this Court  Furthermore, Plaintiffs have provided evidence which contradicts Defendant's assertions and substantiates the allegations in

-24-

Plaintiffs' complaint  Plaintiffs only need to show that there is a possibility that a state court

would find that any one of the allegations in the complaint states a cause of action against

any Defendant Agent  All issues of law and fact are determined in Plaintiffs' favor

Plaintiffs have demonstrated that it is possible that a state court would find that Plaintiffs'

Complaint states a cause of action against Defendant Agents  Therefore, This Court should

remand this case to state court  Plaintiffs respectfully move this Court to award Plaintiffs'

costs and attorney's fees associated with Defendant's removal of this case  In light of the

absence of any facts to justify Defendants' removal, Plaintiffs submit that costs and fees are

justified  Finally, Plaintiffs respectfully request a hearing on this Motion if this Court finds

that a hearing is necessary to decide this matter

Joseph A  Zarzaur, Jr  (ZAR002)
Attorney for Plaintiffs

Of Counsel:
McKenzie, Taylor & Zarzaur, P A
905 E  Hatton St
Pensacola, FL 32503
850-432-2856
Fax 850 432 5130

-25-

FILED
2006 Sep-06 PM 02:03
U S DISTRICT COURT
N D. OF ALABAMA

## U.S. District Court
### Northern District of Alabama (Southern)
CIVIL DOCKET FOR CASE #: 2:06-cv-00226-WMA

Partin v. Merck & Co, Inc et al
Assigned to: Judge William M Acker, Jr
Cause: 28:1332 Diversity-Product Liability

Date Filed: 01/31/2006
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Louise Partin**
*an individual*

represented by **Joseph L Tucker**
K STEPHEN JACKSON PC
Black Diamond Building
2229 First Avenue, North
Birmingham, AL 35203
252-3535
Email: jtucker@ksjpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**K Stephen Jackson**
K STEPHEN JACKSON PC
Black Diamond Building
2229 First Avenue North
Birmingham, AL 35203-4203
205-252-3535
Fax: 205-252-3536
Email: sheree@ksjpc com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Merck & Co, Inc**
*a foreign corporation*

represented by **Anne Marie Seibel**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: aseibel@bradleyarant com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brislin Mitchell**
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North, Seventh Floor
PO Box 830709
Birmingham, AL 35283-0709
205-521-8360
Fax: 205-488-6360

**DEFENDANT'S
EXHIBIT
H**

M00A301114

Email: emitchell@bradleyarant com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F Wendell Allen**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521 8000
Email: wallen@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F M Haston, III**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: thaston@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hallman B Eady**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: heady@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John David Owen**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: jowen@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Richard Ryan**
*an individual*

**Defendant**

**Robert Wall**
*an individual*

represented by **Anne Marie Seibel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brislin Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F Wendell Allen**

M00A301111

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F M Haston, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hallman B Eady**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gary Harlan**
*an individual*

represented by **Anne Marie Seibel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brislin Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F Wendell Allen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F M Haston, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hallman B Eady**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sonya Coley**
*an individual*

**Defendant**

**Reggie Ray, III**
*an individual*

represented by **Anne Marie Seibel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brislin Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F Wendell Allen**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F M Haston, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hallman B Eady**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Beverly Anderson**
*an individual*

<u>Defendant</u>

**Matthew King**                          represented by **Anne Marie Seibel**
*an individual*                                            (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Elizabeth Brislin Mitchell**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **F Wendell Allen**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **F M Haston, III**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Hallman B Eady**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Patricia Aiken**                          represented by **Anne Marie Seibel**
*an individual*                                            (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Elizabeth Brislin Mitchell**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **F Wendell Allen**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **F M Haston, III**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hallman B Eady**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Angela Finch**
*an individual*

represented by **Anne Marie Seibel**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2006 | 1 | NOTICE OF REMOVAL by Merck & Co, Inc, from Circuit Court, Jefferson County, AL, case number CV2006-00026 (Filing fee $250 receipt #200 222795) filed (Attachments: # 1 Exhibit A Complaint, Summons# 2 Exhibit B Notice of Filing Notice of Removal# 3 Exhibit C Jury Awards# 4 Exhibit D Order Denying Plas Motion to Remand# 5 Exhibit E Declarations of dfts# 6 Exhibit F Report and Recommendation# 7 Exhibit G Baycol Products Litigation# 8 Exhibit H Memorandum Opinion)(KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 2 | NOTICE of Corporate Disclosure by Merck & Co, Inc (KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 3 | ANSWER to Complaint with JURY DEMAND by Merck & Co, Inc.(KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 4 | MOTION to Dismiss by Gary Harlan. (KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 5 | MOTION to Dismiss by Robert Wall. (KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 6 | MOTION to Dismiss by Patricia Aiken. (KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 7 | MOTION to Dismiss by Reggie Ray, III. (KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 8 | MOTION to Dismiss by Matthew King. (KGE, ) (Entered: 02/01/2006) |
| 01/31/2006 | 9 | MOTION to Stay pending transfer decision by the Judicial Panel on Multidistrict Litigation by Merck & Co, Inc. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G)(KGE, ) (Entered: 02/01/2006) |
| 02/06/2006 | 10 | Evidentiary Submission in Support of Notice of Removal by Merck & Co Inc (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3)(Seibel, Anne) (Entered: 02/06/2006) |
| 02/06/2006 | 11 | MOTION to Dismiss by Angela Finch. (Seibel, Anne) (Entered: 02/06/2006) |
| 02/06/2006 | 12 | AMENDED ANSWER to *Plaintiff's Complaint* by Merck & Co, Inc. (Seibel, Anne) (Entered: 02/06/2006) |
| 02/07/2006 |  | ORDER granting 9 Motion to Stay all proceedings pending transfer decision by the judicial panel on multidistrict litigation. Signed by Judge William M Acker Jr on 02/07/06. (SKB, ) (Entered: 02/07/2006) |

**PACER Service Center**

| Transaction Receipt | | | |
|---|---|---|---|
| 02/07/2006 09:15:54 | | | |
| PACER Login: | ba0105 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:06-cv-00226-WMA |
| Billable Pages: | 3 | Cost: | 0.24 |

M00A301118

FILED
2006 Sep-06 PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**U.S. District Court**
**Northern District of Alabama (Jasper)**
**CIVIL DOCKET FOR CASE #: 6:06-cv-00143-JEO**

Miller v. Merck & Co., Inc., et al
Assigned to: Magistrate-Judge John E Ott
Cause: 28:1332 Diversity-Product Liability

Date Filed: 01/23/2006
Jury Demand: Defendant
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**ReDonna Earle Wakefield Miller**
*Administratrix of the Estate of Charles Ray*
*Miller, Deceased*

represented by **Edward L McRight, Jr**
ED MCRIGHT JR LAW OFFICE
3000 Riverchase Galleria, Suite 955
Birmingham, AL 35244
985-3780
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry C Wiley, Jr**
King Bryan & Wiley
1824 Third Avenue South
PO Box 1688
Jasper, AL 35502-1688
205-221-3500
Fax: 205-221-3581
Email: angie@jasperlawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James C King**
KING Bryan & Wiley
1824 Third Avenue Southern
PO Box 1688
Jasper, AL 35502-1688
205-221-3500
Fax: 205-221-3581
Email: jasperlawyers@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Merck & Co., Inc.,**
*and or doing business as Merck Corporation,*
*and or doing business as Merck*
*Pharmaceutical Division*

represented by **Anne Marie Seibel**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: aseibel@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brislin Mitchell**

DEFENDANT'S
EXHIBIT
I

M0DA301121

One Federal Place
1819 Fifth Avenue North, Seventh Floor
PO Box 830709
Birmingham, AL 35283-0709
205-521-8360
Fax: 205-488-6360
Email: emitchell@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F Wendell Allen**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: wallen@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**F M Haston, III**
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: thaston@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Leaver Nichols**
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North, Seventh Floor
PO Box 830709
Birmingham, AL 35283-0709
205-521-8341
Fax: 205-488-6341
Email: snichols@bradleyarant.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Kelly Norris**
*an individual citizen within the State of Alabama*

<u>Defendant</u>

**Regional Paramedical Services, Inc**
*a/k/a and or d/b/a RPS, an Alabama Corporation*

represented by **Wayne Morse, Jr**
CLARK DOLAN MORSE ONCALE & HAIR PC
800 Shades Creek Parkway
Birmingham, AL 35209
397-2900
Email: wmorse@clarkdolan.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Pharris**
*an individual citizen within the State of
Alabama*

represented by **Wayne Morse, Jr**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Defendant**

**Mike Dotson**
*an individual citizen of the State of Alabama*

represented by **Wayne Morse, Jr**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/23/2006 | 1 | NOTICE OF REMOVAL by Merck & Co., Inc from Circuit Court Walker County, AL, case number CV 2005-748 (Filing fee $250 receipt # 200 222591) filed (Exhibits E and F pending due to motion to seal documents to be filed) (Attachments: # 1 Exhibit A Letter, Summons, Complaint# 2 Exhibit B Notice of Filing Notice of Removal# 3 Exhibit C Jury Awards in AEMLD Cases# 4 Exhibit D Order from Southern District of Mississippi# 5 Exhibit G re: Baycol Products Litigation list# 6 Exhibit H Memorandum Opinion from USDC NDAL)(KGE, ) (Entered: 01/25/2006) |
| 01/23/2006 | 2 | ANSWER to Complaint with Jury Demand by Merck & Co., Inc., (KGE, ) (Entered: 01/25/2006) |
| 01/23/2006 | 3 | NOTICE of Corporate Disclosure by Merck & Co., Inc., (KGE, ) (Entered: 01/25/2006) |
| 01/23/2006 | 4 | MOTION to Stay all proceedings pending transfer decision by the Judicial Panel on Multidistrict Litigation re 1 Notice of Removal,, by Merck & Co., Inc.,. (Attachments: # 1 Exhibit A Transfer Order# 2 Exhibit B Transfer Order# 3 Exhibit C Order of Transfer# 4 Exhibit D Transfer Order# 5 Exhibit E Order from USDC NDAL# 6 Exhibit F Order from USDC NDAL# 7 Exhibit G Westlaw case)(KGE, ) (Entered: 01/25/2006) |
| 01/25/2006 | 5 | MOTION to Seal *Exhibits "E" anf "F"* to Notice of Removal by Merck & Co , Inc ,. (Allen, F) (Entered: 01/25/2006) |
| 01/26/2006 | 6 | MOTION to Dismiss *or in the Alternative to Quash Service of Process* by Mike Dotson, David Pharris. (Morse, Wayne) (Entered: 01/26/2006) |
| 01/26/2006 | 7 | Evidentiary Material re:6 MOTION to Dismiss *or in the Alternative to Quash Service of Process Memorandum of Points and Authorities in Support of Motion to Dismiss, or in the Alternative to Quash Service of Process.* (Morse, Wayne) (Entered: 01/26/2006) |
| 01/26/2006 | 8 | ANSWER to Complaint with Jury Demand by Regional Paramedical Services, Inc. (Attachments: # 1 Supplement Second part of Answer)(Morse, Wayne) (Entered: 01/26/2006) |
| 01/27/2006 | 9 | Corporate Disclosure Statement by Regional Paramedical Services, Inc. (Morse, Wayne) (Entered: 01/27/2006) |
| 01/31/2006 | | ORDER granting the motion to seal exhibits (E) & (F). 5 The clerk is directed to seal the same. The motion to stay 4 is also granted pending MDL review. Signed by Judge John E. Ott on 1/31/2006. (Ott, John). (Entered: 01/31/2006) |

**PACER Service Center**

M00A30112

| 01/31/2006 15:04:08 | | |
|---|---|---|
| PACER Login: ba0105 | Client Code: | |
| Description: | Docket Report Search Criteria: | 6:06-cv-00143-JEO |
| Billable Pages: 2 | Cost: | 0.16 |

M00A30112



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD)

This Document also relates to:

| | |
|---|---|
| Annie Andrews et al. v. Bayer Corp. et al., | Case No. 03-4932 |
| Maney Anglin et al. v. Bayer Corp. et al., | Case No. 03-4942 |
| Judy Baldwin et al. v. Bayer Corp. et al., | Case No. 03-4930 |
| Dorothy Bennett et al. v. Bayer Corp. et al., | Case No. 03-4938 |
| Alice Dowling et al. v. Bayer Corp. et al., | Case No. 03-4931 |
| Mary Ellis et al. v. Bayer Corp. et al., | Case No. 03-4933 |
| Sis Grubbs et al. v. Bayer Corp. et al., | Case No. 03-4934 |
| George Jenkins et al. v. Bayer Corp. et al., | Case No. 03-4943 |
| Mary Richardson et al. v. Bayer Corp. et al., | Case No. 03-4935 |
| Charles Rogers et al. v. Bayer Corp. et al., | Case No. 03-4936 |
| Clarence Wheeler et al. v. Bayer Corp. et al., | Case No. 03-4941 |
| Albert Williams et al. v. Bayer Corp. et al., | Case No. 03-4937 |
| Willie Womack et al. v. Bayer Corp. et al., | Case No. 03-4939 |
| Jeffrey Woods et al. v. Bayer Corp. et al., | Case No. 03-4940 |

Andy D. Birchfield, Jr., E. Frank Woodson, and Melissa A. Prickett, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

Peter W. Sipkins, Dorsey & Whitney LLP for and on behalf of Bayer Corporation.

Scott A. Smith and Tracy J. Van Steenburgh for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

This matter is before the Court upon Plaintiffs' motions for remand. Bayer

Corporation ("Bayer") and SmithKline Beecham Corporation d/b/a

i



DEFENDANT'S
EXHIBIT

J



GlaxoSmithKline ("GSK") oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

Background

The above-referenced cases were originally filed in Alabama state court and involve a number of plaintiffs that are citizens of Alabama. Plaintiffs each allege that they were prescribed Baycol and that as a direct and proximate result of taking Baycol, each Plaintiff was caused to suffer physical injury.[1] In their Complaints, the Plaintiffs assert the following claims against Bayer A.G., Bayer Corporation, GSK, as well as against Monica Reid and Jerry Totty, district managers for GSK and Todd Trawick and Donald Heller, sales representatives for GSK: the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breach of warranty, and; fraud/suppression.

Bayer and GSK removed the above actions to federal court on the basis that the non-diverse defendants, the individual district managers and sales representatives, were fraudulently joined. Plaintiffs now seek remand, arguing that they have stated a claim against these individual defendants.

Standard

Remand to state court is proper if the district court lacks subject matter

---

[1] With the exception of those paragraphs describing the claims of the individual plaintiffs, the allegations against the defendants in all of the above referenced complaints are identical. For ease of reference, the Court will refer only to the Baldwin Complaint.



jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

Fraudulently joined defendants will not defeat diversity jurisdiction. Filla v. Norfolk Southern Railway Company, 336 F.3d 806, 809 (8th Cir. 2003). "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001). The burden is on the removing party to show that a non-diverse party has been fraudulently joined. Id., at 871. In deciding this issue, the Court may consider the pleadings and supporting affidavits. Parnas v. General Motors Corporation, 879 F. Supp. 91, 92 (E.D. Mo. 1995).

1. AEMLD Claim

Plaintiffs have alleged AEMLD claims against all defendants. To establish liability under AEMLD, the plaintiffs must show they were injured by one who sold a product in a defective condition unreasonably dangerous to the plaintiffs as

3



the ultimate user or consumer; the seller was engaged in the business of selling such a product; the product was expected to and did reach the users without substantial change in the condition in which it was sold. Carter v. Cantrell Machine Company, Inc., 662 So. 2d 891, 892 (Ala. 1995).

Defendants argue that the district managers and sales representatives are not "sellers" of Baycol, as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to "plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins v. American Motors Corp, et al., 335 So.2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. Bowman v. Coleman Company, Inc., Civil Action No. 96-0448-P-C (S.D Ala. 1996), Attached as Ex. B. to Removal Petition. The court recognized that the defendant sales manager "had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers." Id. at *7. The court also noted that it is the corporation that reaps the

4

profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. Id. "In short, the policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales representatives."

In another MDL proceeding, the district court similarly held that Alabama courts would not hold a sales representative liable under AEMLD. In re Rezulin Products Liability Litigation, 133 F.Supp. 2d 272, 287-288 (S.D.N.Y. 2001).

> The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin. Rather, he was an agent of the manufacturer and seller. As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representatives in this case.

Id. See also, Wakeland v. Brown & Williamson Tobacco Corporation, 996 F.Supp. 1213 (S.D. Ala. 1998) (finding that retailer of cigarettes was fraudulently joined as plaintiffs had failed to state a claim under AEMLD, in part, because Alabama rejects the no-fault precept and plaintiff failed to demonstrate a causal connection between the retailer's activities in connection with the handling of the product and the product's defective condition).

Plaintiffs do not allege, and nothing in the records supports a finding, that



the individual defendants are "sellers" as that term is used to impose liability for a
defective product. In fact, the individual defendants submitted declarations in
which they attest that they are not sellers, manufacturers, developers or testers of
Baycol. Declarations of Monica Reid, Jerry Totty, Todd Trawick and Donald
Heller, Ex. C. to Joint Notice of Removal. Accordingly, the Court finds that
Alabama would not recognize an AEMLD claim against the individual defendants
in these cases.

    2. Negligence/Warranty Claim

Plaintiffs also assert negligence and warranty claims against the individual
defendants, alleging they were negligent in the design, manufacture,
development, packaging, labeling, marketing, promoting, advertising and sale
and/or distribution of Baycol and provided express and implied warranties
concerning Baycol's safety and efficacy. Compl. ¶¶ 28-32. Defendants argue that
these claims fail as well, as such claims can only be brought against a
manufacturer or seller of an allegedly defective product.

In support of remand in these cases, Plaintiffs argue that the negligence
and warranty claims stand, as such claims are not subsumed by AEMLD.
Defendants do not argue to the contrary, and the Alabama Supreme Court has
found that negligence claims are not subsumed by AEMLD. Tillman v. R.J.
Reynolds Tobacco Co., 2003 WL 21489707 (Ala. 2003). However, none of the

6

cases cited in their briefs addresses the propriety of such claims against individuals that were not manufacturers or sellers of the product at issue.

Alabama law provides that claims of negligent manufacture or sale may only be asserted against the manufacturer or seller. Norton Co. v. Harrelson, 176 So.2d 18, 20 (Ala. 1965). Similarly, claims of breach of express or implied warranties may only be asserted against the seller of the product at issue. See eg. Rutledge v. Arrow Aluminum Industries, Inc., 733 So. 2d 412, 417 (Ala. Civ. App. 1998) (plaintiff cannot recover against construction company under AEMLD or breach of warranty when no evidence presented that construction company sold the alleged defective product at issue). See also, Ala. Code § 7-2-313(1) ("Express warranties by the seller are created as follows . . . ."); id. § 7-2-314(1) (implied warranty of merchantability applies to a seller that is a "merchant with respect to goods of that kind"); id. § 7-2-315(1) (implied warranty; fitness for a particular purpose applies to sellers).

As the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs negligence and warranties claims against the individual defendants would fail.

3. Fraud/Suppression

Finally, Plaintiffs allege that the individual sales manager and sales representative defendants made knowing fraudulent misrepresentations that

7



Baycol was safe with the intent to induce physicians to prescribe Baycol and that

plaintiffs were injured as a result. Compl. ¶¶ 43 and 44. Defendants argue these

allegations do not meet the specificity requirements of Rule 9(b) of the Federal

Rules of Civil Procedure and the Alabama Rules of Civil Procedure, and that such

claims should therefore be dismissed.

Alabama law clearly provides that a claim for fraud must be plead with

particularity.

> Rule 9(b), A.R.Civ.P. provides that when fraud is alleged, the
> circumstances constituting the fraud must be stated with particularity. This
> does not mean that every element must be pleaded with particularity. The
> pleader, however, must use more than generalized or conclusionary
> statements when setting out the allegations of fraud. The pleader must
> state the place, the time, the contents of the false misrepresentations, the
> fact misrepresented, and an identification of what has been obtained.
> Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala. 1981). The purpose of
> Rule 9(b) is to provide adequate notice to the opposing party of any claim
> for fraud so that he may properly prepare his case. Caron v. Teagle, 345
> So.2d 1331 (Ala. 1977).

Lyde v. United Ins. Co. of America, 628 So.2d 665, 670 (Ala. Civ. App. 1993).

In reviewing the Complaints at issue here, the Court finds that Plaintiffs

have failed to plead, with the requisite particularity, the "place, the time, the

contents of the false misrepresentations, the fact misrepresented, and the

identification of what has been obtained." Id. Rather, the allegations supporting

the fraud/suppression claim are general and conclusory. For example, one such

allegation reads "the District Managers and Sales Representatives advertised,

8



marketed, and/or promoted Baycol to prescribing physicians utilizing information known to fraudulently represent the safety and efficacy of Baycol, and the District Managers and Sales Representatives failed to warn of the known dangers and adverse events associated with the use of Baycol." Baldwin Compl. ¶ 17. Another reads "the District Managers and Sales Representatives called on physicians . . . at which times they presented fraudulent information . . . " Id. ¶ 14. No allegation specifies the specific misrepresentation the individual defendants made, to whom and under what circumstances.

    4. Amount in Controversy

    In the Baldwin Complaint, Plaintiff Ruby Johnson alleges she suffered physical and/or mental injuries in the aggregate amount of $74,000. Baldwin Comp. ¶ 6. Plaintiffs in the Baldwin action thus argue that the remand is appropriate as the amount in controversy is not met. Defendants respond that plaintiff Johnson has failed to limit her damages below the jurisdictional amount.

    The Court begins its analysis with the principle that the amount claimed by Plaintiffs ordinarily controls in determining whether jurisdiction lies in federal court. Zunamon v. Brown, 418 F.2d 883, 885 (8th Cir. 1969) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)). Nonetheless, "the plaintiffs allegations of requisite jurisdictional amount are not necessarily dispositive of the issue" Id. That is because an allegation in a



pleading is not binding. The applicable rules of civil procedure liberally allow the amendment of pleadings. Thus, to prevent removal, a plaintiff must submit a binding stipulation or affidavit, separate from the pleadings, and signed by the plaintiffs agreeing to be so bound. See eg. De Aguilar, 47 F.3d at 1412; In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992); White v. Bank of America, 2001 WL 804517 (N.D. Tex. 2001) (to prevent removal, plaintiff must file with the complaint a binding stipulation or affidavit that limits the scope of their recovery).

The Court finds that based on all claims included in the Complaint, the amount in controversy exceeds $75,000. Specifically, all of the Baldwin plaintiffs have asserted a number of claims arising in tort, contract and statute. Plaintiffs also seek compensatory and punitive damages. Given the breadth of their requests, the amount in controversy easily exceeds $75,000 per plaintiff, including plaintiff Johnson.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motions for remand are DENIED.

Date: March 25, 2004

/s/ Michael J. Davis
Michael J. Davis
United States District Court

10

11

FILED

2006 May-10  PM 01:33
U S DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

Dr. GENE N. GORDON,                    )
                                       )
          Plaintiff,                   )
                                       )          CASE NO.:
v.                                     )
                                       )          CV-06-RRA-703-E
PFIZER INC., et al.,                   )
                                       )
          Defendants.                  )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On February 14, 2006, Plaintiff filed this action in the Circuit Court of Talladega County, Alabama. The action is brought by the plaintiff, Dr. Gene N. Gordon, against the defendants, G.D. Searle, LLC., Pharmacia Corporation, Monsanto Company, Pfizer, Inc., and Ron Pollard. The complaint alleges that the prescription drug Bextra (Valdecoxib) caused the plaintiff to have a heart attack, and otherwise be injured. The following causes of action are alleged against all defendants: negligence (count I), defective design (count II), failure to warn (count III), breach of express warranty of merchantability (count IV), breach of implied warranty of merchantability (count V), fraud (count VI), and negligent misrepresentation (count VII). The individual defendant, Ron Pollard, is the only non-diverse defendant.

There is no dispute that Plaintiff and Defendants Searle, Pharmacia, and Pfizer are "citizens of different States" for purposes of 28 U.S.C. § 1332(a)(1) or that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.[1] *See*

---

[1] Specifically, Plaintiff Dr. Gene Gordon is, and was at all relevant times, an adult resident and citizen of Alabama. *See* Notice of Removal ¶ 6. Pfizer is now, and was at the time of filing of the Complaint, a corporation organized



*Notice of Removal*, ¶¶ 3-11; *Brief in Support of Motion to Remand*, at 1. Plaintiff also has

named a non-diverse pharmaceutical detailer Rod Pollard. The defendants assert that Pollard

has been fraudulently joined.

On September 6, 2005, pursuant to 28 U.S.C. § 1407, the Judicial Panel on

Multidistrict Litigation ("JPML") created a Multi-district Litigation ("MDL") proceeding for

Bextra cases such as this pending in federal courts across the country. *See In re Bextra &*

*Celebrex Marketing, Sales Practices & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L.

2005). On April 11, 2006, Defendants sent a "tag-along" letter regarding this action to the

JPML pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the JPML. On May 2,

2006, the JPML listed the instant case on a conditional transfer order ("CTO").

The JPML routinely transfers cases in which remand motions are pending. Moreover,

the JPML previously instructed federal district judges with Bextra®-related cases such as this

one on their docket that although "you are free to rule on the motion [to remand], of course,

or wait until the Panel has decided the transfer issue[,] [t]he latter course may be especially

appropriate if the motion raises questions likely to arise in other actions in the transferee

court and, in the interest of uniformity, might best be decided there." JPML Ltr. Re: MDL-

1699—*In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.* at 1 (J.P.M.L.

---

under the laws of Delaware with its principal place of business in New York, and therefore is and was a citizen
of Delaware and New York. *Id.* ¶ 7. Pharmacia is now, and was at the time of filing of the Complaint, a
corporation organized under the laws of Delaware with its principal place of business in New Jersey, and
therefore is and was a citizen of Delaware and New Jersey. *Id.* ¶ 8. Searle is now, and was at the time of filing
of the Complaint, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company
LLC, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, a limited liability
company whose sole member is (and was) Pharmacia Corporation which is (and was) a corporation existing
under the laws of the state of New Jersey. *Id.* ¶ 9. Monsanto is not a citizen of Alabama. *Id.* ¶ 10.

May 13, 2005).

The defendants wish this matter stayed pending full transfer of the case, and so have filed a motion to stay all proceedings pending transfer to multidistrict litigation proceeding. (Doc. 5). Numerous cases involving the joinder of Alabama pharmaceutical representatives already have transferred, or are in the process of transferring, to the MDL Court. *See, e.g., See Jackson v. Pfizer, Inc. et al.*, CV-2:05-cv-841-F (M.D. Ala. Dec. 5, 2005) (Walker, J.); *Nelson v. Pfizer, Inc., et al.*, CV-2:05-cv-832-F (M.D. Ala. Oct. 20, 2005) (Fuller, J.); *Thomas v. Pfizer, Inc. et al.*, CV-2:05-cv-824-F (M.D. Ala. Nov. 15, 2005) (Fuller, J.); *Hall v. Pfizer, Inc., et al.*, CV-2:05-cv-941-F (M.D. Ala. Nov. 21, 2005) (McPherson, J.); *Beverly v. Pfizer, Inc., et al.*, CV-05-0542-M, (S.D. Ala. Nov. 17, 2005) (Milling, J.); *see also* February 14, 2006 Transfer Order; Conditional Transfer Order (CTO) CTO-3.

The plaintiff has filed a motion to remand, claiming that this court lacks subject matter jurisdiction over this case. (Doc. 6). Because the fraudulent joinder issue rests on the determination of Eleventh Circuit and Alabama law, it is determined that this court is the proper court to determine those issues.

## II.    ANALYSIS

### A.    Fraud and Misrepresentation Claims

The plaintiff does not dispute defendants' showing that there is complete diversity between plaintiff and the remaining defendants or that the amount in controversy requirement is met. The only aspect of this court's diversity jurisdiction that plaintiff challenges is whether Pollard is fraudulently joined. The citizenship of fraudulently joined defendants should is disregarded for purposes of assessing diversity and proper removal. *See*

3

*e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *rev'd on other grounds,* 204 F.2d 1069 (11th Cir., 2000). Under the Eleventh Circuit's standard for fraudulent joinder, remand should be denied where there is "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims; the potential for liability "must be reasonable, not merely theoretical." *Legg v. Wyeth,* 428 F.3d 1317, 1325, & n. 5 (11th Cir. 2005).

"The removal process was created by Congress to protect defendants. Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'" *See Legg v. Wyeth,* 428 F.3d 1317, 1325 (11th Cir. 2005) (internal quotation marks omitted). "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court . . . ." *Wecker v. Nat'l Enameling & Stamping Co.,* 204 U.S. 176, 186 (1907).

The doctrine of fraudulent joinder prevents plaintiffs from defeating federal diversity jurisdiction by simply naming in-state defendants. In *Legg v. Wyeth,* 428 F.3d 1317, 1325 (11th Cir. 2005), the Eleventh Circuit recently recognized this "common strategy employed" by plaintiffs in pharmaceutical product liability cases such as this in which plaintiffs' "name local parties, often … local sales representatives, as defendants, thus defeating [a defendant's] right to remove a case to federal court." *See Legg,* 428 F.3d at 1325. In *Legg,* the Eleventh Circuit explained the proper standard for determining whether a pharmaceutical representative defendant is fraudulently joined. Joinder of a non-diverse defendant is fraudulent where there is "no reasonable possibility" that the plaintiff would be able to

4

establish a cause of action against a resident defendant. *See, e.g., Legg,* 428 F.2d at 1325; *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11ᵗʰ Cir. 1998).

Fraudulent joinder may be shown by a lack of a factual or legal basis for plaintiff's claims. *See Owens v. Life Ins. Co. of Georgia,* 289 F.Supp.2d 1319, 1323-24 (M.D.Ala. 2003) (Fuller J) (denying remand and finding no possibility that plaintiff could establish a cause of action against the resident defendant and thus resident was fraudulently joined). "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Legg,* 428 F.3d at 1325 n.5 *(quoting Braden v. Wyeth,* CV-04-PT-235-E, 2005 U.S. Dist LEXIS 25243) (N.D. Ala. June 30, 2004).

The thrust of Plaintiff's argument in his Motion to Remand is that numerous unnamed pharmaceutical representatives in Alabama made fraudulent and negligent misrepresentations and failed to disclose that Bextra causes heart attacks, the injury of which Plaintiff complains. *Brief in Support of Motion to Remand*, at 11-21 (focusing strictly on claims of misrepresentation, fraud and suppression as it relates to other pharmaceutical representatives).

As the Eleventh Circuit recently explained in *Legg,* Plaintiff cannot assert fraud or negligent misrepresentation claims against Pollard because Plaintiff fails to specifically allege knowledge or bad faith on his part. In *Legg,* as here, plaintiffs asserted numerous claims against the pharmaceutical companies and pharmaceutical representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the prescription medication, Redux. Defendants removed the case

5

on diversity grounds, arguing fraudulent joinder of the three named non-diverse pharmaceutical representatives. The defendants submitted a sworn affidavit from one of the defendant pharmaceutical representatives that she had promoted the drug in question to licensed healthcare providers and answered their questions based on information provided to her by her employer. *Id.* at 1321. The affidavit stated, in pertinent part:

– My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth.

– I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings.

– I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.

– I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 428 F.3d at 1321.

In response to defendants' submission, plaintiffs offered as evidence voluminous training materials used by the pharmaceutical companies and its sales representatives in marketing Redux, as well as affidavits from several physicians stating that the pharmaceutical representatives had made misrepresentations to them. *Id.* at 1322 & n.4. Plaintiffs argued that the training materials established that pharmaceutical representatives had knowledge of adverse events associated with Redux. *See id.* at 1322-25. Plaintiffs further argued that the professional representatives learned disingenuous detailing strategies to be used in detailing Redux, including withholding information from physicians. *See id.*

Applying Alabama law, the Eleventh Circuit court found "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims. *See*

6

*Legg*, 428 F.3d at 1324-1325 & n. 5 (stating the potential for legal liability "must be reasonable, not merely theoretical") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). The Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the pharmaceutical representative] as an individual employee, personally liable for any wrongful action by Wyeth in absence of evidence that [the individual pharmaceutical representative] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at 1324-25.

The Court explained that when a defendant presents evidence "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint. *Id.* at 1323.

Here, as in *Legg*, Defendant Pollard has submitted a declaration stating:

–   As a detailer, I visit physicians and healthcare providers' offices and provide them FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing." My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.

–   I am not a physician or pharmacist. I have no specialized medical or pharmacological education. All of the information and material I use to detail Pfizer's drugs, including Bextra, is derived exclusively from education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail.

–   I was not aware of, and did not detail physicians with, any additional information regarding the risks or benefits of Bextra other than what was provided to me by Pfizer and in the FDA-approved labeling.

–   I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

–   At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra, nor did I have any involvement in the FDA-approved package insert for Bextra.

7

- At no time did I ever sell, offer to sell, or take orders for the sale of Bextra to health care providers, physicians or patients.

- I have never made any presentations to the general public concerning Bextra.

*Pollard Affidavit*, at 1-3.

In response, plaintiff attaches various portions of call notes from Alabama pharmaceutical representatives other than Pollard. Indeed, Plaintiff concedes that the call notes are "from various *other* Pfizer Defendant sales representatives in Alabama. . ." and are not call notes or other documentation regarding any alleged misrepresentations made by Pollard. *Brief in Support of Motion to Remand*, at 11 (emphasis added). Plaintiff fails to provide any evidence or even make any specific allegations related to any specialized knowledge by Rod Pollard. Rather, Plaintiff's Complaint and Motion to Remand contain conclusory allegations and deductions:

- As evidenced by the call notes from various other Pfizer Defendant sales representatives in Alabama, the Plaintiff *has alleged and anticipates* he will be able to show that . . . Rod Pollard, fraudulently suppressed material information . . . and misrepresented the safety and efficacy of Bextra.

- Plaintiff also *anticipates* that he will be able to show that [Rod Pollard] participated in an aggressive marketing campaign. . .

- Plaintiff *anticipates* that discovery will show that [Rod Pollard's] knowledge concerning Bextra was superior to the knowledge held by the physicians to whom he made sales calls.

- Plaintiff also *anticipates* that discovery will show that the Plaintiff, as a physician who took Bextra, relied on information provided by Defendants.

*Id.* at 11-14 (emphasis added). The Eleventh Circuit has explained that such "unsupported allegations" do not provide a basis for remand: "*We do not, however, in the absence of any proof assume that the nonmoving party [plaintiff] could or would prove the necessary facts.*"

8

*Legg*, F.3d at 1323 (internal quotation omitted and emphasis original).

Plaintiff also seeks to bolster his claims by referencing documents by a separate pharmaceutical company involving a separate prescription medication. *Id.* at 22 (describing detailing material allegedly from VIOXX litigation). Plaintiff speculates that he "expects that he will be able to obtain similar documents in the present case once he has had an opportunity to conduct discovery." *Id.* at 23. Plaintiff's arguments are without merit because in determining a motion to remand, a court looks to the allegations in the complaint, rather than Plaintiff's wishful speculation about what factual allegations could be made following discovery. *See Legg*, 428 F.3d at 1323 (in light of defendant's affidavits, plaintiff cannot support its motion to remand with "unsupported allegations"); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (holding that court should determine jurisdiction based on the plaintiff's pleadings at the time of removal).

The plaintiff also provides his own affidavit in which he states:

– I rely on the information that the sales representatives provide to me concerning the safety of their drugs. This information is a strong factor in whether I decide to prescribe a medication to a particular patient or to take it myself.

– Rod Pollard . . . visited my office on a few occasions in order to promote the drug Bextra. During each visit, Mr. Pollard provided me with a several months supply of Bextra for my personal use.

– In promoting the drug Bextra, Mr. Pollard discussed the strong safety and effacacy of Bextra. Mr. Pollard also shared positive information concerning the overall safety of Bextra.

– At no time did Mr. Pollard ever inform me of any potential cardiovascular risks associated with Bextra.

– Based on Mr. Pollard's representations of the effacacy and safety of Bextra, I prescribed Bextra to my patients. Additionally, I used the samples that Mr.

9

Pollard provided to me for my personal use

*Gordon Affidavit*, at 1-2. This language provides no evidence that Pollard either knew or should have known about any alleged risk of Bextra. Further, this language does not provide evidence or even make any allegations related to any specified knowledge by Pollard other than what was provided by his employer and in the FDA-approved labeling.

Without any competent evidence that Pollard made knowing misrepresentations or acted in bad faith – and particularly in light of Pollard's statement that he had no specialized knowledge about Bextra and relied entirely on information provided to him by Pfizer – there is "no reasonable possibility" that an Alabama court would conclude that he is liable for fraud or misrepresentation. *See, e.g., Legg*, 428 F.3d at 1324; (*citing Fisher v. Comer Plantation, Inc.*, 772 So.2d 455 (Ala. 2000)) ("those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith"); *see also Montgomery Rubber and Gasket Co. v. Belmont Machinery Co.*, 308 F.Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged misrepresentation]"); *Bloodsworth*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005); *In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD claims).

Plaintiff's fraud and misrepresentation claims also lack the specificity required to satisfy Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with

10

particularity), Ala. R. Civ. P. 9(b), Comment (stating that the Alabama Rule is identical to the federal rule). Thus, Plaintiff cannot maintain any of his fraud-based claims against Pollard. To maintain a cause of action based on fraud or negligent misrepresentation, Plaintiff must prove that: 1) the defendant made a false representation to the plaintiff; 2) the representation concerned a material fact; 3) the plaintiff relied on the representation; and 4) the plaintiff incurred damage as a proximate result of the reliance. *Reeves Cedarhurst Dev. Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180 (Ala.1992); *see also* Ala. Code §§ 6-5-101 & 6-5-103 (2002). As stated, averments of fraud must be stated with particularity under either federal or Alabama law. Fed. R. Civ. Pro. 9(b); Ala. R. Civ. P. 9(b), Comment. Particularity "requires plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv. Inc.*, 131 F.Supp.2d 1296, 1302 (M.D. Ala. 2001). The pleading requirements are not satisfied if plaintiff fails to "distinguish among defendants and specify their respective role in the alleged fraud." *Id.* Thus, a plaintiff must allege the time, place, content and speaker of the allegedly fraudulent misrepresentations. *Id.*; *accord In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at * 1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined where plaintiff's fraud-based claims lacked specificity).

Here, Plaintiff's allegations fail to allege the essential elements of fraud and misrepresentation. Plaintiff alleges in his Complaint:

> Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and user and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug ....

*Complaint* ¶ 73.

11

The Complaint fails to specify time, place, content or speaker of <u>any</u> particular representations by Pollard.  Such general allegations fail to meet the requirements of Rule 9(b).

    B.    **Plaintiff fails to state legally cognizable claims against Pollard for violation of the AEMLD or for breach of express or implied warranty.**

To the extent Plaintiff asserts products liability claims against Pollard for violation of the AEMLD or for breach of express or implied warranty not already addressed above, there is no reasonable basis to predict that he can prevail as these claims apply only to "sellers" and "manufacturers" and Pollard is not a "seller" or "manufacturer" of Bextra. *See Pollard Affidavit* ¶¶ 2, 5, 6. Plaintiff's negligence claims, although not denominated as AEMLD violations, are as a practical matter AEMLD claims or otherwise fail. *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD based-claims); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287 (applying Alabama law and finding resident pharmaceutical representatives fraudulently joined in claims for product liability under AEMLD, negligence, wantonness, fraudulent misrepresentation, and fraudulent suppression).

To establish liability under the AEMLD, a plaintiff must prove defendants manufactured or sold the allegedly defective product. *Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987). But, under Alabama law, pharmaceutical representatives under Alabama law are not considered to be sellers or suppliers of the prescription drugs they represent. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287. Moreover, Pollard's

affidavit constitutes affirmative proof through his declaration that he is not a "seller" or "manufacturer." To the contrary, he is simply a "detailer" on behalf of his employer, Pfizer. Therefore, he cannot be held liable under product liability causes of action.

Further, Plaintiff fails to allege any underlying facts establishing that Pollard acted outside the scope of his employment such that he can be held personally liable under the AEMLD. Alabama law requires that a corporate employee personally participate in the alleged corporate wrongdoing to be liable under the AEMLD. *See, e.g., Turner v. Hayes,* 719 So.2d 1184, 1188 (Ala. Civ. App. 1997) ("corporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort.") *rev'd in part on other grounds sub nom. Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190 (Ala. 1998); *Mills v. Wex-Tex Indus.* 991 F. Supp. 1370, 1381-82 (M.D. Ala.1997) (employee not individually liable absent allegation of personal participation in alleged tortious conduct). Because Pollard neither manufactured, sold, designed, tested nor participated in the development of Bextra, there is no possibility that Plaintiff can state a viable negligence and/or AEMLD claim against him.

As to Plaintiff's breach of warranty claims, Alabama law likewise precludes any possibility that Plaintiff can hold Pollard liable for breach of warranty claims. *See, e.g.,* Ala. Code §§ 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Rezulin I,* 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative). Plaintiff alleges:

> Defendants Searle, Pharmacia, Monsanto, Pfizer and Pollard...made express

representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

Complaint ¶ 54.

> At the time that Defendants designed, tested, inspected, manufactured, assumed, developed, labeled, sterilized, licenses, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valdecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra (Valdecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

*Id.* at ¶63.

Plaintiff does not attempt to offer a factual basis for his warranty claims. Yet even if he had, he cannot maintain an action for breach of warranty against Pollard who (as explained above) is not a seller and thus, cannot be liable as a warrantor of a product. Under breach of express warranty, plaintiff must prove that a manufacturer or seller of a product made "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain . . ." Ala. Code §7-2-213(1)(a) (2002). An implied warranty arises when a "seller is a merchant with respect to goods of that kind." Ala. Code §7-2-314(1) (2002). Both breach of express and implied warranty claims require a finding that a seller or manufacturer breached a warranty. Here, Pollard is not considered a "seller" under Alabama law. *Bowman v. Coleman Co., Inc.*, No. 96-0448-P.-C, Slip Op. at 8 (S.D. Ala. Sept 3, 1996) (retail store manager is not a "seller"); *see also Johnson v. Parke-Davis,* 114 F. Supp.2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as a warrantor of the product."); *see also* Section 20, comment g, Restatement (Third) of Torts: Product Liability §20, cmt. g. (1998) (in defining

14

one who sells or otherwise distributes stating that "[p]ersons assisting or providing services to product distributors . . . are not subject to liability under the rules of this Restatement. . . . . Sales personnel and commercial auctioneers are also outside the rules of this Restatement.").[2]

Accordingly, as with Plaintiff's AEMLD and negligence claim, because pharmaceutical representatives are not considered sellers or distributors under Alabama law, Pollard cannot be liable as a warrantor of Bextra under claims for breach of warranty.

### C.    Failure to warn.

Under Alabama law, a prescription drug manufacturer satisfies its duty to warn under a AEMLD and negligent failure to warn theory, by distributing an adequate warning to the prescribing physician. *Stone v. Smith, Kline & French Labs., et al.*, 447 So.2d 1301, 1305 (Ala. 1984) (holding that an adequate warning to the prescribing physician, but not to the ultimate consumer, is sufficient as a matter of law to avoid liability under the AEMLD in the case of a prescription drug); *id.* at 1304 (holding that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient); *Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala. 1987) (holding that a manufacturer fulfills its negligent failure to warn cause of action, as a matter of law, by distributing the product with reasonable warnings); *Purvis v. PPG Indus., Inc.*, 502 So.2d 714 (Ala 1987).

---

[2] Significantly, even if Pollard were considered to be a "seller," which he is not, mere delivery by a seller to a buyer of the manufacturer's express warranty is not sufficient to make the manufacturer's express warranty become an express warranty by the seller. *Courtesy Ford Sales, Inc v. Farrior*, 298 So.2d 26 (Ala App 1974), *superseded by statute on other grounds, Arnold v. Campbell*, 398 So.2d 301 (Ala App 1981)

Plaintiff summarily argues that Pollard called upon Plaintiff and that Plaintiff allegedly ingested samples of Bextra. *Brief in Support of Motion to Remand*, at 23-24. Plaintiff contends that Pollard voluntarily assumed a duty to warn. Plaintiff's argument is without merit. *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1; *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287. Plaintiff fails to allege any facts indicating that Pollard had any unique or specialized knowledge or information and warnings contained in the FDA approved physician package insert that he had an obligation to disclose to prescribing physicians. Moreover, Pollard submitted affirmative proof in his declaration that he had no knowledge about the risks and benefits of Bextra other than what was provided to him by Defendants. *Pollard Affidavit*, ¶ 4. Pollard further presented uncontested proof that he is not a physician or pharmacist and does not have any specialized medical or pharmacological education. *Id.* Thus, Plaintiff cannot state a viable cause of action against Pollard for failure to warn.

    D.    **Design Defect.**

Plaintiff can also make no viable claim against Pollard for defective design. Pollard's affidavit states that he had no involvement with the design or manufacturing of Bextra and therefore has no possible connection to this claim. *Pollard Affidavit*, ¶ 5. In order to establish a design defect claim, Plaintiff must prove that a safer, more practical alternative design was available to the *manufacturer* at the time it manufactured the product. *See General Motors Corp. v. Edwards*, 482 So.2d 1176 (Ala. 1985)(emphasis added). As such, this claim is plainly targeted at the manufacturer, not the detailer and Plaintiff cannot maintain an action for design defect against Pollard.

16

III.    RECOMMENDATION

As there is "no reasonable possibility" that the plaintiff would be able to establish a cause of action against defendant Pollard, it is **RECOMMENDED** that the motion to remand be **DENIED**, and that defendant Pollard be **DISMISSED with prejudice**. It is also recommended that the motion to stay be granted, pending transfer to multidistrict litigation.

DONE this 10th day of May, 2006.

Robert R. Armstrong, Jr.
United States Magistrate Judge

17

FILED

2006 Jun-23 AM 11:39
U S DISTRICT COURT
N D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JESSICA SOUTHERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 2:06-CV-836-VEH |
| | ) | |
| PFIZER, INC., individually and as | ) | |
| successor in interest to Parke- | ) | |
| Davis and Warner Lambert | ) | |
| Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the court is Plaintiff's Emergency Motion to Remand (doc. 10). This motion has been briefed extensively and is ripe for review. A hearing has not been requested on the instant motion, and the court is satisfied that a decision can be reached based on the papers submitted by the parties.[1] For the reasons stated herein, the Motion to Remand is due to be **DENIED**.

## Procedural History

Plaintiff Jessica Southern commenced this action in the Circuit Court of Jefferson County, Alabama, on March 9, 2006, by filing a Complaint against

---

[1] Plaintiff requested that, should the court determine a hearing to be necessary, such a hearing be conducted in an expedited fashion.

1

DEFENDANT'S
EXHIBIT

tabbies

L

Defendants Pfizer Inc , individually and as successor in interest to Parke-Davis and Warner-Lambert Company LLC, Tracy Ocampo, and Rochelle Hendricks  Pfizer Inc. is a Delaware corporation having its headquarters in New York. Warner-Lambert Company LLC is a Delaware limited liability corporation with Pfizer Inc. as its sole shareholder. Parke-Davis is an unincorporated division of Warner-Lambert Company LLC, and is not a separate corporation or legal entity. Tracy Ocampo and Rochelle Hendricks are both citizens of Alabama.

Plaintiff Southern is a citizen of Alabama.

The Complaint asserts claims against all Defendants for violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), failure to warn, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, breach of an express warranty, unjust enrichment, negligence, fraudulent misrepresentation, negligent and reckless misrepresentation, and civil conspiracy .

Defendants removed this action to the United States District Court for the Northern District of Alabama on April 28, 2006. The basis for removal is that complete diversity among the parties to this action exists due to the fraudulent joinder of Ocampo and Hendricks. On May 5, 2006, Defendants filed a Motion to Stay this action pending transfer of this case to a Judicial Panel on Multidistrict Litigation

2

(hereinafter "MDL") that has been established in the District of Massachusetts.[2] Southern filed an Emergency Motion to Remand on May 10, 2006.

## Facts[3]

In November, 2003, Dr. Scott Williams, M.D. prescribed Neurontin to Southern to treat her chronic fatigue syndrome, a condition for which the drug did not have FDA approval. Southern continued taking Neurontin until she attempted suicide on March 15, 2004. Southern alleges that her suicide attempt is the proximate and legal result of ingesting Neurontin.

Neurontin, a product developed, manufactured, and promoted by Defendant Pfizer, Inc. was approved by the FDA in 1993 as adjunctive therapy for the treatment of certain types of epilepsy. During the early to mid 1990's, Defendant Pfizer Inc. filed patents for Neurontin claiming it to be effective in the treatment of depression,

---

[2]Defendants invite the court to stay this case without reaching a decision on Plaintiff's Emergency Motion to Remand so that the instant motion may be decided by the MDL once the case is transferred. Such a course of action would be improper in that the parties are entitled to a determination of this court's jurisdiction as soon as is practicable. The interests of judicial economy, which the MDL has, in part, been established to preserve, are best served through a jurisdictional determination by this court at this time. Additionally, the facts which establish (or fail to establish) fraudulent joinder are likely to be unique to this case.

[3]As it must, the court will decide all disputed issues of fact in favor of the plaintiff; however, where an affidavit is undisputed by the plaintiff, the court will give weight to the sworn statement over unsupported allegations in the Complaint. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). None of the evidence offered by Southern rebuts the statements in Hendricks' or Ocampo's affidavits. Under *Legg*, absent rebuttal, the court gives weight to the affidavits.

neurogenerative disease, mania, bipolar disease, anxiety, and panic. Neurontin was not approved by the FDA for those uses. Neurontin is still sold to consumers in the United States as a prescription medication.

Beginning in 1995, Pfizer Inc. and Warner-Lambert Company LLC (hereinafter "Corporate Defendants") began to craft marketing and sales techniques designed to promote Neurontin as a treatment for diseases and ailments with respect to which the drug had not received FDA approval. The Corporate Defendants consciously decided to circumvent the normal regulatory process of the FDA pertaining to the marketing of a drug for a specific use and proceeded to actively market Neurontin for certain off-label uses.[4] The Corporate Defendants realized increased profits as a result of their illegal actions.

In response to the Corporate Defendants' off-label marketing scheme, the United States Attorney for the District of Massachussetts brought criminal charges

---

[4]Nothing in the voluminous evidentiary submission provided by Southern in regard to the instant motion to remand suggests a plan by any of the Defendants to market Neurontin as a treatment for Southern's diagnosed chronic fatigue syndrome. The evidence, however, outlines detailed plans by the corporate defendants to this action to market Neurontin as a treatment for a host of specific diseases and ailments. Southern begs this court to infer that, despite a lack of any evidence to support her position, and in light of the overwhelming evidence of Defendants' actions of promoting Neurontin for other specific diseases and ailments, Defendants also promoted, to Southern's treating physician, Neurontin as a treatment for chronic fatigue syndrome. Hendricks' and Ocampo's affidavits clearly contradict Southern's allegations. Following the Eleventh Circuit's holding in *Legg*, Southern's allegations and evidence is insufficient to contradict Hendricks' and Ocampo's sworn affidavits to the contrary. *See* 428 F.3d 1317 (11th Cir. 2005).

4

against the Corporate Defendants. Concurrently, the attorneys general from each of the 50 states commenced litigation against the Corporate Defendants under the relevant consumer protection statutes of those states. On May 13, 2004, the Corporate Defendants agreed to plead guilty to federal criminal charges and simultaneously entered into settlement agreements with the attorneys general.

Tracy Ocampo has been employed by Pfizer Inc. as a Territory Representative since 1998. She has never been an employee of Warner-Lambert Company LLC nor has she ever worked for Pfizer Inc. as a medical liason. At no time has she called on physicians, including Southern's treating physician, regarding Neurontin. Prior to March 15, 2004, Ocampo made no statements or representations to physicians regarding the safety or efficacy of Neurontin.

Rochelle Hendricks was the sales representative who called on Southern's treating physician regarding Neurontin during the period of Southern's treatment with Neurontin for chronic fatigue syndrome.[5] Hendricks never provided verbal or written information to any physicians, including Southern's treating physician, regarding the use of Neurontin to treat chronic fatigue syndrome. If a physician requested information regarding an off-label use of Neurontin, Hendricks forwarded the request to Pfizer for a response. Any such response was communicated directly to the

---

[5] The use of Neurontin to treat chronic fatigue syndrome is an off-label use.

requesting physician from Pfizer, and such a communication did not travel through Hendricks.

The information used by Ocampo and Hendricks during the course of their employment was provided to them exclusively by Pfizer Inc. Ocampo and Hendricks had no involvement in the manufacture, development, or testing of Neurontin nor were they involved in the development or preparation of the prescribing information, including the written warnings and labels, for the drug. Ocampo and Hendricks were not expected to nor did they conduct any independent research regarding Neurontin.

### Standard of Review

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional issue; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to

6

the claim against the nondiverse defendant.[6] *Id. See also Coker v. Amoco Oil Co.*,
709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as
stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.
1993); *Tapscott v. MS Dealer Service Corp.*; 77 F.3d 1353, 1360 (11th Cir. 1996),
*overruled as conflicting with prior panel decision on other grounds by Cohen v.
Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). If any of these situations are
present, the nondiverse defendant has been fraudulently joined and its citizenship
should be ignored for purposes of determining jurisdiction. *Id.*

"In evaluating a motion to remand, the removing party bears the burden of
demonstrating federal jurisdiction." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368,
1373 (11th Cir. 1998). "The determination of whether a resident defendant has been
fraudulently joined must be based upon the plaintiff's pleadings at the time of
removal, supplemented by the parties." *Id.* at 1380. "While the proceeding
appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling
on a motion for summary judgment under Fed. R. Civ. P. 56(b) ... the jurisdictional
inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d
1536, 1538 (11th Cir. 1997) (internal citations and marks omitted). A district court

---

[6]In the present case, Defendants assert that only the first type of fraudulent joinder is
applicable; accordingly, the court will offer no analysis as to the second and third situations
under which a fraudulent joinder can occur.

must resolve all questions of fact in favor of the plaintiff; however, there must be some dispute of fact before the court can resolve that fact in the plaintiff's favor. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). When a defendant's affidavits are not disputed by the plaintiff, the court "cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.*

A federal court must be certain of its jurisdiction before "embarking upon a safari in search of a judgment on the merits." *Crowe*, 113 F.3d at 1538. A "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542.

## Discussion[7]

### I.    Southern cannot maintain a cause of action against Hendricks or Ocampo

Southern's arguments as to the improper removal of this case are based solely

---

[7]Southern contends, in her Emergency Motion to Remand, that this court "need not reach the issue of whether Ocampo is fraudulently joined, because a possible cause of action exists against Defendant Hendricks, rendering her claims of fraudulent joinder untenable." A court's decision on a motion to remand is a jurisdictional determination under which the court is obligated to determine whether any nondiverse defendant has been fraudulently joined in an action. *See Triggs*, 154 F.3d at 1287. An acquiescence to Southern's position leading to a refusal by this court to examine the merits of Southern's claims against Ocampo would be contrary to this court's necessary task of a jurisdictional determination and would violate the interests of judicial economy.

8

on the claims asserted against Hendricks and Ocampo. The issue before this court is whether a possible claim for violation of the AEMLD, failure to warn, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, breach of an express warranty, unjust enrichment, negligence, fraudulent misrepresentation, negligent and reckless misrepresentation, or civil conspiracy might be maintained against Hendricks or Ocampo in state court. A possibility of success as to any of the aforementioned claims will lead to a determination that Hendricks or Ocampo is not fraudulently joined in this action, that complete diversity does not exist among the parties, and that this action is due to be remanded.

It is undisputed that Hendricks and Ocampo transmitted information to Southern's prescribing physician regarding Neurontin. Further, it is undisputed that Hendricks and Ocampo: (1) did not prescribe Neurontin to Southern; (2) did not participate in the development or preparation of the prescribing information, including the warnings, for Neurontin; and (3) did not make any knowing misrepresentations concerning the safety of efficacy of Neurontin to any person.

**A.    As a matter of law, Southern cannot possibly maintain a claim for violation of the AEMLD against Hendricks or Ocampo in state court.**

Following a close scrutiny of the case law cited by both parties, and after

9

careful consideration, the court concludes that there is no possibility that Southern

could establish or maintain a claim against Hendricks or Ocampo in Alabama state

court for a violation of the AEMLD.  The AEMLD establishes a cause of action

against "a manufacturer, or supplier, or seller, who markets a product not reasonably

safe when applied to its intended use in the usual and customary manner, [thereby]

constitut[ing] negligence as a matter of law." *Castrell v. Altec Industries, Inc.*, 335

So.2d 128, 132 (Ala. 1976).  In order to establish liability under the AEMLD,

Southern must prove:

> [She] suffered injury or damages to [herself] or [her] property by one
> who sold a product in a defective condition unreasonably dangerous to
> the plaintiff as the ultimate user or consumer, if (a) the seller was
> engaged in the business of selling such a product, and (b) it was
> expected to, and did, reach the user or consumer without substantial
> change in the condition in which it was sold.

*Key v. Maytag Corp.*, 671 So.2d 96, 101 (Ala. Civ. App. 1995); *quoting Atkins v.*

*American Motors Corp.*, 335 So.2d 134 (Ala.1976).

Southern asserts that, as a "seller" of Neurontin, Hendricks or Ocampo faces

possible liability under the AEMLD.  Defendants argue that Hendricks and Ocampo

are corporate agents and are not "sellers" as defined under the AEMLD; thus, neither

can be held liable for a violation of the doctrine.

The Alabama Supreme Court has not yet addressed the question of whether a

10

sales representative is a "seller" exposed to possible liability under the AEMLD or, conversely, is an agent of the "seller" who would be shielded from liability.

Southern contends that because Alabama courts have never addressed the issue at hand and due to the lack of a clear mandate by Alabama courts on the issue, an Alabama court might determine Hendricks or Ocampo to be a "seller" under the AEMLD. The bright-line rule is that a "seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner" is exposed to liability under the AEMLD "[a]s long as there is a causal relationship between the defendant's conduct and the defective product." *Casrell v. Altec Industries, Inc* , 335 So.2d 128, 132 (Ala. 1976) (emphasis added).[8] The parties have not cited, and this court is unaware of the existence of, any published opinion from an Alabama court addressing liability under the AEMLD of a sales representative who is employed by the manufacturer of a product. However, there are persuasive cases that distinguish between a sales representative and a "seller." The court agrees with Defendants that these cases indicate that a sales representative is not a "seller" as defined under the AEMLD in certain instances. While numerous persuasive decisions exist supporting both sides of this argument, the court is persuaded that Hendricks and Ocampo, under

---

[8]*Casrell*, along with *Atkins v. American Motors Corp* , 335 So.2d 134 (Ala. 1976), define the scope of the AEMLD. Neither case addresses a distinction between a "seller" or a "representative of the seller."

11

the specific facts and allegations in this case, are corporate agents and not "sellers" for purposes of the AEMLD.

Southern argues that this court's Memorandum Opinion in *Tracy v Eli Lilly*, Case No. 2:06-cv-00536-VEH, is dispositive of the issues presented in the instant case. The facts of *Tracy* are readily distinguishable from the facts of this action. In *Tracy*, this court was presented with a pharmaceutical sales representative who had constructive knowledge that a drug was unsafe, the representative marketed the drug as being safe to a plaintiff's treating physician, and the plaintiff suffered the known ill-effects of the drug. The instant case presents a different set of circumstances. In *Tracy*, this court held that where a pharmaceutical sales representative has actual or constructive knowledge that a specific drug being marketed by that representative has a particular dangerous side effect, where the drug company's training of its sales force required sales representatives to employ various tactics of evading physicians' questions regarding a particular known side effect of a drug, where the sales representative represents that the drug is safe as to that side effect to a plaintiff's treating physician, where a plaintiff is subsequently prescribed the drug by that physician, and where the plaintiff suffers from the side effect known to the sales representative, that such a representative faces potential liability as a "seller" under the AEMLD due to that representative's unique ability to prevent the harmful product

12

from reaching the plaintiff.

Southern's allegations against Hendricks and Ocampo that are contrary to Hendricks' and Ocampo's sworn affidavits are not adequately refuted by the evidence offered by Southern. *See Legg*, 428 F.3d at 1323. Specifically, *Tracy* differs from this action in that Southern's allegations and evidence fail to indicate even the possibility of certain necessary causal links indicating that Hendricks or Ocampo knew Neurontin might be unsafe, that Hendricks or Ocampo were trained to evade physicians' questions regarding the safety of the drug, or that Hendricks or Ocampo represented Neurontin as being safe, as to the side effect of increased risk for attempting suicide, to Southern's treating physician. Southern's voluminous evidence detailing methodical planning on the part of Pfizer Inc. to market Neurontin for various off-label uses does not establish Hendricks' or Ocampo's knowledge of Neurontin's alleged negative side effects; specifically that Neurontin has been linked to increased instances of suicide when the drug is used in an off-label capacity to treat chronic fatigue syndrome. The limited holding in *Tracy* is not applicable to the facts of the instant action.

Defendants direct the court to the case of *In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 288 (S.D.N.Y. 2001), in which the court considered Alabama law and opined that holding a pharmaceutical sales representative liable

13

under the AEMLD would contravene the doctrine's purpose and scope.[9]  The court

observed, "[t]he AEMLD is founded on broader moral notions of consumer protection

and on economic and social grounds, placing the burden to compensate for loss

incurred by defective products on the one best able to prevent the distribution of these

products." *Id.* at 287 (quoting *Atkins v. American Motor Corp.*, 335 So. 2d 134, 139

(Ala. 1976)) (internal marks omitted).  The court found that there was "no reasonable

basis for supposing that [an Alabama court] would impose liability on the sales

representative" due to the representative's status as merely an agent of the

manufacturer/seller and, as a corporate employee, the sales representative was not

"the best one able to prevent sales of defective drugs." *Id.* at 288 (internal marks

omitted).

Applying the holding of *In re Rezulin*, a United States District Court for the

Middle District of Alabama held that a sales representative who sold a replacement

hip that later proved defective "is not deemed a 'seller' within the meaning of the

AEMLD." *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, *6 (M.D. Ala.

2005).  While the *Bloodsworth* court relied heavily on *In re Rezulin*, the court noted

an unpublished opinion by the MDL Court in *In re Baycol Products Liability*

---

[9] The court notes that district court decisions, including decisions of this district, are not
binding on this court.

*Litigation*, M.D.L. No. 1431, *4-*7 (D Minn March 26, 2004), which held that "the purpose of the AEMLD did not support a claim against a sales agent who had no authority to compel or prevent the distribution of particular products." *Id* (internal marks omitted).

The court finds the holdings in *Rezulin* and *Bloodsworth* persuasive and applicable to the facts of the instant case. There is simply no evidence that Hendricks or Ocampo, in either's capacity as a Territory Representative employed by Pfizer Inc., had any meaningful control over the distribution of Neurontin or that either could have prevented, in any substantial way, the dispersion of Neurontin to consumers; specifically, to Southern.

Based on the foregoing, the court finds that the parameters of Alabama law are sufficiently established so as to lead to the conclusion that there is no reasonable possibility for concluding that, under the specific facts of this case, an Alabama state court would find Hendricks liable under the AEMLD. *See Triggs*, 154 F 3d at 1287.

**B.    As a matter of law, Southern cannot possibly maintain a claim for fraudulent misrepresentation or negligent misrepresentation against Hendricks or Ocampo in state court.**

A claim for fraudulent misrepresentation comprises the following elements: "(1) a false representation (2) concerning a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation*,

15

772 So.2d 455, 463 (Ala. 2000) (quoting *Baker v. Bennett*, 603 So.2d 928, 935 (Ala. 1992). "An essential element of fraudulent-misrepresentation and fraudulent-suppression claims is a duty to disclose." *Nesbitt v. Frederick*, 2006 WL 1195872, *4 (Ala. 2006).

Pfizer Inc., not Hendricks or Ocampo, had a duty to disclose any dangers regarding Neurontin to Southern's prescribing physician. Pursuant to the learned intermediary doctrine, which has been adopted by the Supreme Court of Alabama, any duty to disclose would be owed to Southern's prescribing physician, and not to Southern, by Pfizer Inc., and not by Hendricks or Ocampo individually. *See Stone v. Smith, Kline, and French Laboratories*, 447 So.2d 1301 (Ala. 1984) (citing *Reyes v. Wyeth Laboratories*, 489 F.2d 1264 (5th Cir. 1974)) (the court applied the learned intermediary doctrine and determined that makers of prescription drugs have a duty to warn a patient's prescribing physician, and not the patient, regarding potential dangers associated with prescription medications). *See also, Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004). As a matter of law, Hendricks and Ocampo had no duty to disclose any information to Southern; accordingly, Southern cannot possibly maintain a cause of action against either Defendant for fraudulent misrepresentation in state court. *See Fisher*, 772 So.2d at 463.

In *Legg, supra*, applying Alabama law, the Eleventh Circuit held that a

16

negligent misrepresentation claim is untenable against a pharmaceutical sales representative absent a showing of bad faith. *Legg*, 428 F.3d at 1324. The court opined that "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith." *Id.* "A misrepresentation claim predicated on an allegation that a sales representative 'innocently passed on incorrect information' about a manufacturer's product simply is not cognizable under Alabama law." *Bloodsworth*, 2005 WL 3470337 at *8 (quoting *Legg*, 428 F.3d at 1324). Hendricks' and Ocampo's affidavits clearly establish that both acted as mere "conduits" of information for Pfizer Inc. As such, the court concludes that Southern's claim predicated on negligent misrepresentation cannot possibly survive in state court. *See Id.*

### C.    As a matter of law, Southern cannot possibly maintain a claim for failure to warn against Hendricks or Ocampo in state court.

The court finds no reasonable basis under Alabama law to support a failure to warn claim against Hendricks or Ocampo. Pursuant to the learned intermediary doctrine, any duty to warn would be owed to Southern's prescribing physician by Pfizer Inc. and not by Hendricks. *See Stone v. Smith, Kline, and French Laboratories*, 447 So.2d 1301 (Ala. 1984) (citing *Reyes v. Wyeth Laboratories*, 489 F.2d 1264 (5th Cir. 1974)) (applied the learned intermediary doctrine and determined

17

that makers of prescription drugs have a duty to warn a patient's prescribing physician, and not the patient, regarding potential dangers associated with prescription medications). *See also, Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004). As a matter of law, Southern's failure to warn claims are untenable.

**D.     As a matter of law, Southern cannot possibly maintain a claim for breach of warranty or negligence against Hendricks or Ocampo in state court.**

The court finds no reasonable basis under Alabama law to support Southern's claims for breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, and breach of express warranty against Hendricks or Ocampo.

It has been clearly established that warranty and negligence claims are not subsumed by the AEMLD. *See Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 34-35 (Ala. 2003). However, Southern's claims against Hendricks or Ocampo for breach of warranty and negligence do not present a possibility of success under Alabama law.

A breach of warranty claim is viable only against the "seller" of the goods. *See* Ala. Code §§ 7-2-313(1), 7-2-314(1), 7-2-315(1) (express and implied warranty claims refer only to warranties created by the seller of a product). As discussed *supra*, Hendricks and Ocampo are not "sellers" of Neurontin; rather, they are agents

18

of the "seller." Accordingly, under Alabama law, Southern cannot maintain a breach of warranty claim against Hendricks or Ocampo.

In keeping with this court's holding that Hendricks and Ocampo are not "sellers" of Neurontin, Southern's negligence claims against Hendricks and Ocampo fail. Southern asserts that "Defendants ... have a duty to exercise the necessary degree of care ... required by manufacturers of health care products." [Pl. Compl., ¶ 84]. A reading of Southern's complaint removes Hendricks and Ocampo from any possibility of liability under Southern's negligence claim due to the unchallenged assertion in Hendricks' and Ocampo's affidavits that neither had "any involvement with the manufacture, development, or testing of Neurontin." [Hendricks Aff., ¶ 9; Ocampo Aff., ¶ 7]. In addition, "a claim for negligent manufacture or sale is cognizable against [only] the manufacturer or seller." *Bloodsworth*, 2005 WL 3470337, *7. Hendricks and Ocampo are neither; thus, Southern's negligence claim against Hendricks and Ocampo has no possibility of survival in Alabama state court.

### E.    As a matter of law, Southern cannot possibly maintain a claim for unjust enrichment against Hendricks or Ocampo in state court.

As stated by the Alabama Supreme Court, to prevail on an unjust enrichment claim, a plaintiff must establish either that the defendant holds money that, in equity and good conscience, belongs to the plaintiff, or that the defendant holds money that

was improperly paid because of mistake or fraud. *See Avis Rent-A-Car Systems, Inc. v. Heilman,* 876 So.2d 1111, 1123 (Ala. 2003).

In the instant case, Southern asserts that Defendants "have knowingly received, and continue to receive, a substantial benefit at the expense of Plaintiff." [Pl. Compl., ¶ 81]. Further, Southern argues that "[i]t would be unjust and unconscionable to permit Defendants to enrich themselves at the expense of Plaintiff and to retain the funds that Defendant [sic] wrongfully obtained from Plaintiff." [Pl. Compl., ¶ 82].

Southern's unjust enrichment claim against Hendricks and Ocampo are inextricably linked to the success of Southern's fraudulent misrepresentation claim against either Defendant.[10] *See Id.* Where a plaintiff cannot maintain a fraudulent misrepresentation claim against a defendant, that plaintiff will not be permitted a viable claim of unjust enrichment which is based on an untenable fraudulent misrepresentation claim. As this court has determined that Southern's fraudulent misrepresentation claim against Hendricks fail under Alabama law, Southern cannot possibly maintain a claim of unjust enrichment against Hendricks or Ocampo premised on a failed fraudulent misrepresentation claim.

---

[10]Southern does not assert that Hendricks or Ocampo is holding money that in equity or good conscience belongs to Southern nor does Southern claim that Hendricks or Ocampo was paid money as a result of mistake. Accordingly, the court will not offer analysis as to those instances under which a claim for unjust enrichment can occur pursuant to Alabama law.

20

F.    **As a matter of law, Southern cannot possibly maintain a claim for civil conspiracy against Hendricks or Ocampo in state court.**

Southern contends that Defendants "entered into a conspiracy to suppress and fraudulently misrepresent material information that they were under a duty to disclose to Plaintiff." [Pl. Compl., ¶ 99]. The Alabama Supreme Court has held that:

> A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." *McLemore v. Ford Motor Co.,* 628 So.2d 548, 550 (Ala. 1993). "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *Id.* (quoting *O'Dell v. State ex rel. Patterson,* 117 So 2d 164 (Ala. 1959) (internal citations omitted)). To establish [a] conspiracy to defraud claim, [a plaintiff] must present evidence of a viable underlying fraud claim. *McLemore,* 628 So.2d at 550.

*Wilson v. Gayfers Montgomery Fair Co.*, 953 F.Supp. 1415, 1423 (M.D. Ala. 1996).

Under Alabama law, Southern's claim against Hendricks and Ocampo for conspiracy to fraudulently misrepresent material information regarding Neurontin can only be maintained if Southern presents evidence of a viable underlying fraudulent misrepresentation claim. *See Id.* As a threshold matter, Southern's conspiracy claim against Hendricks and Ocampo fails in light of this court's holding, discussed *supra,* that Hendricks and Ocampo owed no duty to Southern; thus, as a matter of law, neither Defendant can be held liable under the theory of fraudulent misrepresentation. Fraudulent misrepresentation requires that a defendant owe a duty to a plaintiff. *See*

21

*Nesbitt*, 2006 WL 1195872 at *4. Hendricks and Ocampo owe no duty to disclose to

Southern. *See Stone v. Smith, Kline, and French Laboratories*, 447 So.2d 1301 (Ala.

1984). Because Southern cannot maintain the underlying claim of fraudulent

misrepresentation against Hendricks in state court, Southern additionally cannot

maintain a claim of conspiracy to fraudulently misrepresent against those same

Defendants. *See Nesbitt*, 2006 WL 1195872 at *4.

In addition, the intra-corporate conspiracy doctrine precludes the possibility

that Southern could maintain a claim of civil conspiracy against Hendricks or

Ocampo. The intra-corporate conspiracy doctrine holds that:

> acts of corporate agents are attributed to the corporation itself, thereby
> negating the multiplicity of actors necessary for the formation of a
> conspiracy. Simply put, under the doctrine, a corporation cannot
> conspire with its employees, and its employees, when acting in the scope
> of their employment, cannot conspire among themselves. The doctrine
> is based on the nature of a conspiracy and the legal conception of a
> corporation. It is by now axiomatic that a conspiracy requires a meeting
> of the minds between two or more persons to accomplish a common and
> unlawful plan. However, under basic agency principles, the acts of a
> corporation's agents are considered to be those of a single legal actor.
> Therefore, just as it is not legally possible for an individual person to
> conspire with himself, it is not possible for a single legal entity
> consisting of the corporation and its agents to conspire with itself.

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (internal

citations and quotations omitted). It is "not legally possible" for Hendricks or

Ocampo, acting as agents of Pfizer Inc. and within the scope of their employment, to

conspire with one another or with Pfizer Inc.  *Id.*  It has been clearly established that Hendricks and Ocampo are agents of Pfizer Inc.   Southern does not assert that Hendricks and Ocampo were acting outside the scope of their employment when promoting Neurontin; therefore, the intra-corporate conspiracy doctrine applies. Accordingly, there is no possibility that Southern can maintain a claim for civil conspiracy against either Hendricks or Ocampo in state court.

## Conclusion

The court concludes that, based on the foregoing, Southern cannot maintain any cognizable claim against Hendricks or Ocampo in Alabama state court. Accordingly, Hendricks and Ocampo have been fraudulently joined in this action, and their citizenship will be ignored for the purpose of establishing diversity jurisdiction in this case.

A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** this 23rd day of June, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

23